McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham A. Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:  (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for Plaintiff and Counter-
Defendant New York Marine and General
Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, a New York corporation,, <br><br> Plaintiff, <br><br> v. <br><br> AMBER HEARD, an individual,, <br><br> Defendant. | Case No. 2:22-cv-04685-GW(PDx) <br><br> **NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM** <br><br> Date:          March 13, 2023 <br> Time:          8:30 a.m. <br> Judge:        Hon. George H. Wu <br> Courtroom:  9D |
| AMBER HEARD, an individual <br><br> Counter-claimant <br><br> v. <br><br> NEW YORK MARINE AND GENERAL INSURANCE COMPANY, a New York corporation, <br><br> Counter-defendant | Filed Concurrently with Notice of Motion; Memorandum of Points and Authorities; Declaration of James P. Wagoner; Proposed Order |

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

Pursuant to Rule 201(b) of the Federal Rules of Evidence, Defendant New York Marine and General Insurance Company ("New York Marine") hereby requests that the Court take judicial notice of the following documents and events that are not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Further, under Rule 201(c)(2), the Court "(2) must take judicial notice if a party requests it and the court is supplied with the necessary information."

True and correct copies of the following records relevant to the dispute between the parties, are filed contemporaneously herewith as attachments to the Declaration of James P. Wagoner, which, as set forth therein, were obtained from publicly available sources as stated and authenticated in the Declarations:

1.      Copies of documents filed in the underlying action entitled *John C. Depp, II v. Amber Laura Heard,* which was filed on January 4, 2017, in Fairfax County, Virginia Circuit Court, case number CL-2019-0002911, of the first appearance of attorneys Tim McEvoy and Sean Roche, of Cameron McEvoy LLP, in the underlying action out of which the present litigation arises, which was obtained by downloading the filing from the docket of the Circuit Court of Fairfax County, Virginia. A true and correct copy of those documents are attached and filed herewith as Exhibit 1, as authenticated in paragraph 4 of the Declaration of James P. Wagoner which is filed concurrently  herewith.

2.      A copy of the Virginia State Bar's Standing Committee on the Unauthorized Practice of Law Legal Ethics Opinion 598 approved by the Supreme Court of Virginia on March 8, 1985, effective June 1, 1985, a true and correct copy of which is attached and filed herewith as Exhibit 2, as authenticated in paragraph 5 of the Declaration of James P. Wagoner, which is filed concurrently herewith.

3.      A copy of the Virginia State Bar's Standing Committee on the Unauthorized Practice of Law Legal Ethics Opinion 1536  issued June 22, 1993, a

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

1    true and correct copy of which is attached and filed herewith as Exhibit 3 as

2    authenticated in paragraph 6 of the Declaration of James P. Wagoner, which is filed

3    concurrently herewith.

4        4.    Copies of records of the Virginia State Bar Association reflecting that

5    each of the ten (10) attorneys associated with the law firm Cameron McEvoy, PLLC

6    is licensed in Virginia. True and correct copies of which are attached and filed

7    herewith as Exhibit 4, as authenticated in paragraph 7 of the Declaration of James P.

8    Wagoner, which is filed concurrently herewith. Additionally, none of the attorneys

9    with the firm of Cameron McEvoy PLLC are licensed to practice law in California,

10   as reflected on the firm's website at cameronmcevoy.com, last accessed on February

11   10, 2023, filed concurrently herewith as Exhibit 4, as authenticated in paragraph 7 of

12   the Declaration of James P. Wagoner, which is filed concurrently herewith.

13       5.    A copy of relevant excerpts of the Form 10-K filed by "ProSight Global,

14   Inc." on February 23, 2021, which establishes that at that time, NY Marine was a

15   subsidiary of ProSight Global, Inc., and that "On January 15, 2021, we announced

16   that we had entered into an agreement and plan of merger (the "Merger Agreement")

17   with Pedal Parent Inc., a Delaware corporation ("Parent"), owned by affiliates of

18   TowerBrook Capital Partners L.P. and Further Global Capital Management, and

19   Pedal Merger Sub, Inc., pursuant to which, subject to the terms and conditions of the

20   Merger Agreement, Pedal Merger Sub, Inc. would merge with and into the Company

21   (the "proposed merger"), with the Company surviving as a wholly owned subsidiary

22   of Parent. [¶] Pursuant to the Merger Agreement, each ProSight common share held

23   by our stockholders will be converted into the right to receive $12.85 in cash", which

24   "proposed merger is anticipated to close in the third quarter of 2021".  A true and

25   correct copy of which is attached and filed herewith as Exhibit 5, as authenticated in

26   paragraph 8 of the Declaration of James P. Wagoner, which is filed concurrently

27   herewith.

28   / / /

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

2

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

6.     A copy of relevant excerpts of financial statements filed by NY Marine with the California Department of Insurance on February 24, 2022, reflecting that "Effective 2021, TowerBrook Capital Partners L.P. ("TowerBrook") and Further Global Capital Management ("Further Global") acquired the Company." A true and correct copy of which is attached and filed herewith as Exhibit 6, as authenticated in paragraph 9 of the Declaration of James P. Wagoner, which is filed concurrently herewith.

7.     A copy of the relevant excerpts of the Annual Statement for the Year Ended December 31, 2021 filed by NY Marine and obtained from the California Department of Insurance, which reflects that "Effective August 4, 2021, the reporting entity's indirect parent, ProSight Global, Inc. ("PGI") completed its previously announced merger with Pedal Merger Sub, Inc. ("Merger Sub"), pursuant to the agreement and plan of merger (the "Merger Agreement") by and among Pedal Parent Inc., owned by affiliates of TowerBrook Capital Partners L.P. and Further Global Capital Management, and Merger Sub. Pursuant to the Merger Agreement, Merger Sub merged with and into PGI (the "merger"), with PGI surviving as a wholly owned subsidiary of Pedal Parent Inc. In connection with the merger, the reporting entity implemented its ADC/LPT. The New York Department of Financial Services previously approved the merger and ADC/LPT." A true and correct copy of which is attached and filed herewith as Exhibit 7, as authenticated in paragraph 10 of the Declaration of James P. Wagoner, which is filed concurrently herewith.

8.     A copy of relevant excerpts of the Annual Statement for the Year Ended December 31, 2021, "Management's Discussion and Analysis" which were obtained from the California Department of Insurance, and which likewise address and reflect the merger pursuant to which NY Marine became a privately owned corporation in

/ / /

/ / /

/ / /

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

3

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

1   2021. A true and correct copy of which is attached and filed herewith as Exhibit 8, as

2   authenticated in paragraph 11 of the Declaration of James P. Wagoner, which is filed

3   concurrently herewith.

4     9. A copy of the California Department of Insurance web-search page

5   reflecting that no financial reports were filed by NY Marine for the year 2022. A true

6   and correct copy of which is attached and filed herewith as Exhibit 9, as authenticated

7   in paragraph 12 of the Declaration of James P. Wagoner, which is filed concurrently

8   herewith.

9     10. Copies of various news reports reflecting the "go private" nature of the

10  merger and sale of NY Marine and its parent corporations, as well as the purchased

11  company's rebranding as "CoAction" effective April 3, 2022. True and correct copies

12  of which are attached and filed herewith as Exhibit 10, as authenticated in paragraph

13  13 of the Declaration of James P. Wagoner, which is filed concurrently herewith.

14    11. Additionally, NY Marine requests that Judicial Notice be taken of the

15  Reservation of Rights letter issued to Ms. Heard pursuant to the "incorporation by

16  reference" doctrine, on the grounds that the letter is "referred to" in the Amended

17  Counterclaim, and that the claims asserted therein are unquestionably "based upon"

18  and/or "predicated upon" the letter. Under that doctrine, where a "plaintiff's claims

19  are predicated on a document, the defendant may attach the document to his 12(b)(6)

20  motion." *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998); *In re Silicon

21  Graphics Inc.*, 183 F.3d 970, 986 (9th Cir. 1999). *See, e.g., Travelers Commercial Ins.

22  Co. v. New York Marine and General Ins. Co.,* CV 21-5832-GW-PDx, 2022 WL

23  100109, n. 4 (C.D.Cal. Jan. 6, 2022) (granting request for judicial notice of reservation

24  of rights letter which was also sought to be considered pursuant to the "incorporation

25  by reference doctrine") (citing *Sams v. Yahoo! Inc.,* 713 F.3d 1175, 1179 (9th Cir.

26  2013)).  A true and correct copy of the Reservation of Rights letter (redacted for the

27  / / /

28  / / /

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

4

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

1   limited purpose of removing personal contact information and financial information) is

2   filed as Exhibit 1 to the Declaration of James P. Wagoner, which is filed concurrently

3   herewith.

4

5   Dated:  February 10, 2023                    McCORMICK, BARSTOW, SHEPPARD,
                                                 WAYTE & CARRUTH LLP
6

7
                                          By:         /s/ James P. Wagoner
8                                                    James P. Wagoner
9                                                 Nicholas H. Rasmussen
                                                  Graham A. Van Leuven
10                                         Attorneys for Plaintiff New York Marine and
                                                 General Insurance Company
11

12   8909635.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

# EXHIBIT "1"

**V I R G I N I A:**

**IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

|  |  |  |
|---|---|---|
| John C. Depp, II, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2019-0002911 |
| Amber Laura Heard, | ) ) | |
| Defendant. | ) ) ) | |

## AGREED ORDER

Upon consideration of the agreement of the parties, as evidenced by the endorsement of their counsel hereinbelow, it is, this _____ day of March, 2019, hereby ORDERED as follows:

Defendant Amber Laura Heard acknowledges that Plaintiff John C. Depp, II has effected service of the Complaint in this action. By agreement of the parties, Ms. Heard shall file a response to the Complaint by no later than Monday, May 20, 2019, with the parties further stipulating that this Agreed Order shall not in any way waive or limit any defenses or objections Ms. Heard may have to the claims in this action, the court's jurisdiction, and/or the venue of this action.

███████████████

                                         JUDGE

WE ASK FOR THIS:

████████████████

Benjamin G. Chew (VSB # 29113)
Elliot J. Weingarten (*pro hac vice* application forthcoming)
Andrew C. Crawford (VSB # 89093)
BROWN RUDNICK LLP
601 Thirteenth Street, N.W.

1221245.1

7

Washington, D.C. 20005
Telephone: (202) 536-1700
Facsimile: (202) 536-1701
Email: bchew@brownrudnick.com

Adam R. Waldman
THE ENDEAVOR LAW FIRM, P.C.
1775 Pennsylvania Avenue, N.W., Suite 350
Washington, DC 20006

Brittany Whitesell Biles (*pro hac vice* application forthcoming)
STEIN MITCHELL BEATO & MISSNER LLP
901 Fifteenth Street, N.W.
Suite 700
Washington, D.C. 20005
Telephone: (202) 601-1602
Facsimile: (202) 296-8312
Email: bbiles@steinmitchell.com

Counsel for Plaintiff John C. Depp, II

and

Timothy J. McEvoy, Esq. (VSB No. 33277)
Sean Patrick Roche, Esq. (VSB No. 71412)
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
703.460.9343 (Direct)
703.273.8898 (Office)
703.273.8897 (Fax)
tmcevoy@cameronmcevoy.com
sroche@cameronmcevoy.com

Eric M. George (*pro hac vice* application forthcoming)
Richard A. Schwartz (*pro hac vice* application forthcoming)
BROWNE GEORGE ROSS LLP
2121 Avenue of the Stars, Ste. 2800
Los Angeles, CA 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email: rschwartz@bgrfirm.com

# EXHIBIT "2"

LEGAL ETHICS OPINION 598          HOUSE COUNSEL/REPRESENTATION
                                  OF INSUREDS – CONFLICT OF
                                  INTEREST – CONFIDENTIALITY.

The Virginia State Bar's Standing Committee on the Unauthorized Practice of Law has proposed its Opinion 60. The Virginia State Bar's Standing Committee on Legal Ethics has been asked to render its opinion on the applicability of the Virginia Code of Professional Responsibility to the facts upon which the proposed UPL Opinion 60 is based. The opinion of the Standing Committee on Legal Ethics is the following:

    1. There is no provision of the Virginia Code of Professional Responsibility that expressly prohibits representation of an insured by a staff attorney for a liability insurance carrier.

    2. However, there are provisions of the Code of Professional Responsibility which provide guidance in the conduct of that relationship, namely DR:4-101((C)(1), DR:5-101(A) and DR:6-101(D).

    3. Canon 5 states "A lawyer shall exercise independent professional judgment on behalf of a client."

DR:5-101(A) states
Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

    (A) A lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client may be affected by his own financial, business, property or personal interest, except with the consent of his client after full and adequate disclosure under the circumstances.

DR:5-106 states, in pertinent part,
    Avoiding Influence by Others Than the Client.

    (A) Except with the consent of his client after full and adequate disclosure under the circumstances, a lawyer shall not:

        (1) accept compensation for his legal services from one other than his client.

        (2) . . . .

    (B) A lawyer shall not permit a person who recommends, employs or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.

Accordingly, it is imperative under the Virginia Code of Professional Responsibility that a liability insurer's staff attorney representing an insured must inform the insured of his employment and obtain the insured's consent "after full and adequate disclosure under the circumstances."

The Legal Ethics Committee of the American Bar Association stated the principle well in its Informal Opinion 282 (5/27/50) in concluding that "An attorney, employed by an

insurance company exclusively, upon a salary basis [may ethically] defend lawsuits against assureds on behalf of the insurance company . . . ." and added

> The essential point of ethics involved is that the lawyer so employed shall represent the insured as his client with undivided fidelity . . . .

The expressed, affirmative prohibitions of parts (A)(1) and (B) of DR:5-106(quoted above) amplify the essence of Canon 5 and the more specific statement in DR:5-101(A). See also EC:5-21, EC:5-22 and, particularly, EC:5-23.

4. Canon 4 states "A Lawyer Should Preserve the Confidences and Secrets of a Client."

DR:4-101(B) prohibits the revelation of a confidence or secret (as defined in 4-101(A)), or the use of a confidence or a secret to the disadvantage of the client, or the use of a confidence or a secret of the client for the advantage of the attorney or a third person.

The client of an insurance carrier's employee attorney is the insured, not the insurance carrier. Accordingly, except with the consent of the client, the insurance carrier's employee attorney is barred from disclosing or using confidences and secrets as set out in 4-101(B) including, for example, any defense to policy coverage gained through the attorney/client relationship with the attorney's insurance carrier's insured. Informal Opinions 949 (8/8/66) and 1476 (8/11/81) of the ABA Legal Ethics Committee are in accord. See also EC:4-1, EC:4-2 and EC:4-5.

5. DR:6-101(D) states "A Lawyer Shall Inform His Client of Facts Pertinent to the Matter and of Communications from Another Party That May Significantly Affect Settlement or Resolution of the Matter." Accordingly, the insurance carrier's employee attorney is required to keep his client advised of settlement and such information.

6. Canon 6 requires that "A Lawyer Should Represent a Client Competently" and Canon 7 states that "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law." We believe that it is implicit in those canons and related disciplinary rules that an insurance carrier's employee attorney make full and adequate disclosure to his client insured of any limitation of the scope of the representation.

In summary, then, it is the opinion of the Legal Ethics Committee of the Virginia State Bar that it is not improper for an attorney who is an employee of an insurance carrier to represent a client who is insured by his employer.  We point out the provisions of DR:4-101(B), DR:5-101(A), DR:5-106(A)(1) and (B), and DR:6-101(D) and Canons 6 and 7 as guidance to an attorney in the maintenance of such a relationship.

Approved by the Supreme Court of Virginia
March 8, 1985
Effective June 1, 1985

Justices Stephenson and Russell would disapprove the opinion.

# EXHIBIT "3"

Committee Opinion
June 22, 1993

LEGAL ETHICS OPINION 1536         CONFLICT OF INTEREST -
                                  CONFIDENCES AND SECRETS –
                                  FORMER CLIENT: ATTORNEY'S
                                  FORMER FIRM REPRESENTS
                                  DEFENDANT IN PERSONAL INJURY
                                  CASE;  ATTORNEY'S SPOUSE
                                  EMPLOYED BY INSURANCE CARRIER.


   I am writing in response to your letter dated April 26, 1993, requesting an informal advisory opinion from the Virginia State Bar Standing Committee on Legal Ethics ("committee").

   You have presented a hypothetical situation in which Attorney A was previously employed by Law Firm B and handled insurance defense cases and coverage issues for Law Firm's client, Insurance Company C. Attorney A later left Law Firm B and started his own law practice.

   You indicate that Attorney A is now representing Client D in a personal injury action against a defendant who is insured by Insurance Company C.  Law Firm B is defending the case.

   You advise that Attorney A is familiar with the operation of Insurance Company C, not only because of his past employment with Law Firm B but also because his wife was, and is currently, a supervisor-employee of Insurance Company C with access to all claim files involving the same claim of Client D that is the subject matter of the personal injury action. Attorney A's spouse also has access to other claim files and information regarding the defendant, who is the insured of Insurance Company C. This information would include past claims, accident reports, and past repair estimates, as well as information and opinions supplied by Law Firm B on the merits of all claims handled by that firm, including the defense of the personal injury action in question.

   You have asked the committee to opine whether, under the facts of the inquiry, (1) Attorney A may continue representation of Client D since he formerly represented Insurance Company C while employed by Law Firm B; and (2) whether Attorney A may continue to represent Client D, considering Attorney A's spouse's employment by Insurance Company C.

   The appropriate and controlling Disciplinary Rules related to your inquiry are DR:4-101(B) which provides that a lawyer shall not knowingly use or reveal a confidence or secret of his client; and DR:5-105(D) which states that a lawyer who has represented a client in a matter shall not thereafter represent another person in the same or substantially related matter if the interest of that person is adverse in any material respect to the interest of the former client unless the former client consents after disclosure.

13

Committee Opinion
June 22, 1993

The committee directs your attention to prior LE Op. 598, approved by the Virginia Supreme Court effective June 1, 1985, which concluded that "the client of an insurance carrier's [in-house] employee attorney is the insured, not the insurance carrier". The committee is of the view that such delineation of the client is equally applicable when the insurance company engages outside counsel to represent its insured. The committee is of the opinion that Attorney A's familiarity with the general operation of Insurance Company C does not constitute a confidence or secret as envisioned by DR:4-101 since there was no attorney-client relationship between Attorney A and Insurance Company C. Thus, the committee opines that, unless the current matter is the same or substantially related to specific matters in which Attorney A, while employed by Law Firm B, previously represented other insureds who are now adverse to Client D, there is no impropriety in Attorney A continuing to represent Client D.

As to your inquiry regarding A's spouse who, as employee of Insurance Company C, has access to all claim files involving both D's current claim and other claim files and information regarding the defendant, the committee opines that, assuming Attorney A had no knowledge of information his spouse may have learned as an employee of C, A would not be precluded from continuing his representation of D. See LE Op. 1481.

# EXHIBIT "4"

# Virginia State Bar

## Virginia Lawyer Directory

New Search

---

| **Edward Woodrow Cameron** |
| |
| Cameron/McEvoy PLLC<br>Suite 420<br>4100 Monument Corner Drive<br>Fairfax, VA 22030 |
| Phone: 703-273-8898, F: 703-273-8897 |
| |
| Member class:   Active  ( More Info... ) |

(close)

**Active**

Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

---

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

# Virginia Lawyer Directory

New Search

| Timothy Joseph McEvoy |  |
|---|---|
|  |  |
| Cameron McEvoy PLLC<br>4100 Monument Corner Dr Ste 420<br>Fairfax, VA 22030 |  |
| Phone: 703-273-8898, F: 703-273-8897 |  |
|  |  |
| Member class: | Active  ( More Info... ) |

(close)

**Active**
Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

## Virginia Lawyer Directory

New Search

| | |
|---|---|
| **Sean Patrick Roche** | |
| | |
| 2831 Linden Lane<br>Falls Church, VA 22042 | |
| Phone: 571-213-5412 | |
| | |
| Member class: | Active  ( [More Info...](#) ) |

[(close)](#)

**Active**
Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

New Search

© 1996 - 2023 Virginia State Bar | [Privacy Policy](#) | [Site Map](#)

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

**Virginia State Bar**

# Virginia Lawyer Directory

New Search

| | |
|---|---|
| **Matthew Harrold Sorensen** | |
| | |
| Cameron McEvoy<br>4100 Monument Corner Dr Ste 420<br>Fairfax, VA 22030 | |
| Phone: 703-460-9342, F: 703-273-8897 | |
| | |
| Member class: | Active  ( More Info... ) |

(close)

**Active**
Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

## Virginia Lawyer Directory

New Search

| Patrick James McDonald |
| --- |
| |
| Cameron/McEvoy, PLLC<br>Suite 420<br>4100 Monument Corner Drive<br>Fairfax, VA 22030 |
| Phone: 703-273-8898, F: 703-273-8897 |
| |
| Member class:   Active  ( More Info... ) |

(close)

**Active**
Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map
1111 East Main Street, Suite 700 | Richmond, VA 23219-3565
804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502
Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)
The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

## Virginia Lawyer Directory

New Search

| **Daniel Erwin Ingersoll** |
| --- |
|  |
| Cameron McEvoy PLLC<br>4100 Monument Corner Dr Ste 420<br>Fairfax, VA 22030 |
| Phone: 703-460-9356 |
|  |
| Member class:  Active  ( More Info... ) |

(close)

**Active**
Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

## Virginia Lawyer Directory

New Search

| | |
|---|---|
| **Eric Scott Waldman** | |
| | |
| Cameron McEvoy PLLC<br>Suite 420<br>4100 Monument Corner Drive<br>Fairfax, VA 22030 | |
| Phone: 703-460-9349, F: 703-273-8897 | |
| | |
| Member class: | Active  ( More Info... ) |

(close)

### Active

Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

## Virginia Lawyer Directory

New Search

| | |
|---|---|
| **Richard Glenn Cole, III** | |
| | |
| Cameron/McEvoy PLLC<br>4100 Monument Corner Dr Ste 420<br>Fairfax, VA 22030 | |
| Phone: 703-460-9354 | |
| | |
| Member class: | Active  ( More Info... ) |

(close)

**Active**
Members who are admitted to practice law in the courts of this State and who are engaged in the practice of law, either full-time or part-time, salaried or non-salaried.

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

## Virginia Lawyer Directory

New Search

---

| | |
|---|---|
| **William Edward Evans** | |
| | |
| 6924 Fairfax Dr Unit 200 Arlington, VA 22213 | |
| Phone: 704-609-4311, F: 844-769-4017 | |
| | |
| Member class: | Active  ( More Info... ) |

(close)

**Active**
Members who are admitted to
practice law in the courts of
this State and who are engaged
in the practice of law, either
full-time or part-time, salaried
or non-salaried.

---

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Virginia State Bar

## Virginia Lawyer Directory

New Search

| | |
|---|---|
| **John Peter Dedon** | |
| | |
| Cameron McEvoy, PLLC<br>4100 Monument Corner Drive #420<br>Fairfax, VA 22030 | |
| Phone: 703-460-9351, F: 703-273-8897 | |
| | |
| Member class: | Active  ( More Info... ) |

New Search

© 1996 - 2023 Virginia State Bar | Privacy Policy | Site Map

1111 East Main Street, Suite 700 | Richmond, VA 23219-3565

804-775-0500 | TDD/Voice Line (Hearing-Impaired): 804-775-0502

Office Hours: Mon.-Fri. 8:15 a.m. to 4:45 p.m. (excluding holidays)

The Clerk's Office does not accept filings after 4:45 p.m.

# Cameron McEvoy PLLC

## Edward W. Cameron
**PARTNER**



📞 (703) 460-9340

**Email**

✉ (mailto:ecameron@cameronmcevoy.com)

///////////////////////

**Recognition**

One of the firm's founders, Edward W. ("Sunny") Cameron has a large practice devoted primarily to civil litigation in state and federal courts. Mr. Cameron represents businesses and individuals in a wide range of complex matters, including commercial, construction, banking, real estate and employment disputes.

In addition to his extensive background in trial work, Mr. Cameron is experienced in the appellate arena at all levels. He has also handled alternative dispute resolution and has successfully resolved numerous labor and employment, commercial and construction disputes through arbitration and/or mediation.

Mr. Cameron has been selected for numerous honors, including an invitation to join as a *Senior Fellow*, *Litigation Counsel of America* for 2012. Membership in this prestigious honor society for trial and appellate attorneys is limited to one-half of one percent of all American lawyers. He has also been selected as one of the *Best Lawyers in America* each year since 2010, and he has been designated a *Virginia Super Lawyer* in the Business Litigation section by *Law & Politics* magazine. In addition, he has been identified as one of Virginia's *Legal Elite* by *Virginia Business* magazine. Lastly, in his first year of eligibility, Mr. Cameron received an AV Peer Review Rating from Martindale-Hubbell, which is recognized as one of the nation's leading rating services for attorneys.



## Practice Focus

› Commercial Litigation

› Corporate Litigation

› Real Estate Litigation

› Construction Litigation

› Labor & Employment

› Local Government/ Municipal Litigation

› Commercial Lease Litigation

› Banking & Debtor/Creditor Litigation

– Mechanic's Liens

– Claims on Public Projects

EDWARD W. CAMERON
2023
RECOGNIZED BY:
Best Lawyers

Martindale-Hubbell®
AV PREEMINENT®
Peer Rated for Highest Level of Professional Excellence
2022

Legal Elite – Virginia Business Magazine

//////////////////////////

**Bar Admissions**

> Supreme Court of the United States
> United States Court of Federal Claims
> Virginia
> United States Court of Appeals, Fourth Circuit
> United States District Court, Eastern District of Virginia
> United States Bankruptcy Court, Eastern District of Virginia
> United States Bankruptcy Court, Western District of Virginia
> Regularly admitted to practice in other courts throughout the U.S. on a *Pro Hac Vice* basis

//////////////////////////

**Professional Activities**

> Virginia State Bar, Construction Law Section
> Fairfax Bar Association, Fairfax County Circuit Court Committee (1997-98)
> Fairfax Circuit Court Conciliator
> Virginia Trial Lawyers Association
> Member, Diversity Law Institute (2014)
> Member, The Trial Law Institute (2014)

**Practice Notes**

> Secured a judgment for $11 million for a commercial general contractor and its primary and excess carriers in a complex insurance coverage and indemnification dispute at the conclusion of a lengthy trial in the Circuit Court of Fairfax County.

> Secured the early dismissal of a $2.5 million claim against King George County, Virginia and the County's Service Authority involving a commercial real estate developer's construction of a waste water treatment facility.

> Secured the early dismissal of a wrongful discharge claim where the former employee was seeking $1.1 million in damages.

> Negotiated a favorable settlement resulting in a 15 year lease extension for a tenant at the end of the first week of a jury trial involving a complicated commercial lease dispute.

> Successfully represented a subsidiary of a national building material supply firm in a hotly contested construction dispute resulting in a substantial damage award from a Fairfax County jury.

> Secured a jury verdict for a large software consulting firm equal to the Plantiff's ad damnum in a contract dispute with one of the nation's largest cosmetic manufacturers.

# Cameron McEvoy PLLC

PLLC

## Timothy J. McEvoy
**PARTNER**



&#9742; **(703) 460-9341**

**Email**

&#9993; (mailto:tmcevoy@cameronmcevoy.com)

//////////////////////////

**Recognition**



(https://www.actl.com/)



Tim McEvoy is a Fellow of The American College of Trial Lawyers, the most prestigious, invitation-only society of senior trial counsel in the United States and Canada.  A former state and federal prosecutor, he has been involved with matters as diverse as whether a sitting state Attorney General had to obey a sitting Governor, precedent-setting litigation in the Delaware Court of Chancery involving preferred shareholder rights and the duties of potentially conflicted venture capitalists in a merger, shareholder's agreement disputes, business "divorces," software development disputes, the Clean Water Act, pharmaceutical drug development, and other commercial litigation of all kinds.  Mr. McEvoy has also appeared before the United States Supreme Court (where the lower courts were reversed by a 9-0 vote), has obtained and collected recoveries of more than $50,000,000 on behalf of his clients, and successfully defended liquidated commercial claims far exceeding that amount.

For years running, Mr. McEvoy has been AV-rated by the Martindale-Hubbell peer rating service, the highest rating available for skill and ethics.  He is also perennially listed in in publications such as *Virginia Business* magazine's "Virginia Legal Elite," Thomson-Reuters' Virginia and D.C. "Super Lawyers" and the prestigious "Best Lawyers in America" list.  He has won the Fairfax Bar Association's President's Award for Leadership and Service three times, and has served as President of the Fairfax Law Foundation, a 501(c)(3) entity that provides pro bono legal services and educates the public about the Rule of Law.  He has represented both the Arlington County Bar Association and the Fairfax Bar Association in legal disputes with third parties, and has additionally represented two Virginia Commonwealth's Attorneys in civil rights disputes initiated against them in federal court. He also serves as a member of the Merit Selection Committee for United States Magistrate Judges in the Eastern District of Virginia, Alexandria Division.

In his free time, Mr. McEvoy is a road bike and motorbike enthusiast, manager and supporter of youth sports teams, and an advocate and advisor for mental health issues.  He enjoys biography, history, traveling and people, and is a member of the Virginia Club of New York and the Virginia Historical Society.



Legal Elite – Virginia Business Magazine

///////////////////////

**Bar Admissions**
> Virginia
> Maryland
> U. S. Supreme Court
> U. S. District Court for the Eastern and Western Districts of Virginia
> U. S. District Court for Maryland
> U. S. Court of Appeals for the Fourth Circuit

///////////////////////

**Professional Activities**
> President, Fairfax Law Foundation (2009)
> Fairfax Bar Association
> Arlington Bar Association
> Federal Bar Association
> Member, George Mason Inn of Court

///////////////////////

**Education**
> J.D., University of Virginia School of Law
> B.A., College of William and Mary *(Phi Beta Kappa)*

## Practice Focus

> **Corporate litigation,** including claims by and against shareholders, partners and members, breach of fiduciary duty claims, appraisals, business break-ups and claims against officers and directors

> **Business torts,** including tortious interference with contract claims and business conspiracy claims

> **Contract law,** including claims for breach of commercial contracts, leases, employment agreements and restrictive covenants (non-competition and non-solicitation agreements)

> **Estate and fiduciary litigation,** including trust and estate disputes, claims under the Uniform Trust Act, will contests and accountings

> **Intellectual Property,** including software disputes, licensing issues, copyrights and trademarks

## Practice Notes

> Regular participation in complex, multi-party litigation in federal court involving various subject matters, including the federal False Claims Act, the Fair Labor Standards Act, the Lanham Act, the Copyright Act, the Clean Water Act and other federal statutes and regulations.

> The defense of a breach of contract claim by a pharmaceutical development company against a leading international pharmaceutical manufacturer where the damages sought were not less than $78,000,000.  The case was resolved by confidential mediation.

> Routine handling of cases involving tens of millions of dollars in liquidated contract damages, including settlements on behalf of publicly-traded entities.

> Multiple False Claims Act defenses where his clients paid nothing or only a small fraction of the seven-figure demands made by the claimants.

> Recovery of millions of dollars for charitable organizations and individuals in trust and estate cases.

# Sean Patrick Roche

**PARTNER**



(703) 460-9343

**Email**
(mailto:sroche@cameronmcevoy.com)

////////////////////////

**Recognition**



Super Lawyer – SuperLawyer.com (2012, 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021)

Sean Patrick Roche is a business litigation attorney and a partner in the firm. His practice is devoted to complex civil litigation with expertise in matters generally revolving around a variety of forms of contract disputes, often including high stakes "bet-the-company" litigation. For example, Mr. Roche regularly handles contract litigation involving construction, real estate, trust and estates, labor and employment, commercial landlord-tenant, telecommunication, intellectual property, and various other forms of complex business disputes. Ultimately, Mr. Roche is a trial attorney though his expertise is in conflict resolution, whether by prevailing in court or negotiating the best possible resolution out of court. Mr. Roche is licensed to practice law in Virginia, Washington, D.C., and Maryland. He regularly handles litigation in the state and federal courts throughout all three jurisdictions and he is often specially admitted to appear on behalf of clients in various courts and arbitration proceedings throughout the United States and Canada.

Mr. Roche was born and raised in the Washington, D.C. area, where he continues to reside with his wife and two sons. He obtained two Bachelor of Arts degrees from Georgetown University, a Juris Doctorate from the University of Richmond School of Law (where he served on the *Law Review* as Allen Chair Editor), and a Master of Laws ("LL.M.") in Litigation and Dispute Resolution from The George Washington University Law School. Mr. Roche is also a graduate of the College of Trial Advocacy.

Mr. Roche has been named among *Virginia Business* magazine's "Legal Elite", the Washington Post Magazine's "Outstanding Young Lawyers," and he has been elected as a "Super Lawyer" in Virginia, Maryland, and D.C. In his first year of eligibility, he achieved an AV-rating by Martindale-Hubbell, the highest available rating from the premier attorney rating database. Inclusion on these various lists means Mr. Roche is among those lawyers recognized by his peers as one of the best in the D.C. metropolitan region.

Martindale Hubbell AV-Rated – the highest rating
› available to lawyers

DC Metro Area's Outstanding Young Lawyer –
› *Washington Post Magazine*

Avvo.com 10.0-Rating – the highest rating available to
› lawyers

Legal Elite – *Virginia Business* magazine

//////////////////////

**Bar Admissions**

Virginia

District of Columbia

Maryland

United States District Court, Eastern District of
› Virginia

United States District Court, Western District of
› Virginia

United States District Court, District of Columbia

United States District Court, District of Maryland

United States Bankruptcy Court, Eastern District of
› Virginia

United States Bankruptcy Court, Western District of
› Virginia

United States Bankruptcy Court, District of Columbia

United States Bankruptcy Court, District of Maryland

United States Court of Appeals, Fourth Circuit

United States Court of Appeals, District of Columbia
› Circuit

United States Court of Appeals, Federal Circuit

Supreme Court of the United States

//////////////////////

**Professional Activities**

› Virginia State Bar

## Practice Focus

A trial attorney's special expertise is in the area of courtroom practice and trial procedure. Mr. Roche applies that discipline regularly in the following types of business disputes:

› General Civil Litigation

› Business Litigation

› Business Torts

› Telecommunication Litigation

› Real Estate Litigation

› Local Government/Municipal Litigation

› Contract Disputes

› Corporate Litigation

› Trust & Estate Litigation

› Banking & Debtor/Creditor Litigation

› Construction Litigation

› Labor & Employment Litigation

› Alternative Dispute Resolution (Arbitration and Mediation)

› Commercial Landlord-Tenant Litigation

## Practice Notes

› Over $30 million dollars in total judgment amounts obtained through bench and jury trials.

› Cases featured on local and national news, including coverage by The Wall Street Journal, The Washington Post, The New York Times, The Los Angeles Times, CNN, Wired, Law360, NBC News, USA Today, BBC, Hollywood Reporter, Fox News, CBS News, ABC News, Variety, Rolling Stone, TMZ, and Fierce Wireless.

› Millions of dollars in confidential settlements, often including long-term business benefits in addition to immediate monetary payments.

› Numerous cases dismissed and/or resolved through motions to dismiss, demurrer, plea in bar, or other pretrial practice and procedure.

› Dismissal by jury of all claims in favor of client on business dissolution dispute.

# Matthew H. Sorensen

**PARTNER**



📞 **(703) 460-9342**

**Email**
✉ (mailto:msorensen@cameronmcevoy.com)

////////////////////////

**Recognition**

Legal Elite – *Virginia Business* magazine (2021)

////////////////////////

**Bar Admissions**

› Virginia
› District of Columbia
› U.S. District Court, Eastern District of Virginia
› U.S. District Court, District of Columbia
› U.S. Court of Appeals, Fourth Circuit
› U.S. Court of Appeals, District of Columbia Circuit

Matthew H. Sorensen focuses his practice on the areas of labor and employment law and commercial litigation. Mr. Sorensen has successfully defended businesses and executives in numerous employment-related disputes in state and federal courts throughout the United States. He has extensive experience defending individual and class lawsuits involving wage and hour, discrimination, retaliation, and "whistleblower" claims. He has also litigated numerous cases involving non-compete agreements and other employment-related contracts. In addition, Mr. Sorensen represents businesses and executives in employment-related investigations by state and federal agencies, including the Equal Employment Opportunity Commission ("EEOC"), the Office of Federal Contract Compliance Programs ("OFCCP"), the Department of Labor, and the National Labor Relations Board ("NLRB").

Mr. Sorensen is an experienced commercial litigator. He has successfully resolved numerous cases involving commercial contracts, misappropriation of trade secrets, unfair competition, defamation, fraud, and other business torts. He has also defended businesses (particularly those in the hospitality and retail industries) in a number of cases involving claims of discrimination and denial of access under Title III of the Americans With Disabilities Act.

In addition to his litigation practice, Mr. Sorensen works with companies to find practical, cost-effective strategies to their workforce problems. He routinely advises clients and conducts management training seminars on compliance with federal and state labor and employment laws, including the FLSA, Title VII, the ADEA, the ADA, the WARN Act, and the NLRA. He also prepares employment and non-compete agreements, develops personnel policies and employee handbooks, and advises clients on best practices for hiring, firing and managing employees. Additionally, Mr. Sorensen conducts internal investigations on wage and hour issues as well as claims of sexual harassment, discrimination, retaliation and other misconduct.

**Practice Notes**

› U.S. Court of Appeals, Sixth Circuit

› U.S. Court of Appeals, Ninth Circuit

/////////////////////////

**Professional Activities**

› Virginia State Bar

› District of Columbia Bar

› Federal Bar Association

› American Staffing Association

› Virginia Hospitality and Travel Association

/////////////////////////

**Education**

› J.D., University of Chicago Law School
  – *Edwin F. Mandel Legal Aid Clinic Employment Discrimination Project*—Student Attorney

› B.A., Haverford College

› Successfully moved to dismiss multi-million dollar wage and hour collective action in the Eastern District of Virginia.

› Obtained dismissal by jury of multi-million dollar retaliatory discharge claim.

› Obtained dismissal of sexual harassment lawsuit against federal government contractor on demurrer.

› Obtained dismissal of retaliation and defamation claims against firearms manufacturer.

› Obtained summary judgment in favor of telecommunications company in wage and hour, discrimination and retaliation lawsuit brought by former executive.

› Obtained summary judgment in favor of homebuilding company in pregnancy discrimination lawsuit.

› Obtained favorable judgment following bench trial of ADA Title III lawsuit against a national restaurant chain.

› Numerous favorable settlements of disputes involving wage and hour claims, discrimination claims, commercial contracts, non-compete agreements, misappropriation of trade secrets, unfair competition and other business torts.

## Publications

› Matthew H. Sorensen, *Deadline for Compliance with New ADA Accessibility Rules Approaching*, Resort Hotel Association Newsletter.

› Matthew H. Sorensen, *Tennessee Appellate Court Holds Tips Are Not Earnings Subject to Garnishment*, Practical Law Company Legal Update (March 30, 2012).

› Matthew H. Sorensen, et al., *Environmental Whistleblowers and the Eleventh Amendment: Employee Protection or State Immunity?* Tulane Environmental Law Journal (Winter 2001).

## Presentations

› Speaker, *Hotels and Restaurants Targeted in Government and Private Enforcement Efforts*, Virginia Beach Hotel & Motel Association (May, 2012).

33

**Cameron McEvoy** PLLC

# Patrick J. McDonald

**PARTNER**



📞 **(703) 460-9344**

✉ **Email**
(mailto:pmcdonald@cameronmcevoy.com)

//////////////////////////

**Recognition**



> Super Lawyers – Rising Star 2019

Patrick J. McDonald is a partner in the firm whose practice is focused on complex commercial disputes, with expertise in matters involving contracts, construction, wills, trust and estates, labor and employment, real estate, commercial landlord-tenant, intellectual property, corporate governance and fiduciary disputes, "business divorces" and various other forms of complex business disputes.  Mr. McDonald has tried cases and regularly appears in both the federal and state courts in Virginia, and represents his clients in arbitration and mediation as well.  Mr. McDonald is dedicated to obtaining the best result for his clients, whether through court, alternative dispute resolution or informal negotiation.   Though his focus is on dispute resolution, Mr. McDonald also advises his clients on contract negotiation and in other business matters.

Mr. McDonald is admitted to practice in the state courts of the Commonwealth of Virginia as well as the United States District Court for the Eastern District of Virginia and the United States Court of Appeals for the Fourth Circuit.  He has been specially admitted in various cases in Maryland and the District of Columbia, including both federal and state courts.

Originally from the Philadelphia area, Mr. McDonald resides in Northern Virginia with his wife and two children.  He obtained his Bachelor of Arts degree in Politics from Princeton University and obtained his Juris Doctorate from the George Mason University School of Law, cum laude, where he served as the Senior Notes Editor for the George Mason Civil Rights Law Journal.  Before entering private practice, Mr. McDonald served as a judicial law clerk to the Honorable Judges of the Circuit Court of Arlington County, Virginia. He also served as a judicial intern to the Honorable Dennis J. Smith of the Fairfax County Circuit Court in Fairfax, Virginia.  He is a member of the Fairfax Bar Association and the Arlington Bar Association, serving as a board member for the Arlington Bar's Young Lawyers Section.  Mr. McDonald has been selected as "Rising Star" by Thomson-Reuters' SuperLawyers for 2019 and 2020.

Away from the office, Mr. McDonald likes to spend his free time with his family and is an avid sports fan.

## Bar Admissions

> Virginia

> U.S. District Court, Eastern District of Virginia

///////////////////////

## Professional Activities

> Virginia State Bar

> Fairfax Bar Association

> Virginia Bar Association

///////////////////////

## Education

> J.D., George Mason University School of Law, Cum
  Laude
  – *George Mason University Civil Rights Law
    Journal* – Senior Notes Editor

> B.A., Princeton University

### Practice Focus

> Complex Commercial Litigation

> Employment Law

> Business Torts

> Congressional Hearings & Investigations

### Publications

> Patrick J. McDonald, *Cerqueira v. American Airlines: What are the Appropriate Limits of an Air Carrier's Permissive Refusal Power?*, 20 Geo. Mason U. Civ. Rts. L.J. 111 (2009)

# Daniel E. Ingersoll

**PARTNER**



📞 **703-460-9356**

**Email**

✉ (mailto:dingersoll@cameronmcevoy.com)

////////////////////////

## Recognition

> 2019, *Virginia Super Lawyers* – Rising Star – Mergers & Acquisitions

> 2019, *Washington D.C. Super Lawyers* – Rising Star – Mergers & Acquisitions

> 2015, 2016, 2019 *Virginia Business* magazine, "Legal Elite" – Corporate Counsel

> 2017, *Virginia Business* magazine, "Legal Elite" – Business Law

////////////////////////

## Bar Admissions

Daniel Ingersoll is a corporate and transactional business law attorney. He represents businesses and the individuals behind those businesses in all aspects of planning and operations.

Specifically, his practice expertise focuses on mergers and acquisitions, capital raising (equity and debt structured transactions), executive equity incentive compensation, business entity formation and growth, business succession planning, corporate partnering transactions, and all nature of general corporate and tax law issues as arise in the operation of a business. He brings particular expertise in sectors such as government contracts, general and specialty trade construction, technology, commercial consulting services, hospitality, and more. Having worked with businesses of vastly disparate revenue sizes and in vastly different stages of the corporate life cycle, Mr. Ingersoll seeks to take a holistic view of the business and work together with its owners to achieve profitable and successful outcomes.

Mr. Ingersoll has been named among Virginia's *Legal Elite* in the areas of Corporate Counsel and Business Law by *Virginia Business* magazine and has been recognized by his peers as a *Super Lawyer* in Mergers and Acquisitions in Virginia and Washington, D.C.. He received a Securities and Financial Regulation LLM degree from Georgetown University, a Juris Doctorate legal degree from the University of Richmond, and a Bachelor of Arts degree in English at the University of Virginia.

## Practice Focus

| | |
|---|---|
| › Corporate Law | › Tax Law |
| › Mergers & Acquisitions | › Tax & Finance: Business |
| › Securities | |

36

- Virginia
- District of Columbia
- Maryland

////////////////////////

**Professional Activities**

- American Bar Association
- Virginia State Bar Association
- Fairfax County Bar Association

////////////////////////

**Education**

- LL.M., Securities Law, Georgetown University Law Center, 2014
- J.D., *cum laude* , University of Richmond, 2009
- B.A., University of Virginia, 2003

**Publications**

- New Securities and Exchange Commission (SEC) Rules Open Up Crowdfunding Opportunities Amongst Accredited Investors ( July 24, 2013 )

- Traps and Concerns in Using Intentionally Defective Grantor Trusts ( August 23, 2012 )

37

# Eric S. Waldman

**PARTNER**



☎ **(703) 460-9349**

**Email**
✉ (mailto:ewaldman@cameronmcevoy.com)

///////////////////////

**Recognition**



› Super Lawyers Rising Star 2019-2021, Virginia and Washington, D.C.

During law school, Mr. Waldman served as an executive editor of the Syracuse Science and Technology Law Reporter and judicial extern for Judge Eugene H. Austin of the New Jersey Superior Court in Bergen County.

## Practice Focus

› Commercial Litigation

› Banking & Debtor/Creditor Litigation

› Construction Litigation

› Corporate Litigation

› Real Estate Litigation

› Commercial Landlord-Tenant Litigation

## Practice Notes

› Secured numerous favorable outcomes and settlements for a client bank to recover amounts relating to delinquent loans through litigation and the exercise of the bank's security interests.

› Secured several favorable outcomes and settlements for a student loan servicer client in defending claims by borrowers.

› Successfully defended at trial a defamation lawsuit between members of a non-profit association.

› Successfully defended private bank against a customer's unauthorized trading claims in a federal court bench trial. Represented one of the largest financial institutions in the U.S. in dozens of banking and credit card disputes.

› FINRA Arbitration award of $3.6 million to client investor relating to options and swaps trading claims against broker-dealer.

> Super Lawyers Rising Star 2013-2016, New York
  Metro

///////////////////////////

**Bar Admissions**

> Virginia
> District of Columbia
> Maryland
> New Jersey
> New York
> U.S. Court of Appeals, Fourth Circuit
> U.S. Court of Appeals, Second Circuit
> U.S. District Court, Eastern District of Virginia
> U.S. District Court, District of Maryland
> U.S. District Court, District of Columbia
> U.S. District Court, Southern District of New York
> U.S. District Court, Eastern District of New York
> U.S. District Court, District of New Jersey

///////////////////////////

**Professional Activities**

> Fairfax Bar Association
> Virginia Trial Lawyers Association

///////////////////////////

**Education**

> J.D., Syracuse University College of Law
  – *Executive Editor, Syracuse Science and Technology Law Reporter*

> B.A., George Washington University

> Successfully defended magazine publisher in suit by former senior executive alleging breach of contract and demanding payment of severance compensation.

> Secured favorable settlements for private bank in customer arbitrations relating to trading losses incurred during the 2008 financial crisis.

> Represented individuals and corporations in 28 U.S.C. § 1782 applications to obtain discovery in aid of non-U.S. criminal and civil proceedings.

## Publications

> Note, *Going Straight: Whether P2P Technology Can Be Legitimized in the Wake of the Grokster Decision*, 15 SYRACUSE SCI. & TECH. L. REP. 1 (2006).

# Richard G. Cole III
ASSOCIATE



📞 **703-460-9354**

**Email**

✉ (mailto:rcole@cameronmcevoy.com)

/////////////////////

**Recognition**

Legal Elite – *Virginia Business* magazine (2021)

/////////////////////

**Bar Admissions**
› Virginia
› Maryland
› District of Columbia
› United States Court of Appeals, Fourth Circuit
› United States District Court, Eastern District of
  Virginia

Rick Cole is an associate attorney, focusing his practice on the areas of commercial litigation and banking & debtor/creditor litigation.

Prior to joining Cameron/McEvoy, Rick served as a law clerk for the Honorable David A. Oblon of the Fairfax County Circuit Court, Virginia's busiest trial court. He earned his Juris Doctor from Antonin Scalia Law School at George Mason University, where he was a member of the George Mason Law Review. While in law school, Rick worked for the U.S. Attorney's Office, the U.S. Securities & Exchange Commission, the Maryland Office of the Attorney General, the Alexandria Commonwealth's Attorney's Office, as well as for several private law firms specializing in business and real estate litigation, landlord-tenant disputes, appellate practice, and personal injury.

### Practice Focus

› Commercial Litigation

› Banking & Debtor/Creditor Litigation

### Publications

Comment, *The Constitutional Insecurity of Secured Smartphones*, 39 Univ. of La Verne Law Rev. 173 (Spring 2018)

> United States District Court, District of Maryland
> United States District Court, District of Columbia

//////////////////////

**Professional Activities**

//////////////////////

**Education**

> J.D.,  Antonin Scalia Law School at George Mason
  University

> B.A., Dickinson College

# William E. Evans
**ASSOCIATE**



📞  **703-460-9358**

**Email**

✉ (mailto:wevans@cameronmcevoy.com)

//////////////////////

**Recognition**

Legal Elite – *Virginia Business* magazine (2021)

//////////////////////

**Bar Admissions**

›  Virginia

›  District of Columbia

›  U.S. District Court, Eastern District of Virginia

›  U.S. Bankruptcy Court, Eastern District of Virginia

›  U.S. Court of Appeals, District of Columbia Circuit

William ("Will") Evans is a litigator and trial attorney who represents clients in a wide range of civil matters, both in and out of court.

Mr. Evans helps his clients protect their rights and find solutions in difficult situations. He regularly advises on and litigates disputes involving contracts, business torts (such as breach of fiduciary duty and fraud), real estate, commercial lending, creditors' rights (including adversary proceedings in bankruptcy), insurance coverage, and employment.

Mr. Evans represents clients in state and federal court, including bankruptcy court and appellate proceedings, as well as in alternative dispute resolution (such as mediation and arbitration). He has tried numerous civil cases, including both jury and bench trials.

Prior to joining Cameron/McEvoy in October 2020, Mr. Evans was an attorney at an AmLaw 100 law firm, where he represented clients that included publicly-traded and Fortune 500 companies.

## Practice Focus

›  Commercial Litigation

›  Corporate Litigation

›  Construction Litigation

›  Banking & Debtor/Creditor Litigation

›  Labor and Employment Disputes

## Practice Notes

›  Represented businesses in a variety of commercial disputes, including breach of contract and business torts (such as breach of fiduciary duty and fraud), and obtained favorable verdicts and out-of-court settlements. **42**

> U.S. Court of Appeals, Second Circuit

> U.S. Court of Appeals, Fourth Circuit

///////////////////////

**Professional Activities**

> Virginia State Bar Association

> Fairfax County Bar Association

///////////////////////

**Education**

> J.D., Georgetown University Law Center
 — *The Tax Lawyer*, Executive Editor

> B.S., Duke University

> Represented residential and commercial property owners in construction disputes with contractors and architects and in disputes over ownership rights to real properties.

> Represented banks in a variety of matters, including enforcing the bank's rights in collateral and defending against contract and tort claims asserted by borrowers.

> Represented employers in a variety of employment disputes including claims under the ADA, FLSA, FMLA, and state law.

> Defended and advanced claims arising in connection with corporate mergers.

> Represented investors, owners, and developers of Low Income Housing Tax Credit projects in a variety of disputes, including disputes related to financial misconduct, ownership rights to the projects, and contractual rights among the parties.

> Represented owners of a small business accused of misconduct by another owner and negotiated their departure from the company without litigation.

> Represented a local business in asserting claims under state law and ERISA against former corporate officers and ESOP trustees that resulted in a favorable settlement.

> Obtained settlement of a personal injury lawsuit against a local business and obtained substantial settlement contributions from an insurance company that repeatedly denied coverage and a property management company that denied responsibility.

> Represented the owner of a power plant in federal court and before FERC in connection with the failure of a state agency to act on permit requests for a natural gas pipeline, ultimately allowing construction of the pipeline to proceed. *Millennium Pipeline Co., LLC v. Seggos*, 860 F.3d 696 (D.C. Cir. 2017).

> Obtained judgment in favor of an investment bank for both its fees owed in connection with a commercial transaction and its attorneys' fees incurred in obtaining the judgment. *Seale & Associates, Inc. v. Ingersoll-Rand Co.*, 2016 WL 4435083 (E.D. Va. Aug. 16, 2016).

> Successfully defended a title insurer in state supreme court on an issue of first impression. *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 776 S.E.2d 808 (2015).

**Publications**

43

# Cameron McEvoy
PLLC

## John P. Dedon
**OF COUNSEL**



℡ **703-460-9351**

**Email**

✉ (mailto:jdedon@cameronmcevoy.com)

//////////////////////////

**Recognition**

Fellow of the American College of Trust and Estate Counsel (ACTEC)

"Hall of Fame" *Washingtonian* magazine Top Wealth/Financial Advisor

Martindale-Hubbell AV Rating/Top Rated Estate and Taxation Lawyer

Consecutive years named Washingtonian Best Lawyers; Best Lawyers in America® for Trusts and Estates; Top Lawyer and Top Financial

John P. Dedon is a tax lawyer with a talent for explaining the complexities of tax law in lay terms. Working in the estate planning, asset protection and business areas for more than 35 years, John helps clients preserve assets and plan for the future with traditional planning tools, including Trusts (dynasty trusts, intentionally defective trusts, grantor retained annuity trusts), LLC and partnership entities, and cutting- edge concepts such as cryonic preservation trusts. John also works extensively in the charitable area, creating public and private charities, remainder and lead trusts, supporting organizations, and churches.

John has been quoted extensively in newspapers throughout the country, including the *Wall Street Journal, Washington Post,* and *Chicago Tribune.* He has written numerous articles for professional journals and publications on tax issues and speaks on tax matters and wealth preservation issues for health care providers, certified public accountants, lawyers, financial planners, and the public. He is also the author of the blog, Dedon on Estate Planning, a regularly updated discussion of estate planning topics affecting Virginia residents and U.S. citizens.

Visit John's blog at <u>DedonOnEstatePlanning.com</u> (http://DedonOnEstatePlanning.com)

.

## Practice Focus

› Estate Planning

› Tax Planning and Controversy

› Wealth Preservation

› Asset Protection

› Corporate and Business Planning

**44**

Professional by *Northern Virginia Magazine*; Legal
Elite by *Virginia Business* ~~magazine~~



/////////////////////////

**Bar Admissions**
› Virginia
› U.S. Tax Court
› U.S. Claims Court
› U.S. District Court, Eastern District of Virginia

/////////////////////////

**Professional Activities**
› Fairfax Bar Association
› Virginia Bar Association
› Board, Member

/////////////////////////

**Education**
› LL.M., Taxation, Georgetown University Law Center
› J.D., New England School of Law (*Cum Laude*)
› B.A., The George Washington University, *with Honors*

## Publications

› Preserving Assets in Trusts for Clients Considering Cyronics, *Estate Planning* magazine, August 2018

› The "Simple" Private Foundation – Changing One Life at a Time, *Estate Planning* magazine, May 2018

› Cautionary Guidance for Operating a Private Foundation, *Estate Planning* magazine (2016)

› Integrating Income Taxes in Modern Estate Planning Decisions—A Case Study, Tax Management Estate, Gifts and Trusts Journal (2016)

› Attorney Advises Medical Professionals on Estate Planning (2016)

## Presentations

› Essentials of Estate Planning: Is There a Paradigm Shift, Loudoun County Bar, Oct. 2017

› Which Dragon Do We Slay? The Interplay of Income Tax planning and Drafting Wills and Trusts, Virginia Bar Association, July 2017

› Estate Planning Issues and Concerns, Fairfax County Bar, May 2017

› Estate Planning Issues and Solutions, Cypress International, July 2016

# EXHIBIT "5"

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
#### Washington, D.C. 20549

# FORM 10-K

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2020**

**or**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from          to**

**Commission file number 001-38996**

# ProSight Global, Inc.
**(Exact name of registrant as specified in its charter)**

| | |
|---|---|
| **Delaware** | **35-2405664** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**412 Mt. Kemble Avenue**
**Suite 300**
**Morristown, NJ 07960**
**(973) 532-1900**
(Address, Including Zip Code, and Telephone Number, Including Area Code, of Registrant's Principal Executive Offices)

**N/A**
(Former name, former address and former fiscal year, if changed since last report)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class: | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock, Par Value $0.01 per share | PROS | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: **NONE**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Exchange Act. Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☒ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| | | Emerging growth company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☒.

The aggregate market value of voting and non-voting common shares held by non-affiliates of the registrant as of June 30, 2020 (the last business day of the registrant's most recently completed second fiscal quarter) was approximately $85,065,052 based on the closing sale price of the registrant's common shares on the New York Stock Exchange.

There were 43,657,099 shares of Common Stock ($0.01 par value) outstanding as of February 19, 2021.

Table of Contents

- potential conflicts of interests with our principal stockholders.

We discuss many of these risks in greater detail under the section titled "Risk Factors" in Part I, Item 1A of this Annual Report. Given these uncertainties, you should not place undue reliance on these forward-looking statements. We qualify all of the forward-looking statements in this Annual Report by these cautionary statements. Except as required by law, we undertake no obligation to publicly update any forward-looking statements, whether as a result of new information, future events or otherwise.

References to the "Company," "ProSight," "we," "us," and "our" are to ProSight Global, Inc. and its consolidated subsidiaries unless the context otherwise requires. References to "insurance subsidiaries" are to New York Marine and General Insurance Company ("New York Marine"), Gotham Insurance Company ("Gotham") and Southwest Marine and General Insurance Company ("Southwest Marine") unless the context otherwise requires.

**PART I**

## Item 1. Business

### Overview

We are an entrepreneurial specialty insurance company that since our founding in 2009 have built products, services and solutions with the goal of significantly improving the experience and value proposition for our customers. Our main office is located in Morristown, New Jersey and our common stock is publicly traded on the New York Stock Exchange under the symbol "PROS".

We are led by a highly experienced and entrepreneurial team with decades of insurance leadership experience at the Company and other leading insurers. We write property and casualty ("P&C") insurance with a focus on underwriting specialty risks by partnering with a select number of distributors, often on an exclusive basis. We have a diverse business mix covering specialty niches within the eight customer segments in which we operate. We market and distribute our insurance product offerings in all 50 states within the United States of America, Washington D.C, Puerto Rico and the Virgin Islands on both an admitted and non-admitted basis. We are focused on delivering consistent underwriting profitability with low volatility of underwriting results.

### Merger Agreement

On January 15, 2021, we announced that we had entered into an agreement and plan of merger (the "Merger Agreement") with Pedal Parent Inc., a Delaware corporation ("Parent"), owned by affiliates of TowerBrook Capital Partners L.P. and Further Global Capital Management, and Pedal Merger Sub, Inc., pursuant to which, subject to the terms and conditions of the Merger Agreement, Pedal Merger Sub, Inc. would merge with and into the Company (the "proposed merger"), with the Company surviving as a wholly owned subsidiary of Parent.

Pursuant to the Merger Agreement, each ProSight common share held by our stockholders will be converted into the right to receive $12.85 in cash. In connection with the proposed merger, the Company has also entered into a loss portfolio binder with Cavello Bay Reinsurance Limited ("Cavello Bay") in connection with an adverse development cover and loss portfolio transfer transaction (a "legacy transfer transaction") to be implemented immediately after the effective time of the proposed merger. In the event that this loss portfolio binder is terminated under certain circumstances including those related to the termination of the Merger Agreement, the Company may be required to pay Cavello Bay approximately $3 million plus certain costs.

The proposed merger is anticipated to close in the third quarter of 2021, subject to satisfaction or waiver of the closing conditions, including approval by regulatory authorities including those related to the legacy transfer transaction.

5

Table of Contents

The stockholder approval required to consummate the proposed merger has been obtained, and no further action by our stockholders in connection with the proposed merger is required.

### Our History

We were founded in 2009 by members of the current management team and secured capital commitments from affiliates of each of The Goldman Sachs Group, Inc. ("Goldman Sachs") and TPG Global, LLC. We established our insurance operating platform and acquired our insurance subsidiaries through the acquisition of New York Marine in 2010. We write insurance out of three subsidiaries: New York Marine, Gotham and Southwest Marine. New York Marine is admitted in 50 states, Washington D.C., Puerto Rico and the Virgin Islands. Southwest Marine is licensed in 49 states and Washington D.C. and is eligible to write on a non-admitted basis in New York. Gotham is admitted in New York and is eligible to write on a non-admitted basis in 49 states and Puerto Rico.

The insurance subsidiaries participate in a risk sharing pool managed by ProSight Specialty Management Company. This structure allows us to leverage the efficiencies of having a single vehicle managing operations and providing back-office services across our business. All premiums, losses and expenses written by our insurance subsidiaries are pooled and then are allocated to these three insurance subsidiaries in accordance with their respective pool participation percentages. The pool participation percentages are 80% for New York Marine, 15% for Gotham and 5% for Southwest Marine.

In 2011, we formed a Bermuda holding company structure and acquired several entities in the United Kingdom ("U.K.") in order to build Lloyd's Syndicate 1110 ("Syndicate"). By 2016, however, we concluded that our business model's emphasis on niche expertise and exclusive distribution, as well as our high profit expectations, made for an inappropriate fit with the Lloyd's marketplace on a cost-effective basis. In 2017, we placed the Syndicate into run-off, and then entered into a two-phase sale transaction to exit our U.K. operations, which closed in October 2017 and March 2018. See Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations — Factors Affecting Our Results of Operations on this Annual Report on Form 10-K ("Annual Report").

Prior to July 25, 2019, the Company was a wholly-owned subsidiary of ProSight Global Holdings Limited ("PGHL"), a Bermuda holding company. Effective July 25, 2019, prior to the completion of the Company's initial public offering ("IPO"), PGHL merged with and into the Company, with the Company surviving the merger (the "IPO merger"). The prior holders of PGHL's equity interests (other than holders of PGHL profit interests known as "P Shares") received in the aggregate, as merger consideration, the right to receive 6.46 shares of the Company's common stock for each such outstanding PGHL equity interest. The total merger consideration was 38,851,369 shares of the Company's common stock, which then comprised 100% of the shares of the Company's outstanding common stock. All P Shares then outstanding were forfeited in connection with the IPO.

As a result of the IPO merger, the assets and liabilities of the Company include, effective July 25, 2019, the assets and liabilities of PGHL. In addition, on July 24, 2019, in connection with the IPO merger, the Company's duly adopted amended and restated certificate of incorporation (the "Certificate of Incorporation") became effective, providing for, among other things, the authorization of 200,000,000 shares of common stock and 50,000,000 shares of preferred stock. All share and per share amounts in the audited consolidated financial statements and related notes have been restated for all historical periods presented to give effect to the IPO merger and related conversion of shares, including reclassifying an amount equal to the change in value of common stock to additional paid-in capital, as well as the effectiveness of the Certificate of Incorporation.

Prior to the IPO merger, PGHL's subsidiaries ProSight Specialty International Holdings Limited and ProSight Specialty European Holdings Limited ("PSEH") were merged with and into the Company, effective February 5, 2019. Additionally, effective February 5, 2019, ProSight Specialty Bermuda Limited ("PSBL") became a wholly-owned subsidiary of the Company. Prior to February 5, 2019, PSBL was a wholly-owned subsidiary of PSEH.

6

# EXHIBIT "6"



KPMG LLP
1601 Market Street
Philadelphia, PA 19103-2499

## NEW YORK MARINE AND GENERAL INSURANCE COMPANY
### New York, NY

Statement of Actuarial Opinion
As of December 31, 2021

### IDENTIFICATION

I, G. Christopher Nyce, FCAS, MAAA, am associated with the firm of KPMG LLP. I was appointed by the Board of Directors of New York Marine and General Insurance Company (the "Company") on March 6, 2013 to render this opinion with regard to loss and loss adjustment expense reserves as of December 31, 2021. I meet the definition of a Qualified Actuary per the NAIC Annual Statement Instructions – Property and Casualty, Actuarial Opinion.

### SCOPE

The ProSight pooled companies (the "ProSight Pool") consists of three affiliated companies constituting an intercompany reinsurance agreement. New York Marine and General Insurance Company is the lead company. The following table lists all of the participating companies, the state of domicile, and the participation percentage for each. As the years of participation differs, this opinion reflects the results of my analysis for the years and shares for which the Company participates.

|  | State of Domicile | Years of Participation | Participation % |
|---|---|---|---|
| New York Marine and General Insurance Company | New York | 2007 – 2021<br><br>1987 – 2006<br><br>Prior to 1987 | 80%<br><br>85%<br><br>100% |
| Gotham Insurance Company | New York | 1987 – 2021<br><br>Prior to 1987 | 15%<br><br>None |
| Southwest Marine and General Insurance Company | Arizona | 2007 – 2021<br><br>Prior to 2007 | 5%<br><br>None |

KPMG LLP, a Delaware limited liability partnership and a member firm of the KPMG global organization of independent member firms affiliated with KPMG International Limited, a private English company limited by guarantee.



**New York Marine and General Insurance Company**
2021 Statement of Actuarial Opinion

such damages to financially responsible parties. Reserve estimates for these exposures are subject to significantly greater than normal variation and uncertainty.

All business written by the Company prior to November 23, 2010 is associated with the former Mutual Marine Office, Inc. ("MMO") Pool. Effective November 23, 2010, MMO was renamed ProSight Specialty Management Corporation ("ProSight") after its parent company, NY MAGIC, Inc, was acquired by ProSight Specialty Insurance Holdings, Inc. Effective 2021, TowerBrook Capital Partners L.P. ("TowerBrook") and Further Global Capital Management ("Further Global") acquired the Company.

In rendering this opinion, I first evaluated the loss and loss adjustment expense liabilities of the ProSight Pool, and then allocated the result to statutory company based on the pooling practices of the Company, gross and net of internal and external reinsurance.

The data underlying the loss and loss adjustment expense reserves is compiled on a basis net of salvage and subrogation received. Reserves developed using this data implicitly anticipate future salvage and subrogation recoveries.  The Company's reserves for anticipated salvage and subrogation (reported in Schedule P – Part 1) are $36,505,000. I have not separately reviewed the Company's provision for anticipated salvage and subrogation recoverable.

In 2021 the Company no longer discounts its loss and loss adjustment expense reserves for the time value of money using either tabular or non-tabular discounts.

During the course of my review, I considered the reinsurance agreements in effect for the Company during the review period and the Company's evaluation of the collectability of ceded amounts. My review included discussions with management regarding the Company's process for evaluating its reinsurers and the Company's assessment of the collectability of ceded amounts.

The company entered a significant retroactive reinsurance agreement that is explained below. Ceded loss and loss adjustment expenses reserves totaled $885M, or 150.2% of surplus, as of December 31, 2021. The Company's material external ceded loss and loss adjustment expense reserves are either with affiliated companies or companies rated "A-" or better by A.M. Best Company, or are secured. Of the ceded reinsurance, 24.4% is ceded to the two US affiliates.  In accordance with statutory requirements, the Company carries a provision for reinsurance (Page 3, Line 16) in the amount of $5,261,000, of which $4,393,000 relates to unauthorized reinsurance and $389,000 to overdue authorized reinsurance. Total overdue reinsurance balances over 120 days are $2,025,000. Overdue 120 days and balances in dispute arise mainly from a coverage dispute with one reinsurer, with Schedule F reporting $1,832,000 overdue by 120 days and an amount in dispute of $3,412,000.  Settlement negotiations with this reinsurer are ongoing, and this US based reinsurer has an NAIC Reinsurer Designation Equivalent of 2. The Company does have a contingent liability with respect to reinsurance recoverables, as

**Page** 5



**New York Marine and General Insurance Company**
2021 Statement of Actuarial Opinion

I have reviewed the Company's statutory results against standards set forth using the NAIC IRIS tests.   No exceptional values were noted with respect to the One-Year Reserve Development to Surplus or the Two-Year Reserve Development to Surplus tests. However, the Company's values from the Estimated Current Reserve Deficiency to Surplus test were an exception. The test 13 exceptional value can be attributed to lower net reserves in 2021 due to the retroactive reinsurance ceded, and is not meaningful.

I have neither examined the assets of the Company nor formed any opinion as to the value or validity of the assets.  My opinion that the reserves make a reasonable provision in the aggregate for unpaid loss and loss adjustment expense obligations of the Company presumes that these reserves are backed by valid assets and that these assets reflect suitably scheduled maturities and/or sufficient liquidity to meet cash flow requirements.

This Statement of Actuarial Opinion is intended solely for filing with state regulatory agencies.

An Actuarial Report and underlying work papers supporting the findings expressed in this Statement of Actuarial Opinion are being provided to the Company to be retained for a period of seven years at its administrative offices and available for regulatory examination. The Actuarial Report contains significant proprietary information.  It is expected that the Actuarial Report be held confidential and is not intended for public inspection.

G. Christopher Nyce, FCAS, MAAA
Principal
KPMG LLP
Three Radnor Corporate Center
Suite 105
100 Matsonford Road
Radnor, PA 19087
610-341-4803
gnyce@kpmg.com

February 24, 2022

**Page** 7

# EXHIBIT "7"

PROPERTY AND CASUALTY COMPANIES - ASSOCIATION EDITION



2021                                                                        Document Code: 201

# ANNUAL STATEMENT
### For the Year Ended DECEMBER 31, 2021
OF THE CONDITION AND AFFAIRS OF THE

# NEW YORK MARINE AND GENERAL INSURANCE COMPANY

| | | | | |
|---|---|---|---|---|
| NAIC Group Code | 0256 (Current Period) , 0256 (Prior Period) | NAIC Company Code | 16608 | Employer's ID Number  13-2703894 |

Organized under the Laws of    New York    ,    State of Domicile or Port of Entry    NY

Country of Domicile    United States of America

Incorporated/Organized    03/22/1972    Commenced Business    07/01/1972

Statutory Home Office    107 Greenwich Street, 16th Floor    ,    New York, NY, US  10006
(Street and Number)    (City or Town, State, Country and Zip Code)

Main Administrative Office    412 Mt. Kemble Ave, Suite 300C
(Street and Number)
Morristown, NJ, US 7960    (800)774-2755
(City or Town, State, Country and Zip Code)    (Area Code) (Telephone Number)

Mail Address    412 Mt. Kemble Ave, Suite 300C    ,    Morristown, NJ, US 07960
(Street and Number or P.O. Box)    (City or Town, State, Country and Zip Code)

Primary Location of Books and Records    412 Mt. Kemble Ave, Suite 300C
(Street and Number)
Morristown, NJ, US 07960    (800)774-2755
(City or Town, State, Country and Zip Code)    (Area Code) (Telephone Number)

Internet Website Address    www.prosightspecialty.com

Statutory Statement Contact    Gerald Ayash    (973)532-1954
(Name)    (Area Code)(Telephone Number)(Extension)
gayash@prosightspecialty.com
(E-Mail Address)    (Fax Number)

## OFFICERS

| Name | Title |
|---|---|
| JONATHAN RITZ | CEO |
| ANTHONY PISZEL | TREASURER & CFO |
| LINDA LIN | SECRETARY & GENERAL COUNSEL |

## OTHERS

GERALD AYASH, CHIEF ACCOUNTING OFFICER          CHRIS DOUGHERTY, CHIEF UNDERWRITING OFFICER
CHRIS FINNERAN, CHIEF CLAIMS OFFICER            KEYAN SHAHDI, CHIEF RISK OFFICER
KARI HILDER, CHIEF HUMAN RESOURCES OFFICER      LEE LLOYD, CHIEF ACTUARIAL OFFICER
NESTOR LOPEZ, CHIEF INFORMATION OFFICER         NICO SANTINI, CHIEF INVESTMENT OFFICER
MIKE SCIOLE, CHIEF OPERATING OFFICER            TIM RYAN, PRESIDENT

## DIRECTORS OR TRUSTEES

JONATHAN RITZ                    MICHAEL ANGELINA
KARIN HIRTLER-GARVEY             ERIC LEATHERS
JONATHAN BILZIN                  STANLEY GALANSKI
SUSAN CICCARONE                  BRUCE KESSLER
ANDREW PINKES

State of    New Jersey
County of    Morris    ss

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

| (Signature) | (Signature) | (Signature) |
|---|---|---|
| JONATHAN RITZ | LINDA LIN | ANTHONY PISZEL |
| (Printed Name) | (Printed Name) | (Printed Name) |
| 1. | 2. | 3. |
| CEO | SECRETARY & GENERAL COUNSEL | TREASURER & CFO |
| (Title) | (Title) | (Title) |

ANNUAL STATEMENT FOR THE YEAR **2021** OF THE **NEW YORK MARINE AND GENERAL INSURANCE COMPANY**

# Notes to Financial Statements

(2)    The amount of Federal income taxes incurred that are available for recoupment in the event of future net losses are:

|      | Ordinary | Capital | Total |
|------|----------|---------|-------|
| 2021 | - | 805,764 | 805,764 |
| 2020 | 6,506,949 | 2,286,059 | 8,793,008 |
| 2019 | - | 91,580 | 91,580 |

(3)    The aggregate amount of deposits admitted under Section 6603 of the Internal Revenue Code are $ 0.

**F. Consolidated federal income tax return**

(1)    The Company's federal income tax return is consolidated with the following entities:
   a) ProSight Global, Inc.

   b) ProSight Specialty Bermuda Limited

   c) ProSight Specialty Insurance Group Inc.

   d) ProSight Specialty Management Company, Inc.

   e) ProSight Specialty Insurance Solutions, LLC

   f) Pacific Mutual Marine Office, Inc.

   g) Mutual Marine Office of the Midwest, Inc.

   h) Gotham Insurance Company

   i) Southwest Marine and General Insurance Company

   j.) Pedal Parent Inc.

(2) The method of allocation between the companies is subject to written agreement, approved by the Board of Directors.  Allocation is based upon separate return calculations with current credit for net losses. Intercompany tax balances are settled quarterly.

(3) The Company's income tax returns that remain open to examination are for the years 2015 and subsequent.

**G. SSAP 101 paragraph 27 Disclosure regarding federal or foreign income tax loss contingencies;**

The company has no loss contingencies for which it is reasonably possible that the total liability will significantly increase within the next twelve months of the reporting date.

10. INFORMATION CONCERNING PARENT, SUBSIDIARIES, AFFILIATES and OTHER RELATED PARTIES:

A.    Effective August 4, 2021, the reporting entity's indirect parent, ProSight Global, Inc. ("PGI") completed its previously announced merger with Pedal Merger Sub, Inc. ("Merger Sub"), pursuant to the agreement and plan of merger (the "Merger Agreement") by and among Pedal Parent Inc., owned by affiliates of TowerBrook Capital Partners L.P. and Further Global Capital Management, and Merger Sub. Pursuant to the Merger Agreement, Merger Sub merged with and into PGI (the "merger"), with PGI surviving as a wholly owned subsidiary of Pedal Parent Inc.

In connection with the merger, the reporting entity implemented its ADC/LPT. The New York Department of Financial Services previously approved the merger and ADC/LPT.

For the years ended December 31, 2021 and 2020, management expenses incurred under its agreements with ProSight Specialty Management Company, Inc., were $91,783,078 and $87,665,359 respectively.

The Company entered into an investment management agreement with Goldman Sachs Asset Management, L.P. (GSAM) effective February 8, 2011.  Under terms of the agreement, GSAM manages the Company's investment portfolio.  Fees paid

# EXHIBIT "8"

**PROPERTY AND CASUALTY COMPANIES - ASSOCIATION EDITION**



2021                    Document Code: 201

# ANNUAL STATEMENT
### For the Year Ended DECEMBER 31, 2021
OF THE CONDITION AND AFFAIRS OF THE

# NEW YORK MARINE AND GENERAL INSURANCE COMPANY

| NAIC Group Code | 0256 | , | 0256 | NAIC Company Code | 16608 | Employer's ID Number | 13-2703894 |
|---|---|---|---|---|---|---|---|
| | (Current Period) | | (Prior Period) | | | | |

Organized under the Laws of _____ New York _____, State of Domicile or Port of Entry _____ NY

Country of Domicile _____ United States of America

| Incorporated/Organized | 03/22/1972 | Commenced Business | 07/01/1972 |
|---|---|---|---|

Statutory Home Office _____ 107 Greenwich Street, 16th Floor _____, _____ New York, NY, US  10006
(Street and Number) | (City or Town, State, Country and Zip Code)

Main Administrative Office _____ 412 Mt. Kemble Ave, Suite 300C
(Street and Number)

Morristown, NJ, US 7960 | (800)774-2755
(City or Town, State, Country and Zip Code) | (Area Code) (Telephone Number)

Mail Address _____ 412 Mt. Kemble Ave, Suite 300C _____, _____ Morristown, NJ, US 07960
(Street and Number or P.O. Box) | (City or Town, State, Country and Zip Code)

Primary Location of Books and Records _____ 412 Mt. Kemble Ave, Suite 300C
(Street and Number)

Morristown, NJ, US 07960 | (800)774-2755
(City or Town, State, Country and Zip Code) | (Area Code) (Telephone Number)

Internet Website Address _____ www.prosightspecialty.com

Statutory Statement Contact _____ Gerald Ayash _____ (973)532-1954
(Name) | (Area Code)(Telephone Number)(Extension)

gayash@prosightspecialty.com
(E-Mail Address) | (Fax Number)

## OFFICERS

| Name | Title |
|---|---|
| JONATHAN RITZ | CEO |
| ANTHONY PISZEL | TREASURER & CFO |
| LINDA LIN | SECRETARY & GENERAL COUNSEL |

## OTHERS

GERALD AYASH, CHIEF ACCOUNTING OFFICER
CHRIS FINNERAN, CHIEF CLAIMS OFFICER
KARI HILDER, CHIEF HUMAN RESOURCES OFFICER
NESTOR LOPEZ, CHIEF INFORMATION OFFICER
MIKE SCIOLE, CHIEF OPERATING OFFICER

CHRIS DOUGHERTY, CHIEF UNDERWRITING OFFICER
KEYAN SHAHDI, CHIEF RISK OFFICER
LEE LLOYD, CHIEF ACTUARIAL OFFICER
NICO SANTINI, CHIEF INVESTMENT OFFICER
TIM RYAN, PRESIDENT

## DIRECTORS OR TRUSTEES

JONATHAN RITZ
KARIN HIRTLER-GARVEY
JONATHAN BILZIN
SUSAN CICCARONE
ANDREW PINKES

MICHAEL ANGELINA
ERIC LEATHERS
STANLEY GALANSKI
BRUCE KESSLER

State of _____ New Jersey
County of _____ Morris _____ ss

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

| (Signature) | (Signature) | (Signature) |
|---|---|---|
| JONATHAN RITZ | LINDA LIN | ANTHONY PISZEL |
| (Printed Name) | (Printed Name) | (Printed Name) |
| 1. | 2. | 3. |
| CEO | SECRETARY & GENERAL COUNSEL | TREASURER & CFO |
| (Title) | (Title) | (Title) |

58

ANNUAL STATEMENT FOR THE YEAR **2021** OF THE **NEW YORK MARINE AND GENERAL INSURANCE COMPANY**



# Management's Discussion and Analysis

## NEW YORK MARINE AND GENERAL INSURANCE COMPANY
## NAIC # 16608

**107 Greenwich Street, 16th Floor, New York, NY 10006**
**800-774-2755**

New York Marine and General Insurance Company (the "Company" or "New York Marine"), the lead member of the New York Marine Group, was formed on March 22, 1972 and commenced business on July 1, 1972. The Company specializes in the underwriting of specialty businesses through producer distribution networks. Specialty business lines include ocean marine, professional liability, media, casualty, property and other specialty insurance businesses. The business is managed and serviced by ProSight Specialty Management Company, Inc. ("PSMC"). The Company is a wholly-owned subsidiary of ProSight Specialty Insurance Group, Inc. ("PSIG"), which also owns 100% of the common stock of PSMC. PSIG and ProSight Specialty Bermuda Limited are wholly-owned subsidiaries of ProSight Global, Inc. ("PGI").

The group's insurance companies include New York Marine, Gotham Insurance Company ("Gotham") and Southwest Marine and General Insurance Company ("Southwest", collectively the "Group"). Gotham maintains a reinsurance agreement with New York Marine as its direct parent, under terms of which Gotham cedes 100% of its gross direct business and assumes 15% of New York Marine's total retained business upon underwriting years 1987 and forward. Effective as of January 1, 2007, the Company maintains a reinsurance agreement with its subsidiary, Southwest, under terms of which Southwest assumes 5% of New York Marine's total otherwise retained business (the "2007 Reinsurance Agreement"). On December 31, 2015, New York Marine and Southwest entered into a separate reinsurance agreement whereby, Southwest cedes 100% of its in-force and future business to New York Marine (the "New York Marine Reinsurance Agreement").

On August 4, 2021, (a) the Company and Southwest entered into amendments to each of the (i) 2007 Reinsurance Agreement and (ii) the New York Marine Reinsurance Agreement, and (b) the Company and Gotham entered into an amendment to their reinsurance agreement effective as of January 1, 1987 (collectively, the "Amendments"), with such Amendments to be effective as of October 1, 2020. The foregoing three agreements, as amended, are referred to collectively in this paragraph as the "Pooling Agreements." The Company is a party to an Adverse Development Cover and Loss Portfolio Transfer Reinsurance Contract entered into with a non-affiliate, Cavello Bay Reinsurance Limited ("Cavello"), to be effective October 1, 2020 (the "ADC/LPT"), pursuant to which the reinsurance thereunder is applied after giving effect to the cession of certain subject business by each of Southwest, and Gotham to the Company pursuant to the Pooling Agreements, but prior to the retrocession by the Company of the pooled business back to each of Southwest and Gotham in accordance with their respective pool participation percentages pursuant to the Pooling Agreements (which retrocession is on a net basis after giving effect to any recoveries actually collected by the Company from Cavello under the ADC/LPT). The Company, Southwest, and Gotham entered into the Amendments to, among other matters, specify that the Pooling Agreements shall apply to the business that is subject to the ADC/LPT in the manner described above.

Most of the Company's operating expenses are managed via a Services Agreement with PSMC that provides all underwriting, claims and management services for the Company, and are limited to actual costs incurred by PSMC on behalf of the Company. The Services Agreement also provides for PSMC to supply all services and facilities necessary for the conduct of the Company's business. The Company pays PSMC fees equal to the actual costs and expenses incurred by or on behalf of PSMC in connection with rendering such service to the Company, including, without limitation, all reasonable employee benefits and overhead costs and expenses incurred by or on behalf of PSMC.

ANNUAL STATEMENT FOR THE YEAR **2021** OF THE **NEW YORK MARINE AND GENERAL INSURANCE COMPANY**

# Management's Discussion and Analysis

Prior to July 25, 2019, PGI was a wholly-owned subsidiary of ProSight Global Holdings Limited ("PGHL"), a Bermuda holding company. Effective July 25, 2019, at the time of PGI's initial public offering ("IPO"), PGHL merged with and into PGI with PGI as the merger survivor.

Effective August 4, 2021, PGI ceased to be a public company when it was merged with and into Pedal Merger Sub, Inc., ("Merger Sub") a wholly-owned subsidiary of Pedal Parent Inc. ("Parent"), with PGI as the merger survivor. In connection with this transaction, PGI underwent a direct change of ownership and control, and the Company underwent an indirect change of ownership and control. In connection with this transaction, each common share held by the PGI stockholders were converted into the right to receive $12.85 in cash, without interest, total merger consideration was $586.6 million. Following this transaction, the following persons acquired control of PGI:

- The "TCP Control Persons" consisting of (i) Parent, (ii) Pedal Topco, L.P. ("Topco LP"), (iii) Pedal Topco GP, LLC ("Topco GP"), (iv) Pedal Aggregator, L.P. ("Aggregator"), (v) TowerBrook Investors GP V, L.P. ("TBI GP"), (vi) TowerBrook Investors Ltd. ("TBI"), (vii) Neal Moszkowski, and (viii) Ramez Sousou; and

- The "FG Control Persons" consisting of (i) Prime Acquisitions Holdco, LP ("Prime LP"), (ii) Prime Acquisitions Holdco GP, LLC ("Prime GP"), (iii) Further Global Capital UGP, Ltd. ("FG UGP"), and (iv) Pierre Olivier Sarkozy.

Parent is (i) the direct parent of PGI and (ii) a direct wholly-owned subsidiary of Topco LP, which is directly controlled by its general partner, Topco GP. Topco GP's sole member is TBI GP, which is in turn controlled by its general partner, TBI, and TBI's direct owners, Messrs. Moszkowski and Sousou. Messrs. Moszkowski and Sousou are the founders, co-Chairs and co-Chief Executive Officers of TowerBrook Capital Partners L.P. ("TowerBrook"), which is an affiliate of the TCP Control Persons.

Aggregator, which is directly controlled by TBI GP and ultimately controlled by Messrs. Moszkowski and Sousou, owns a limited partnership interest with certain limited control rights in Topco LP, representing approximately 75% ownership of Topco LP. Aggregator was formed for the purpose of aggregating investments made by certain investment funds affiliated with TowerBrook in connection with the acquisition of PGI (collectively, the "TowerBrook Funds").

Prime LP owns the remaining approximate 25% non-controlling limited partnership interest in Topco LP. The limited partners of Prime LP are two investment funds (collectively, the "Further Global Funds") affiliated with Further Global Capital Management, L.P. ("Further Global") and their co-investors. Prime LP is directly controlled by its general partner, Prime GP. The sole member of Prime GP is FG UGP, which is wholly-owned and controlled by Mr. Sarkozy as the sole shareholder and director of FG UGP. Mr. Sarkozy is the founder and managing partner of Further Global, which is an affiliate of the FG Control Persons.

Based on the above, Messrs. Moszkowski, Sousou and Sarkozy acquired and maintain ultimate control of the Company and, accordingly, are the ultimate controlling persons of the Company.

As part of a corporate rebrand, on March 14, 2022, the Company's indirect parent, PGI announced that several of the Company's affiliates and parents are changing names from ProSight to Coaction. Effective March 8, 2022, ProSight Global, Inc. changed to Coaction Global, Inc.; effective March 10, 2022, ProSight Specialty Management Company, Inc. changed to Coaction Specialty Management Company, Inc.; effective March 9, 2022, ProSight Specialty Insurance Brokerage, LLC changed to Coaction Specialty Insurance Services, LLC; and effective March 11, 2022, ProSight Risk Purchasing Group changed to Coaction Risk Purchasing Group. Other entities under common control with the ProSight name are still awaiting regulatory approval to change their names.

# EXHIBIT "9"



Company Profile

   Company Search

   Company
   Information

   Workers'
   Compensation
   Complaint and
   Request for
   Action/Appeals
   Contact Information

Financial Statements
PDF's

   Annual Statements

   Quarterly
   Statements

Company Complaint

   Company
   Performance &
   Comparison Data

   Company
   Enforcement Action

   Composite
   Complaints Studies

Additional Info

   Find A Company
   Representative In
   Your Area

   View Financial
   Disclaimer

**COMPANY PROFILE**

**Annual Statements Download**

**NEW YORK MARINE AND GENERAL INSURANCE COMPANY**
**412 MT. KEMBLE AVENUE, SUITE 300C**
**MORRISTOWN,  NJ 07960**
**800-774-2755**

**2022-Annual Financial Statements**

There are no Financial Statements to display for:  NEW YORK MARINE AND GENERAL INSURANCE
COMPANY

© 2008 California Department of Insurance

# EXHIBIT "10"

# TOWERBROOK

## TowerBrook and Further Global announce acquisition of specialty insurance company ProSight Global, Inc.

January 15, 2021

**TowerBrook and Further Global Capital Management ("Further Global"), a private equity firm focused on the financial services industry, today announced the signing of a definitive merger agreement, under which affiliates of TowerBrook and Further Global will acquire all outstanding shares of common stock of ProSight Global, Inc. (NYSE: PROS) ("ProSight" or "the Company"), a domestic specialty insurance company, in an all-cash transaction valued at approximately $586,000,000.**

Under the terms of the agreement, ProSight stockholders will receive $12.85 per share of common stock, which represents a 42% premium to the closing share price as on September 23, 2020, the last trading day prior to media reports about a possible acquisition by TowerBrook. TowerBrook will acquire a majority stake in ProSight, with Further Global serving as a key minority co-investor.

The merger agreement was recommended by a special committee of the ProSight Board of Directors and was then approved by ProSight's full Board. The acquisition is expected to close in the third quarter of 2021 and is subject to customary closing conditions, including the receipt of required regulatory approvals, and the completion of a reinsurance transaction with Enstar that will serve to reposition ProSight's capital in support of future growth. Affiliates of the Merchant Banking business of Goldman Sachs and TPG Global, LLC have executed a written consent to approve the transaction, thereby providing the required stockholder approval for the transaction. No further action by other ProSight stockholders is required to approve the transaction.

Founded in 2009, ProSight is an innovative property and casualty insurance company writing a diverse mix of admitted and non-admitted specialty lines of business in all 50 states. ProSight is a fully licensed and fully rated turnkey platform with significant franchise value in its core niches. The Company has a number of long-standing and successful distribution relationships, a well-developed technology platform, and scalable infrastructure.

Upon closing, Jonathan Ritz will become CEO, while ProSight's current President and CEO, Larry Hannon, will continue serving as President. Mr. Ritz joins ProSight after previously serving as President of Aspen Insurance Holdings Limited, Chief Operating Officer of Validus Holdings Limited, and Chief Executive Officer of Validus Specialty. Upon completion of the transaction, ProSight will become a private company with the flexibility and capital to accelerate its next stage of growth, and Mr. Ritz and Mr. Hannon will work together with TowerBrook and Further Global to continue ProSight's development and strategic realignment.

"This is a very exciting and challenging insurance market which is undergoing significant changes in distribution, pricing, capital management, and capacity exiting across many lines of business," said Jonathan Ritz. "Increased frequency and magnitude of natural catastrophes, social inflation, and the COVID-19 crisis have contributed to substantial market dislocations, and ProSight represents a quality platform that is well-positioned to capitalize on

TOWERBROOK

"This transaction and the new partnership with TowerBrook and Further Global will expand ProSight's underwriting capabilities and fund investments in talent and technology that will improve our offerings to distribution partners and customers," said Larry Hannon. "Since our founding 12 years ago, our employees have dedicated themselves to creating a differentiated specialty insurance company. I'm very proud of what we created, thank them for their dedication, and very much look forward to working closely with Jonathan as we write ProSight's next chapter as a private company."

TowerBrook and Further Global's investment in ProSight is the result of a targeted approach to the insurance market. This acquisition aligns with TowerBrook's investment strategy to back strong management teams operating in growth markets and builds on a long history of investing in the insurance and financial services industries. Further Global's investment in ProSight is a continuation of its principals' successful track record of investing in the insurance and reinsurance industries over the past 22 years. TowerBrook and Further Global will work with ProSight's management team in furtherance of building an enduring specialty insurance franchise.

Recent News

**IZIPIZI, the global eyewear brand, welcomes TowerBrook as a minority shareholder to accelerate its development and international expansion**

**TowerBrook to acquire Premium Credit**

**Orchid Insurance Announces Acquisition by Brown & Brown, Inc**



(/)

**Featured Stories**

Root Sues Former CMO Over Alleged Theft (https://www.insurancejournal.com/news/national/2023/02/06/706291.htm)

Allstate's Castle Key to Drop 33,000 Fla. Condo Policies (https://www.insurancejournal.com/news/southeast/2023/01/30/705056.htm)

<u>News</u>    Markets

| | Search |

News ▾ (/news/)    Magazines ▾ (/magazines/)    Jobs (/jobs/)    Subscribe (/subscribe/)



(https://ra.wellsmedia.com/www/delivery/ck.php?
bannerid=9339&zoneid=63&sig=5e762aaa9503786cc0166ec1ee875c8890d4eceea0fd16d70828062e0ea9e22d&oadest=https%3A%2F%2Fwww.insurancejournal.com%
study-testimonial-2020%26utm_content%3Dsubscribe-now-970x250)

# ProSight Specialty Rebrands as Coaction

March 23, 2022

✉ Email This (mailto:?
subject=ProSight%20Specialty%20Rebrands%20as%20Coaction&body=ProSight%20Specialty%20Rebrands%20as%20Coaction%0Ahttps%3A%2F%2Fwww.insu

▦ Subscribe to Newsletter (/subscribe/)

| Article (https://www.insurancejournal.com/news/east/2022/03/23/658231.htm) | 0 Comments (https://www.insurancejournal.com/news/east/2022/03/23/6 |

New Jersey-based ProSight Global, Inc., a privately-owned specialty property/casualty insurance company, has announced that it is rebranding a

The rebranding comes following a <u>go-private transaction (https://www.insurancejournal.com/news/national/2021/08/04/625747.htm)</u> completed in
Partners and private-equity firm Further Global Capital Management.

Skip to content



**The Sinking Florida Insurance Market**

Listen to our timely expert discussion of the Florida property insurance market, what may happen in 2023 and what it may mean for the rest of the country.

| Recording Available Now |

Academy of Insurance

ProSight will continue to be based in Morristown, New Jersey with offices in Glendale, California, and New York City.

The company said there are no planned changes in ownership or company leadership going forward.

Jonathan Ritz, CEO of ProSight, said the rebranding reflects the firm's "growth from a 'niche' program administrator to a full specialty underwriter underwriting authority platforms."

ProSight was founded in 2009.

Was this article valuable?

**The most important insurance news, in your inbox every business day.**

Get the insurance industry's trusted newsletter

| Enter your email | Submit |

✉ Email This (mailto:?
subject=ProSight%20Specialty%20Rebrands%20as%20Coaction&body=ProSight%20Specialty%20Rebrands%20as%20Coaction%0Ahttps%3A%2F%2Fwww.insu

📧 Subscribe to Newsletter (/subscribe/)

**Categories:** East News (https://www.insurancejournal.com/news/east/)  **Topics:** Coaction (https://www.insurancejournal.com/topics/coaction/), Prosight (https://www.insurancejournal.com/topics

*Have a hot lead? Email us at newsdesk@insurancejournal.com (mailto:newsdesk@insurancejournal.com)*

Add a Comment      See All Comments (0) (https://www.in

**More News**



Skip to content





NEW YORK,  PHILADELPHIA //  CEO/BOARD,
MERGERS & ACQUISITIONS



# TowerBrook and Further Global Receive Approval for Acquisition of ProSight and Appoint Jonathan Ritz as CEO

AUGUST 1, 2021



**TowerBrook Capital Partners L.P.,** an international investment management firm, and **Further Global Capital Management**, a private equity firm focused on the financial services industry, announced that they have received all requisite regulatory approvals, including approvals from the New York State Department of Financial Services and the Arizona Department of Insurance and Financial Institutions, to complete the previously announced acquisition of ProSight Global, Inc. ("ProSight"), a domestic specialty insurance holding company.  The acquisition is anticipated to close on or about August 4, 2021, pending satisfaction of customary closing conditions.

Concurrently with the transaction close, Jonathan Ritz will assume the role of CEO of ProSight. He joins after previously serving as President of Aspen Insurance Holdings Limited, Chief Operating Officer of Validus Holdings Limited, and Chief Executive Officer of Validus Specialty.

COMMERCIAL BANKING

Partner with a Relations
dedicated to your busin

brivo    HOME UNBOUND:
TRANSITIONING BACK TO
THE OFFICE AFTER COVID
Get the report

See terms

The acquisition brings together ProSight's underwriting innovation with TowerBrook and Further Global's demonstrated success investing in the insurance and financial services industries.

**About ProSight Global, Inc.**

Founded in 2009 and headquartered in Morristown, New Jersey, ProSight is an innovative property and casualty insurance company, providing a wide range of property and liability solutions to customers across the United States. The diverse offerings include products and services that help businesses protect their assets, manage risks, and provide financial security. ProSight is rated "A-" (Excellent) by A.M. Best. To learn more about ProSight visit **www.prosightspecialty.com**.

**About TowerBrook**

TowerBrook Capital Partners L.P. is an investment management firm that has raised in excess of $17.4 billion to date and has a history of creating value for investors. The firm is co-headquartered in New York and London and focuses on making investments in companies headquartered in North America and Europe. TowerBrook's private equity strategy primarily pursues control-oriented investments in large and mid-market companies, principally on a proprietary basis and often in situations characterised by complexity. TowerBrook's structured opportunities strategy allows access to a broad array of opportunities, principally via structured asset and structured equity investments, enabling investment companies to access funding and expertise to support growth without ceding control. TowerBrook is a certified B Corporation. B Corporation certification is administered by the non-profit B Lab organisation and is awarded to companies that demonstrate leadership in their commitment to environmental, social and governance (ESG) standards and responsible business practices. For more information, please visit **www.towerbrook.com**.

# ProSight Specialty to Rebrand as Coaction

March 14, 2022

Press Release  |  *3 minute read*

**Morristown, New Jersey – March 14, 2022
–** ProSight Global, Inc. (ProSight), a privately-owned specialty property and casualty (P&C) insurance company, is pleased to announce that effective April 19, 2022, the company will be rebranding as Coaction Global, Inc. (Coaction). Until that date, the company will continue to be known as ProSight.

Following a go-private transaction completed in August of 2021 with investment management firm TowerBrook Capital Partners and private-equity firm Further Global Capital Management, ProSight's rebranding to Coaction will capitalize on the company's ambition to be known as a world-class specialty insurer and reflect corporate values that prioritize collaboration and analytics-driven decision making.

ProSight will continue to be based in Morristown, New Jersey with offices in Glendale, California, and New York City. There are no planned changes in ownership or company leadership going forward.



"Our company is undergoing a strategic transformation," said Jonathan Ritz, CEO of ProSight. "We have chosen to rebrand as Coaction to reflect the authentic, collaborative, and results-oriented culture being created as part of this transformation. This effort includes the recent strengthening of our

existing team with new leadership and proven talent, particularly in the underwriting and claims functions. The transformation and addition of talent supports our growth from a 'niche' program administrator to a full specialty underwriter across our product verticals in open brokerage and delegated underwriting authority platforms. We aim to use this rebrand to communicate what those changes mean to the market."

The company, soon-to-be-known-as Coaction, follows a focused approach of providing specialty insurance coverage across property, casualty, entertainment, executive liability, and multi-line verticals. The goal of this approach is to combine product, analytics, and underwriting capabilities with strong industry knowledge and partnerships to develop real-world solutions to customers' unique challenges. Based on its mission, the company aims to, "Coact with customers and industry partners to rationally manage risk so businesses and communities can build a more ambitious, confident, and sustainable future."



"This rebrand as Coaction reflects our belief that by using data-driven insights and collaborating with our partners, we can achieve shared success," said Tim Ryan, president of ProSight. "We rely on analytic ability and practical reasoning to develop innovative insurance products with our insureds and distribution partners which help our customers rationally manage risk and ultimately realize their individual objectives. This rebrand is our first step in demonstrating to our partners, our customers, and the market as a whole that we are committed to achieving this goal."

**About ProSight**

71

Founded in 2009 and headquartered in Morristown, New Jersey, ProSight Global, Inc. is the parent of ProSight Specialty Insurance Group, Inc., a specialty property and casualty (P&C) insurance holding company, providing a range of property and casualty solutions to customers across the United States. As of April 19, 2022, ProSight will be known as Coaction Global, Inc. The member companies of ProSight Specialty Insurance Group, Inc. are rated "A-" (Excellent) by A.M. Best. To learn more about ProSight and the upcoming rebrand, please visit www.prosightspecialty.com.

***Media Contact:***

Jennifer Overhulse

St. Nick Media Services

859-803-6597

jen@stnickmedia.com

## PROOF OF SERVICE

**New York Marine and General Insurance Company v. Amber Heard**
**USDC Central District Case No. 2:22-cv-04685-GW-PD**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California. My business address is 7647 North Fresno Street, Fresno, CA 93720.

On February 10, 2023, I served true copies of the following document(s) described as **NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 10, 2023, at Fresno, California.

*/s/ Marisela Taylor*
Marisela Taylor

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

73

**SERVICE LIST**
*New York Marine and General Insurance Company v. Amber Heard*
**USDC Central District Case No. 2:22-cv-04685-GW-PD**

| | |
|---|---|
| Kirk Pasich<br>Kayla Robinson<br>Pasich LLP<br>10880 Wilshire Blvd., Suite 2000<br>Los Angeles, CA  90024<br>(424) 313-7850<br>kpasich@pasichllp.com<br>krobinson@pasichllp.com | *Attorneys for Defendant and Counterclaimant Amber Heard* |
| Mark D. Peterson<br>Kathleen O. Peterson<br>Amy Howse<br>Cates Peterson LLP<br>4100 Newport Place, Suite 230<br>Newport Beach, CA 92660<br>Telephone: (949) 724-1180<br>Email: markpeterson@catespeterson.com<br>kpeterson@catespeterson.com<br>ahowse@catespeterson.com | *Courtesy Copy – Via Email*<br><br>*Attorneys for Plaintiff and Counterclaimant Travelers Commercial Insurance Company in USDC Central District Case No. 2:21-cv-05832-GW, consolidated for pre-trial purposes* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM