Kirk Pasich (SBN 94242)
KPasich@PasichLLP.com
Kayla Robinson (SBN 322061)
KRobinson@PasichLLP.com
Owen Monkemeier (SBN 336476)
OMonkemeier@PasichLLP.com
PASICH LLP
10880 Wilshire Blvd., Suite 2000
Los Angeles, California 90024
Telephone: (424) 313-7860
Facsimile: (424) 313-7890

Attorneys for Defendant
and Counter-Claimant

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NEW YORK MARINE AND
GENERAL INSURANCE
COMPANY, a New York
corporation,

                    Plaintiff,

        vs.

AMBER HEARD,

                    Defendant.

———————————————————

AND RELATED COUNTERCLAIM

Case No. 2:22-cv-4685-GW (PDx)

Hon. George H. Wu,
Courtroom 9D

**DEFENDANT AND COUNTER-CLAIMANT AMBER HEARD'S OPPOSITION TO PLAINTIFF AND COUNTER-DEFENDANT NEW YORK MARINE'S MOTION TO (1) DISMISS HEARD'S COUNTERCLAIM PURSUANT TO RULE 12(b)(6), OR (2) ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT PURSUANT TO RULE 12(e), AND (3) TO STRIKE CERTAIN ALLEGATIONS PURSUANT TO RULE 12(f)**

Date:            March 13, 2023
Time:            8:30 a.m.
Courtroom:       9D

Complaint Filed July 8, 2022

---

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................. 7

II.  THE MOTION TO DISMISS SHOULD BE DENIED ..................... 8

    A.  Heard Was Entitled to Independent Counsel Because California Law Applies to New York Marine's Duty to Defend and An Actual Conflict of Interest Existed ................... 8

      1.  A Conflict-of-Laws Analysis Is Required ...................... 8

      2.  The Governmental Interest Test Requires Application of California Law ...................................................... 11

      3.  Even Under Section 1646, California Law Applies ............ 14

      4.  Under California Law, New York Marine's Reservation of Rights Gave Rise to A Conflict of Interest ..................... 17

      5.  Because New York Marine Breached Its Duties, Ms. Heard Did Not Need to Settle for the Conflicted Counsel Offered by New York Marine ...................................... 23

      6.  Because New York Marine Breached Its Duties, Ms. Heard Did Not Contravene Any Provision of the Policy ...... 24

      7.  Ms. Heard's Bad Faith Claim Cannot Be Dismissed ......... 25

III.  TRAVELERS' DEFENSE OF MS. HEARD DOES NOT EXCUSE NEW YORK MARINE'S BREACHES ............................ 26

IV.  NEW YORK MARINE'S MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED ..................................... 27

V.  NEW YORK MARINE'S MOTION TO STRIKE IS MERITLESS ................................................................. 28

VI.  CONCLUSION ................................................................ 30

CERTIFICATE OF COMPLIANCE ........................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*,
  852 F.2d 493 (9th Cir. 1988) .................................................................. 30

*Assurance Co. of Am. v. Haven*,
  32 Cal. App. 4th 78 (1995) ..................................................................... 12

*Bethlehem Constr., Inc. v. Transp. Ins. Co.*,
  2006 WL 2818363 (E.D. Wash. Sept. 28, 2006) ................................... 9

*Buss v. Sup. Ct.*,
  16 Cal. 4th 35 (1997) .............................................................................. 11

*Canadian Ins. Co. v. Rusty's Island Chip Co.*,
  36 Cal. App. 4th 491 (1995) ................................................................... 23

*Celerity Educ. Grp. v. Scottsdale Ins. Co.*,
  2018 WL 2585321 (C.D. Cal. Apr. 11, 2018) ........................................ 23

*Celerity Educ. Grp. v. Scottsdale Ins. Co.*,
  2018 WL 3853998 (C.D. Cal. Aug. 10, 2018).........................................23

*Centex Homes v. Lexington Ins. Co.*,
  2014 WL 1225501 (N.D. Tex. Mar. 25, 2014).......................................9

*Centex Homes v. St. Paul Fire & Marine Ins. Co.*,
  19 Cal. App. 5th 789 (2018) .................................................................. 22

*Collins v. JC Penney Life Ins. Co.*,
  2003 WL 25945842 (S.D. Cal. May 6, 2003) ........................................ 31

*Columbia Cas. Co. v. Gordon Trucking, Inc.*,
  758 F. Supp. 2d 909 (N.D. Cal. 2010).............................................12, 14

*Concept Enters., Inc. v. Hartford Ins. Co.*,
  2001 WL 34050685 (C.D. Cal. May 22, 2001) ..................................... 28

*Dore v. Arnold Worldwide, Inc.*,
  39 Cal. 4th 384 (2006) ........................................................................... 30

PASICH

*Dynamic Concepts, Inc. v. Truck Ins. Exchange,*
    61 Cal. App. 4th 999 (1998).................................................. 22

*Fed. Ins. Co. v. MBL, Inc.,*
    219 Cal. App. 4th 29 (2013)................................................. 22

*Fid. & Deposit Co. of Maryland v. First W. Bank,*
    978 F.2d 714 (9th Cir. 1992).............................................. 23

*Fireman's Fund Ins. Co. v. Nationwide Mut. Fire Ins. Co.,*
    2012 WL 1985316 (S.D. Cal. 2012) .................................. 17

*Foxfire, Inc. v. New Hampshire Ins. Co.,*
    1994 WL 361815 (N.D. Cal. July 1, 1994)......................... 26

*Frontier Oil Corp. v. RLI Ins. Co.,*
    153 Cal. App. 4th 1436 (2007).........................12, 13, 15, 16

*Glenfed Dev. Corp. v. Sup. Ct.,*
    53 Cal. App. 4th 1113 (1997) ............................................ 31

*Gribaldo v. Agrippinia Versicherunges A.G.,*
    3 Cal.3d 434 (1970) ........................................................... 26

*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon &
    Gladstone,*
    79 Cal. App. 4th 114 (2000) .............................................. 22

*Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.,*
    524 F.3d 588 (5th Cir. 2008)................................................ 9

*James River Ins. Co. v. Medolac Lab.,*
    290 F. Supp. 3d 956 (C.D. Cal. 2018) .............................. 17

*Liew v. Official Receiver & Liquidator,*
    685 F.2d 1192 (9th Cir. 1982)........................................... 12

*Long v. Century Indem. Co.,*
    163 Cal. App. 4th 1460 (2008)........................................... 25

*Mariscal v. Old Republic Life Ins. Co.,*
    42 Cal. App. 4th 1617 (1996)............................................. 27

PASICH

4

PASICH

*McMillin Scripps N. P'ship v. Royal Ins. Co.,*
   19 Cal. App. 4th 1215 (1993) ................................................................. 26

*Montrose Chem. Corp. v. Sup. Ct.,*
   6 Cal. 4th 287 (1993) ......................................................................... 19

*Murphy v. Allstate Ins. Co.,*
   17 Cal. 3d 937 (1976) ......................................................................... 27

*N.Y. Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ........................................................................... 20

*Nat'l Union Fire Ins. Co. v. Donaldson Co.,*
   272 F. Supp. 3d 1099 (D. Minn. 2017) ...................................... 9

*Native Sun Investment Group v. Ticor Title Ins. Co.,*
   189 Cal. App. 3d 1265 (1987) .......................................................... 22

*Norman v. Ins. Co. of N. Am.,*
   239 S.E.2d 902 (Va. 1978) ................................................................ 13

*Northern Ins. Co. v. Allied Mut. Ins. Co.,*
   955 F.2d 1353 (9th Cir. 1992)...............................................*passim*

*Pitzer College v. Indian Harbor Ins. Co.,*
   8 Cal. 5th 93 (2019) ........................................................................... 14

*Ram v. Infinity Select Ins.,*
   807 F. Supp. 2d 843 (N.D. Cal. 2011).......................................... 26

*Richards v. Sequoia Ins. Co.,*
   195 Cal. App. 4th 431 (2011) ........................................................... 26

*San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y,*
   162 Cal. App. 3d 358 (1984) ................................................ 9, 14, 20

*Shade Foods Inc. v. Innovative Prods. Sales & Mktg., Inc.,*
   78 Cal. App. 4th 847 (2000)............................................................. 27

*Tank v. State Farm Fire & Cas. Co.,*
   715 P.2d 1133 (Wash. 1986) ............................................................ 10

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

*Travelers Com. Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*,
    2022 WL 100109 (C.D. Cal. Jan. 6, 2022) ........................................ 21

*Wash. Mut. Bank, FA v. Sup. Ct.*,
    24 Cal. 4th 906 (2001) ...................................................................... 14

*West Am. Ins. Co. v. Nutiva, Inc.*,
    2018 WL 3861832 (N.D. Cal. 2018) .................................................. 18

*Wint v. Fid. & Cas. Co.*,
    9 Cal. 3d 257 (1973) ......................................................................... 27

*Zahedi v. Miramax*,
    2021 WL 4497211 (C.D. Cal. Jan. 7, 2021) ...................................... 30

**Statutes**

California Civil Code § 1646 ................................................................ 15, 16

California Civil Code § 2860 ...................................................... 9, 12, 14, 21

California Code of Regulations § 2695.7(b)(1) ................................... 19, 24

California Insurance Code § 533 ................................................................ 19

California Insurance Code § 780 ................................................................ 30

**Other Authorities**

Federal Rule of Civil Procedure 12(e) ...................................................... 28

Hon. H. Walter Croskey (Ret.), et al., *California Practice
    Guide: Insurance Litigation* Ch. 7B-K ............................................. 25

*Puffery,* Merriam-Webster, https://www.merriam-
    webster.com/dictionary/puffery .......................................................... 30

Wright & Miller § 1376 ............................................................................. 29

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3      Plaintiff and counterclaim defendant New York Marine makes a

4  scattershot effort to escape its obligations to its insured, defendant and

5  counter-claimant Amber Heard. Each of its sundry arguments should be

6  rejected.

7      With respect to the motion to dismiss, New York Marine's

8  arguments cannot prevail because Ms. Heard has sufficiently alleged

9  that she was entitled to independent counsel and New York Marine

10  failed to provide such counsel, thus breaching its duty to defend. The

11  participation of a different insurer in Ms. Heard's defense does not

12  excuse New York Marine from its duty.

13      New York Marine's motion for a more definite statement is

14  groundless. There are no statements in Ms. Heard's Counterclaim that

15  are so vague that New York Marine cannot respond, and its efforts to

16  seek information it can request in discovery are not proper.

17      Finally, New York Marine's motion to strike does not identify any

18  improper or immaterial allegations. Aside from repeating arguments

19  made in its motion to dismiss, New York Marine seeks to strike

20  allegations that are directly relevant to Ms. Heard's bad faith claim.

21      Collectively, New York Marine's arguments seek to introduce

22  issues not appropriate for resolution at the pleading stage and short-

23  circuit Ms. Heard's right to present her case. Its efforts cannot succeed,

24  and its motion should be denied in its entirety.

25

26

27

28

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

## II. THE MOTION TO DISMISS SHOULD BE DENIED

### A. Heard Was Entitled to Independent Counsel Because California Law Applies to New York Marine's Duty to Defend and An Actual Conflict of Interest Existed

Contrary to New York Marine's arguments, California law, not Virginia law applies here. Under California law, Ms. Heard was entitled to independent counsel in the *Depp* lawsuit because an actual conflict of interest existed between Ms. Heard and the attorneys of Cameron McEvoy. *See San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y*, 162 Cal. App. 3d 358 (1984); Cal. Civ. Code § 2860 (codifying, with modifications, the *Cumis* rule).

#### 1. A Conflict-of-Laws Analysis Is Required

As the Ninth Circuit and other courts have recognized, when the law of one state would require an insurer to provide independent counsel to fulfill its duty to defend, but the law of another state would not, it raises a conflict of laws issue about the scope of the insurer's duty, properly decided by a conflict of law analysis. *See, e.g.*, *Northern Ins. Co. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1359 (9th Cir. 1992) (conducting choice-of-law analysis between California and Washington law to determine whether insurer had to provide independent counsel); *Bethlehem Constr., Inc. v. Transp. Ins. Co.*, 2006 WL 2818363, at *23 (E.D. Wash. Sept. 28, 2006) (same).[1] In that analysis, the ethical duties imposed on defense counsel in the state the defense is provided in do not

---

[1] *See also Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588 (5th Cir. 2008); *Centex Homes v. Lexington Ins. Co.*, 2014 WL 1225501, at *4–8 (N.D. Tex. Mar. 25, 2014); *Nat'l Union Fire Ins. Co. v. Donaldson Co.*, 272 F. Supp. 3d 1099 (D. Minn. 2017).

PASICH⹁

1  foreclose the possibility that a conflict actually exists under California

2  law.

3      In *Northern*, the Ninth Circuit addressed the same issue presented

4  here—whether an insurer had fulfilled its defense duty when it hired

5  counsel to defend the insured but refused the insured independent

6  counsel. 955 F.2d at 1359. "Under Washington law, it did; under

7  California law, it did not." *Id.* The insurer and insured negotiated and

8  contracted in California, but the injury occurred in Washington, and the

9  defense was provided there. *Id.* Like Virginia, Washington law is clear

10 that insurer-appointed defense counsel represents only the insured, not

11 the insurer, and owes a duty of loyalty to the insured that has no

12 exceptions.[2] In other words, like Virginia, Washington does not recognize

13 the "tripartite relationship" between an insurer, insured, and defense

14 counsel. According to New York Marine, in this situation there could be

15 no conflict of interest. The Ninth Circuit disagrees.

16     *Northern* proceeded with its choice of law analysis, reasoning that

17 "Washington is interested in enforcing its ethical rules," but "California,

18 on the other hand, has a strong interest in seeing its law applied to

19 protect both an insured domiciled in California and the substantive

20 rights of parties to a contract negotiated and executed there." *Id.* at

21 1359–60. Because the obligation to provide a defense was one of the

22 essential promises in the policy, the court found that "rules such as the

23 *Cumis* rule, which play a defining role in determining the scope of this

24 obligation, relate to a substantial right rather than a mere detail of

25

26 ───────────────

   [2] "In a reservation-of-rights defense, [Rules of Professional Conduct

27 5.4(c)] demands that counsel understands that he or she represents only

   the *insured*, not the company." *Tank v. State Farm Fire & Cas. Co.*, 715

28 P.2d 1133, 1137 (Wash. 1986).

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

performance" that might otherwise be subject to the law of the place of performance. *Id.* at 1360. The court further explained that "[a]pplying California law does not harm Washington's interest" and "Washington has no specific interest in having its more lenient standard applied here." *Id.* at 1359. The court held that California law applied and therefore the insurer failed to meet its obligation to provide a defense when it refused to provide its insured with independent counsel. *Id.* at 1360.

Here, as in *Northern*, the issue is whether New York Marine breached its contractual duty to defend Ms. Heard when it appointed its own counsel and refused to defend her through independent counsel. New York Marine's duty to defend Ms. Heard is one of the essential promises in the Policy. *See, e.g., Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997) ("[S]o far as the insured is concerned, the duty to defend may be an important as the duty to indemnify."). California has a strong interest in seeing its law applied to protect Ms. Heard and her substantive rights under that Policy—negotiated and executed in California. Among these substantive rights is the right to independent counsel when an actual conflict, as interpreted under California law, exists. The fact that Virginia law (like Washington law) applies a "more lenient standard" to the duty to defend itself weighs in favor of applying California law.

The Ninth Circuit's holding in *Northern* makes clear that the conflict-of-law analysis cannot simply be leap-frogged where a state does not observe the tripartite relationship. The right to independent counsel is not only the right to a non-conflicted defense, it also presumptively encompasses the right to control the defense of the potentially insured action, the right to choose one's own counsel, and the right to reimbursement according to a statutory rate rather than an insurer's

"panel counsel" rates. *See* Cal. Civ. Code § 2860; *Assurance Co. of Am. v. Haven*, 32 Cal. App. 4th 78, 87 (1995) ("An important corollary of the *Cumis* doctrine is that if the insured is entitled to *Cumis* counsel, the insured is entitled to control the defense of the case."). Notably, despite its protestations that there is no conflict under Virginia law, New York Marine is still insisting that it had the right to control Ms. Heard's defense. ECF No. 42-1 at 16 (citing case for proposition that "no action" clause gives insurer right to control defense). If, as New York Marine suggests, it had the right to control Ms. Heard's defense—notwithstanding that Virginia law does not recognize the tripartite relationship—then there is *still* a conflict of interest that would give rise to a right to independent counsel under California law and, thus, a conflict between California law and Virginia law.

> 2.   The Governmental Interest Test Requires Application of California Law

A district court in a diversity case must apply the choice-of-law rules of the forum state—here, California. *See, e.g.*, *Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1195 (9th Cir. 1982). New York Marine argues that its contractual obligations under the Policy are governed by the choice-of-law rule in California Civil Code section 1646, citing *Frontier Oil Corp. v. RLI Insurance Co.*, 153 Cal. App. 4th 1436, 1443 (2007) ("Civil Code section 1646 is the choice-of-law rule that determines the law governing *interpretation* of a contract"). But "[w]here the contract contains no choice of law provision and the case does not present an issue of contract interpretation, California courts apply the governmental interest test to determine which state's law should apply." *Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F. Supp. 2d 909, 915 (N.D. Cal. 2010) (footnote omitted). Here, the Policy contains no choice-

PASICH

of-law provision, and the issue is not one that requires contract interpretation. The parties agree that New York Marine had a duty to defend Ms. Heard under the Policy; the disagreement turns on whether New York Marine fulfilled its duty under applicable law. Thus, the correct test is the governmental interest analysis.

The governmental interest analysis proceeds as follows:

> [T]he court first determines whether the applicable rules of law of the potentially concerned jurisdictions are the same or different. If the applicable rules of law are identical, the court may apply California law. If the applicable rules of law differ materially, the court proceeds to the second step, which involves an examination of the interests of each jurisdiction in having its own law applied to the particular dispute.

*Frontier*, 153 Cal. App. 4th at 1454. "The party arguing that foreign law governs has the burden to identify the applicable foreign law, show that it materially differs from California law, and show that the foreign law further an interest of the foreign state." *Id.* at 1465.

In the first step of the analysis, the scope of New York Marine's duty to defend Ms. Heard materially differs under Virginia law and California law. Under Virginia law, an insurer does not owe an insured independent counsel even if a "conflict," as defined under California law, exists. Virginia adopts a more lenient standard that allows an insurer to fulfill its duty to defend by appointing defense counsel for the insured— relying instead on "the standards of the legal profession" that "require undeviating fidelity of a lawyer to his client" to protect its insureds. *Norman v. Insurance Co. of N. Am.*, 239 S.E.2d 902 (Va. 1978). The

HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.

1   California courts and State Legislature have intentionally crafted a

2   different approach to protecting insureds, requiring the insurer to

3   provide independent counsel to an insured if a conflict of interest arises.

4   *Cumis*, 162 Cal. App. 3d 358; Cal. Civ. Code § 2860. Because there is a

5   material difference in the scope of New York Marine's duty to defend

6   under Virginia and California law, the analysis proceeds.

7        In the second step, the Court must "determine what interest, if any,

8   each state has in having its own law applied to the case." *Wash. Mut.*

9   *Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920 (2001). In assessing

10  each state's interest, courts should examine the policies underlying the

11  rule of law at issue. *Gordon Trucking*, 758 F. Supp. 2d at 916. Here, as

12  the Ninth Circuit recognized in *Northern*, Virginia may have an interest

13  in enforcing the duty of fidelity to Ms. Heard that its law and ethical

14  rules impose on the attorneys of Cameron McEvoy. 955 F.2d at 1359.

15  "California, on the other hand, has a strong interest in seeing its law

16  applied to protect both an insured domiciled in California and the

17  substantive rights of parties to a contract negotiated and executed

18  there." *Id.* at 1359–60. *See Pitzer College v. Indian Harbor Ins. Co.*, 8

19  Cal. 5th 93 (2019) (specifying standards to determine whether a

20  California rule is a "fundamental public policy" and rejecting automatic

21  application of a choice-of-law clause when a fundamental public policy is

22  involved). New York Marine has not met its burden of showing that

23  Virginia has an interest in having its own law apply to this dispute.

24  Indeed, because Virginia "has no specific interest in having its more

25  lenient standard applied here," and applying California law would not

26  harm Virginia's interest, there is no true conflict. *Northern,* 955 F.2d at

27  1359. Thus, California law governs.

28

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

PASICH

1   The "significant impairment" analysis only applies if the Court
2   determines that each of the competing states has an interest in having
3   its law applied. In such a case,

4   the court determines which jurisdiction has a
5   greater interest in the application of its own law to
6   the issue or, conversely, which jurisdiction's
7   interest would be more significantly impaired if its
8   law were not applied. The court must apply the law
9   of the jurisdiction whose interest would be more
10  significantly impaired if its law were not applied.

11  *Frontier*, 153 Cal. App. 4th at 1454–55. There is no need for the Court to
12  conduct this analysis. But even if it were necessary, as held in *Northern*,
13  California has a strong interest in protecting the rights it provides to
14  insureds under California law and public policy, including the *Cumis*
15  rule, particularly when those contracts are negotiated and executed
16  within its jurisdiction. The application of Virginia law would
17  substantially impair that interest. In contrast, Virginia's interest is not
18  at all impaired by the application of California law. "Attorneys practicing
19  in [Virginia] still must abide by local ethical rules and may be sanctioned
20  for failing to do so." *See Northern*, 955 F.2d at 1359. Because California's
21  interest would be impaired by the application of Virginia law, but not
22  vice versa, California law applies.

23   3.   Even Under Section 1646, California Law Applies

24   Even if this Court concludes that Civil Code section 1646 applies to
25  resolve the choice-of-law issue, California law applies. Under section
26  1646, a contract is to be interpreted according to the law and usage of the
27  place it is to be performed only if the contract "indicate[s] a place of
28  performance." Otherwise, "according to the law and usage of the place

14

PASICH

where it was made." *Id*. A contract "indicate[s] a place of performance" within the meaning of section 1646 if the contract expressly specifies a place of performance or if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances. *Frontier*, 153 Cal. App. 4th at 1443.

Here, the Policy does not expressly specify a place of performance. To the extent "an intended place of performance can be gleaned," that place is California, not Virginia. The Policy was issued in California to Under the Black Sky, Inc., incorporated in California,[3] and listed Ms. Heard, domiciled in California at the time, as a named insured. ECF No. 5-1 at 14–19, 67. The broker for the policy, Integro USA, Inc. is located in California. ECF No. 5-1 at 3. The Policy includes three separate endorsements designed to accommodate California law. ECF No. 5-1 at 14, 18, 67. Indeed, the Policy makes no mention of Virginia or any insured location other than California.

New York Marine contends that Virginia law applies because Virginia is where New York Marine eventually performed its duty to defend Ms. Heard. But *Frontier* compels the opposite conclusion: "The apparent purpose of Civil Code section 1646 is to determine the choice of law with respect to the interpretation of a contract in accordance with the parties' presumed intention *at the time they entered into the contract*." 153 Cal. App. 4th at 1449 (emphasis added). At the time the parties entered into the contract, it was not foreseeable that an action would be filed against Ms. Heard in Virginia, and therefore there was no intent that the place of performance would be Virginia.

---

[3] *See* https://bizfileonline.sos.ca.gov/search/business (a search for "Under the Black Sky, Inc." reflects that it was "Formed In" California).

HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.

The two additional cases cited by New York Marine are inapposite here. In *James River Insurance Co. v. Medolac Laboratories*, 290 F. Supp. 3d 956 (C.D. Cal. 2018), the court held that the place of performance was California based on the defense provided there only because "on the very specific facts of this action, the parties *did* anticipate a California defense—and not as a hypothetical possibility, but as a concrete reality." *Id.* at 966. Indeed, the court was careful to distinguish the surrounding circumstances of the case to avoid the "troubling" conclusion that "a policy might be interpreted according to different bodies of law depending on where each defense pursuant to the policy was performed"—the interpretation New York Marine now attempts to advance. *Id.* The narrow holding in *James* cannot apply here because the parties did not anticipate a Virginia defense at the time they contracted.

In *Fireman's Fund Insurance Co. v. Nationwide Mutual Fire Insurance Co.*, 2012 WL 1985316 (S.D. Cal. 2012), the court determined that there was no difference between California and Florida law, so no conflict existed. In any event, in *Fireman's*, the place where the insurer would perform its contractual duty to defend could be inferred from the nature of the policy and its surrounding circumstances. *Id.* at *6. Although California was not the place where the contract was issued, the additional insured was a restaurant with its headquarters and 200 restaurants located there. *Id.* at 1. Here, the Policy and surrounding circumstances at the time the contract was made provided no indication that Virginia was the intended place of performance. To the extent any intended place of performance can be gleaned, it is California.

In addition, subsequent decisions addressing conflict-of-law in the context of policies that cover risks in different states have rejected the

premise that the place of performance is any location where the contract could be performed. Rather, those decisions have correctly applied the law of the place where the contract was made.[4] Because New York Marine could have been obligated to defend Ms. Heard in any number of different states, the intended place of performance at the time the parties contracted cannot be based on that obligation. To the extent the intended place of performance can be gleaned from other surrounding circumstances (*e.g.*, Ms. Heard's domicile, the California-specific endorsements to the Policy), California law clearly applies over Virginia law. Alternatively, if *no* intended place of performance can be inferred, then this Court must apply the law of the place where the contract was made. In either case, California law applies.

> 4.   <u>Under California Law, New York Marine's Reservation of Rights Gave Rise to A Conflict of Interest</u>

New York Marine contends that it enjoys *greater* rights to control the defense because it was vague about the grounds for its reservation of rights when communicating with Ms. Heard. This position is perverse and untenable.

As an initial matter, New York Marine *did* enumerate a conflict-creating basis for denying coverage, stating: "Notwithstanding that New York Marine has determined that it will provide you with a legal defense to, to the extent that California law does not permit an insurer to indemnify the insured, no indemnity can be provided." Wagoner Decl.

---

[4] *See e.g.*, *West Am. Ins. Co. v. Nutiva, Inc.*, 2018 WL 3861832, at *3–4 (N.D. Cal. 2018) (applying California law because that was where the contract was made, the policy did not explicitly name locations for coverage, and the insured's products—and therefore insured risks—were located in every state).

Ex. 1. New York Marine concedes that this was an allusion to California Insurance Code section 533, stating that its letter "reference[d]" section 533. ECF No. 42-1 at 21 n.4.[5]

In any case, as alleged by Ms. Heard, despite potential ambiguity in the language of the letter itself, New York Marine made clear that it was relying on section 533, "persist[ing] in its position" that it would "reserve[] rights to deny coverage on the ground that Ms. Heard behaved intentionally" after the issuance of the October 19 letter. ECF No. 36 at 22. In addition, while the *Depp* lawsuit was still pending, New York Marine filed this action on the basis of section 533. This creates a clear conflict of interest entitling Ms. Heard to independent defense counsel.

New York Marine argues that a reservation on the basis of section 533 cannot give rise to a conflict. In fact, a reservation based on section 533 is the *quintessential* scenario giving rise to the right to independent counsel. *See, e.g.*, *Montrose Chem. Corp. v. Superior Court,* 6 Cal. 4th 287, 302 (1993) (when an insurer reserves rights regarding intentional conduct, "the potential that the insurer's proof will prejudice its insured in the underlying litigation is obvious" and is a "classic" conflict situation). Section 533 states, "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Loss is uninsurable, then, when "caused by the wilful act of the insured"—a question of the insured's state of mind and intent. As explained in

---

[5] To the extent New York Marine seeks to walk back this concession, New York Marine is admitting it violated its duty to disclose to Ms. Heard the factual and legal basis for each reason given for denial of coverage that was then within New York Marine's knowledge. Cal. Code Regs., tit. 10, § 2695.7(b)(1).

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

*Cumis*, "the insurer's desire to establish in the third party suit the insured's 'liability rested on intentional conduct[,]' and thus no coverage under the policy, and . . . the insured's desire to "obtain a ruling . . . such liability emanated from the nonintentional conduct within his insurance coverage," creates a conflict of the parties' interests. 162 Cal. App. 3d at 364–65 (cleaned up).

This conflict is readily apparent here. New York Marine contends that it owes no duties to Ms. Heard with respect to the *Depp* lawsuit because Ms. Heard's actions constituted willful defamation. Whether Ms. Heard made false statements was an element of Mr. Depp's defamation claims. *See* ECF No. 5-3 at 5, 7–9. Because the statements at issue concerned events that Ms. Heard contended happened to her, *see* ECF No. 5-1 at 5–7, the falsity of these statements and Ms. Heard's knowledge of their falsity are closely linked issues. Even more plainly, at issue in the *Depp* lawsuit was whether Ms. Heard acted "with actual malice" in making false statements. *See* ECF No. 5-3 at 5, 7–9. The "actual malice" standard requires that a statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). The inquiry thus shares significant overlap with the section 533 inquiry.

Indeed, according to New York Marine, the "actual malice" standard at issue in the *Depp* lawsuit is exactly coterminous with section 533. *See* ECF 5 at 7 ("The jury's factual findings establish that Heard's liability is caused by the willful act(s) of Heard."). Although Ms. Heard does not agree that the standards are the same, New York Marine cannot reasonably dispute the conflict of interest when it contends that a coverage issue was not only raised, but *actually litigated and decided* in the case it sought to control.

19

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

In its opinion in the now-consolidated case, the Court stated

> Here, [Travelers] has charged that [New York Marine's] reservation of rights was made with the intention of later attempting to assert that "indemnity coverage could be denied based on the insured's knowledge and/or intent with respect to the alleged events giving rise to the Underlying Action." However, [Travelers] has not articulated how that could be done or whether counsel chosen by [New York Marine] took any steps in that regard. Additionally, "the mere fact that the insurer disputes coverage does not entitle the insured to *Cumis* counsel."

*Travelers Com. Ins. Co. v. N.Y. Marine & Gen. Ins. Co.*, 2022 WL 100109, at *9 (C.D. Cal. Jan. 6, 2022). New York Marine has now conceded that its letter referenced section 533, ECF No. 42-1 at 21 n.4, and it is relying on section 533 in its Complaint against Ms. Heard, alleging that "[t]he jury's factual findings establish that Heard's liability is caused by the willful act(s) of Heard," ECF 5 at 7–8. New York Marine has thus asserted that coverage is barred because of Ms. Heard's "knowledge and/or intent with respect to the alleged events giving rise to the Underlying Action."

Moreover, Ms. Heard's entitlement to independent counsel does not depend on whether "counsel chosen by [New York Marine] took any steps" adverse to Ms. Heard's interests: "If . . . a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer *shall* provide independent counsel to represent the insured." Cal. Civ. Code § 2860(a) (emphasis added).

20

1    Finally, Ms. Heard alleges more than a mere coverage dispute.

2    Rather, the coverage defense raised by New York Marine involved Ms.

3    Heard's knowledge and intent, which was also a key issue in the *Depp*

4    action. This is a class conflict of interest. *See Montrose,* 6 Cal. 4th at 302.

5    The cases cited by New York Marine and in this Court's opinion in

6    the consolidated case are distinguishable. Again, New York Marine

7    *concedes* that it asserted a specific provision (section 533), which is

8    fundamentally different from *Dynamic Concepts, Inc. v. Truck Insurance*

9    *Exchange*, 61 Cal. App. 4th 999, 1007 (1998), in which the insured sought

10   a "per se rule requiring the appointment of an independent counsel

11   whenever a carrier issues a so-called 'global reservation of rights' or . . .

12   reserves its right to seek reimbursement for defense costs for uncovered

13   claims." New York Marine, which argues that the issue of Ms. Heard's

14   intent was actually litigated and decided, cannot find refuge in caselaw

15   in which the insurer could not control a coverage issue, like *Federal*

16   *Insurance Co. v. MBL, Inc.*, 219 Cal. App. 4th 29, 48 (2013), and *Gulf*

17   *Insurance Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon &*

18   *Gladstone*, 79 Cal. App. 4th 114, 132 (2000) (claims "were based upon

19   contentions that the [insureds and underlying] defendants failed to

20   provide the promised quality of legal services. Thus, [counsel] could not

21   act for [the insurer's] benefit to the [insureds'] detriment by transferring

22   liability from covered to uncovered claims by presenting different facts").

23   Similarly, neither *Centex Homes v. St. Paul Fire & Marine Ins. Co.*,

24   19 Cal. App. 5th 789, 802 (2018), nor *Native Sun Investment Group v.*

25   *Ticor Title Ins. Co.*, 189 Cal. App. 3d 1265, 1270, 1277 (1987), involved a

26   situation in which resolution of the underlying claims could control the

27   parties' coverage dispute. Each case looked to "evidence"—*Centex* after

28   summary judgment, 19 Cal. App. 5th at 802, and *Native* after trial, 189

Cal. App. 3d at 1277–78—to emphasize that the insured was not harmed. Of course, at the pleading stage, it is not Ms. Heard's burden to produce evidence. Nonetheless, as explained above, New York Marine cannot and does not dispute that Ms. Heard's intent was *actually* litigated in the underlying case. *See* ECF 5 at 7 (alleging that "[t]he jury's factual findings establish that Heard's liability is caused by the willful act(s) of Heard."). These circumstances are more than a distant cry from *Centex* and *Native*.

Finally, in *Celerity Educational Group v. Scottsdale Insurance Co.*, 2018 WL 2585321, at *6 (C.D. Cal. Apr. 11, 2018), the insurer *withdrew* its reservation of rights as to "matters uninsurable under the law," clarifying that its reservation extended only to "the lack of coverage for punitive damages." There was also no evidence that the insurer intended to refer to intentional conduct. *See Celerity Educ. Grp. v. Scottsdale Ins. Co.*, 2018 WL 3853998, at *2 (C.D. Cal. Aug. 10, 2018). By contrast, New York Marine concedes that it referenced section 533 in its reservation, ECF No. 42-1 at 21 n.4, and has since continually confirmed it, ECF No. 36 at 22; ECF 5 at 7–8.[6]

New York Marine contends that section 533 "cannot be waived as a matter of California law. It therefore logically follows that its reference in the ROR letter cannot create a conflict of interest requiring the appointment of independent counsel." ECF No. 42-1 at 21 n. 4. But an insurer's reliance on section 533 is subject to both waiver and estoppel. *See, e.g.*, *Fid. & Deposit Co. of Maryland v. First W. Bank*, 978 F.2d 714 (9th Cir. 1992); *Canadian Ins. Co. v. Rusty's Island Chip Co.*, 36 Cal.

---

[6] The other cases cited by New York Marine do not have any apparent relevance to the issues here.

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

App. 4th 491, 498 (1995). In any case, New York Marine's conclusion does not "logically follow[]." Perhaps New York Marine suggests that if section 533 cannot be waived, it would give rise to a right to independent counsel in every case. But section 533 is simply not relevant to every coverage dispute and thus will not always give rise to a conflict. If, as here, an insurer relies on section 533 *and* the case to be defended concerns the insured's intent, then a conflict arises. In either case, the waivability of section 533 is not relevant to the analysis.

New York Marine seeks to both eat its cake (undermine Ms. Heard's right to independent counsel triggered by its reservation on the basis of section 533) and have it (deny coverage on the basis of section 533). If the Court sanctions this gambit, then New York Marine (and other insurers) will simply issue "general" reservations of right in all cases in an effort to preserve full control over the defense. That permits an insurer to *benefit* from violating its duty to explain all factual and legal bases for its coverage positions. *See* Cal. Code Regs., tit. 10, § 2695.7(b)(1). Moreover, it guts the right to independent counsel by putting its availability squarely in the hands of insurers. New York Marine's position must be rejected.

> 5. Because New York Marine Breached Its Duties, Ms. Heard Did Not Need to Settle for the Conflicted Counsel Offered by New York Marine

New York Marine makes much of the following allegation: "Despite requests from Ms. Heard to reconsider, New York Marine persisted in its position, making it impossible for Ms. Heard to fully accept this "defense" provided by New York Marine without prejudicing her defense in the *Depp* lawsuit." ECF No. 36 at 33. However, Ms. Heard was not required

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

to accept the "defense" offered by New York Marine to entitle her to independent counsel.

New York Marine does not dispute that it owed Ms. Heard a duty to defend. Nor does it dispute that it did not provide Ms. Heard with independent counsel. The appointment of conflicted counsel did not discharge New York Marine's duty to defend. "[I]n order to eliminate the ethical dilemmas and temptations that arise along with conflict in joint representations, the insurer is *required* to provide its insured with independent counsel of the insured's choosing who represents the insured, not the insurer; and the insured may thereafter control the defense of the case." *Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1469 (2008) (cleaned up) (emphasis added).[7] As such, Ms. Heard's acceptance, vel non, is not relevant.[8]

> 6.  <u>Because New York Marine Breached Its Duties, Ms. Heard Did Not Contravene Any Provision of the Policy</u>

New York Marine similarly misses the point by arguing that Ms. Heard breached the policy by incurring defense costs without its permission. New York Marine apparently misunderstands its duties under the Policy. As explained above, New York Marine owed Ms. Heard

---

[7] *See also, e.g.*, Hon. H. Walter Croskey (Ret.), et al., *California Practice Guide: Insurance Litigation* Ch. 7B-K ("As part of its duty to defend, the insurer must provide a full defense by competent counsel. That duty is breached when an insurer furnishes defense counsel whose ability to represent the insured is impaired by a disqualifying conflict of interest. In such cases, the insured is usually permitted to hire independent counsel at the insurer's expense.").

[8] The parties dispute the extent to which New York Marine's appointed counsel was permitted to participate in the defense. *Compare* ECF No. 5 at 4, *with* ECF No. 36 at 4. However, this disputed issue is plainly not appropriate for resolution at the pleading stage.

PASICH

a duty to provide independent counsel. It failed to provide such independent counsel. New York Marine cannot complain that Ms. Heard's damages arising from *its* own breach (failure to provide independent counsel) are unrecoverable because *it* did not authorize Ms. Heard to incur defense costs through independent counsel. It owed the duty to pay for independent counsel regardless of its desire to authorize it.

Indeed, as aptly quoted by New York Marine, "when the insured has requested and been denied a defense by the insurer . . . the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent." *Gribaldo v. Agrippinia Versicherunges A.G.*, 3 Cal.3d 434, 449 (1970). New York Marine had multiple opportunities to remedy its breach and provide her a proper unconflicted defense. ECF No. 36 at 33. *Cf. Foxfire, Inc. v. New Hampshire Ins. Co.*, 1994 WL 361815, at *3 (N.D. Cal. July 1, 1994) (breaching insurer, having "ample opportunity to step in and hire counsel at its own set rates" could not complain that insured should have only paid what it would have). It did not, and the appropriate damages include "costs and attorneys fees expended by [Ms. Heard] in defending the underlying action." *Richards v. Sequoia Ins. Co.*, 195 Cal. App. 4th 431, 437 (2011). In light of New York Marine's refusal to defend, Ms. Heard was entitled to defend the action through other means.

### 7.   Ms. Heard's Bad Faith Claim Cannot Be Dismissed

As explained above and in the counterclaim, New York Marine has breached the Policy. But even if it had not, "California courts have addressed certain circumstances in which a claim for breach of the implied covenant of good faith and fair dealing might survive despite the absence of a valid breach of contract claim," including when "an insurer

unreasonably delayed the investigation of a non-covered claim." *Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 860–61 (N.D. Cal. 2011); *see, e.g.*, *McMillin Scripps N. P'ship v. Royal Ins. Co.*, 19 Cal. App. 4th 1215, 1222–23 (1993) ("[A]n insurance company could be liable to its insured for tortious bad faith despite the fact that the insurance contract did not provide for coverage." (citations omitted)).

The implied covenant of good faith and fair dealing mandates that the insurer refrain from doing "'anything which injures the right of [the insured] to receive the benefits of the agreement.'" *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 940 (1976) (citation omitted). Misconduct like that alleged here, such as failing to conduct a full and thorough investigation and asserting grounds for denying coverage without conducting that investigation, ECF No. 36 at 25, has been held to constitute bad faith. *See*, *e.g.*, *Shade Foods Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881–83 (2000) (insurer breached implied covenant of good faith and fair dealing by failing to properly investigate claim and defend insured despite existence of difficult coverage issues); *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1624 (1996) (insurer breached implied covenant of good faith and fair dealing by failing to diligently search for evidence supporting insured's claim). If an insurer fails to deal in good faith with its insured, it can be liable for bad faith even if the policy ultimately does not provide coverage for the claim. Thus, independent of the breach of contract claim, Ms. Heard's bad faith claim should not be dismissed.

## III.   TRAVELERS' DEFENSE OF MS. HEARD DOES NOT EXCUSE NEW YORK MARINE'S BREACHES

Again undeterred by blackletter California law, New York Marine argues that because Ms. Heard alleges that another insurer participated

in her defense, she cannot have suffered damages. However, "where more than one insurer owes a duty to defend, a defense by one constitutes no excuse of the failure of any other insurer to perform." *Wint v. Fid. & Cas. Co.*, 9 Cal. 3d 257, 263 (1973). Travelers' defense cannot excuse New York Marine's breach.

New York Marine contends that "[a]n insured is 'only entitled to one full defense.'" But nowhere does Ms. Heard allege that Travelers covered the *full* cost of the defense. The Counterclaim merely alleges that Travelers defended and, in that role, "had paid, and was paying [sums] towards Ms. Heard's defense in the Depp lawsuit." ECF No. 36 at 22. That does not demonstrate that Ms. Heard did not suffer damages as a result of New York Marine's breaches. Ms. Heard *did* suffer such damages and, as relevant for purposes of this motion, *alleges* that she suffered such damages. *Id.* at 24.[9]

Travelers' defense of Ms. Heard simply does not excuse New York Marine's breach as a matter of law. Ms. Heard's allegations do not support a contrary conclusion.

## IV. NEW YORK MARINE'S MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED

New York Marine has not established any need for a more definite statement. Federal Rule of Civil Procedure 12(e) permits a motion for a more definite statement of a pleading if the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." As

---

[9] *Unlike* Travelers, who had the duty to pay for Ms. Heard's counsel in accordance with California Civil Code section 2860, New York Marine cannot rely on panel rates or the standards of section 2860 to limit its liability. *See, e.g.*, *Concept Enters., Inc. v. Hartford Ins. Co.*, 2001 WL 34050685, at *3 (C.D. Cal. May 22, 2001) (breaching insurer's reliance on section 2860 rate limits "unavailing," collecting cases).

explained above, Ms. Heard's statement that she did not "fully accept [the] 'defense'" proffered by New York Marine is neither vague nor ambiguous: Ms. Heard had no duty to accept the deficient defense offered by New York Marine in lieu of the unconflicted defense it owed.

Moreover, Ms. Heard does not need to amend "to explain whether her claim for 'defense costs' includes post-tender attorneys fees subject to the limitations of Civil Code §2860(c) and whether any of her incurred defense costs not paid by any insurer were incurred at NY Marine's 'request.'" "The purpose of Rule 12(e) is to permit litigants to procure information needed to frame a responsive pleading, not as a substitute for discovery . . . ." Wright & Miller § 1376. New York Marine neither explains why it cannot frame a responsive pleading without this information, nor why it cannot obtain it in the course of discovery.

## V. NEW YORK MARINE'S MOTION TO STRIKE IS MERITLESS

New York Marine seeks to strike Ms. Heard's allegation that New York Marine "reserved rights to deny coverage on the ground that Ms. Heard behaved intentionally, thus creating a conflict of interest with Ms. Heard and giving Ms. Heard the right to independent counsel, with New York Marine being obligated to pay for the fees and costs of this independent counsel." As explained above, New York Marine *did* reserve rights to deny coverage on the ground that Ms. Heard behaved intentionally (and concedes that it did), which *did* give rise to a conflict of interest and the right to independent counsel. This is not a strikable allegation.

New York Marine also seeks to strike paragraphs 7–16 of the Amended Counterclaim, which recite marketing representations made by New York Marine's current and former parent entities because they are purportedly not relevant. "Motions to strike on the grounds of

insufficiency, immateriality, irrelevancy, and redundancy are not favored . . . and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Zahedi v. Miramax,* 2021 WL 4497211, at *2 (C.D. Cal. Jan. 7, 2021). "Without an adequate showing of prejudice, courts may 'deny motions to strike . . . .'" *Id.*

New York Marine first argues that extrinsic evidence is only relevant where policy language is facially ambiguous. That is not correct. *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006) ("'[E]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible.'"); *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 496 n.2 (9th Cir. 1988) (courts applying California law "may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous").

New York Marine also argues that the language is "mere marketing 'puffery' which are not actionable as representations or promises." All of New York Marine's cases concern fraud actions, which are subject to a heightened pleading standard not relevant here.[10] However, if by contending that these representations constitute "puffery" New York Marine is suggesting that they are not accurate,[11] New York Marine is only bolstering Ms. Heard's bad faith claim. *See* Cal. Ins. Code

---

[10] They also exclusively concern Allstate's slogan "You're In Good Hands."

[11] *See Puffery,* Merriam-Webster, https://www.merriam-webster.com/dictionary/puffery ("exaggerated commendation especially for promotional purposes").

§ 780 (An insurer "shall not cause to be issued . . . any statement that is known, or should be known, to be a misrepresentation" of the "benefits or privileges of the policy or future dividends payable under the policy.").

In any case, in a coverage action, an insurer's public representations are relevant to the reasonable expectations of its insureds. *See, e.g.*, *Glenfed Dev. Corp. v. Superior Court*, 53 Cal. App. 4th 1113, 1118–19 (1997) ("extrinsic evidence concerning the reasonable expectations of the insured may be admissible at trial"); *Collins v. JC Penney Life Ins. Co.*, 2003 WL 25945842 (S.D. Cal. May 6, 2003) (insurer promotion, marketing, and sale materials are relevant to insured's allegation of bad faith claims handling). These allegations plainly are relevant to this dispute.

## VI.   **CONCLUSION**

For all these reasons, New York Marine's motion should be denied.

DATED: February 17, 2023                    PASICH LLP


By:       */Kayla Robinson*
Kayla Robinson

Attorneys for Defendant and
Counter-Claimant

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2   The undersigned, counsel of record for Defendant and Counter-

3 Claimant Amber Heard, certifies that this brief contains 7,000 words,

4 which complies with the word limit of L.R. 11-6.1, excluding the parts of

5 the document exempted by L.R. 11-6.1.

6 DATED: February 17, 2023    PASICH LLP

7

8         By:   */Kayla Robinson*
            Kayla Robinson

9          Attorneys for Defendant and

10         Counter-Claimant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HEARD'S OPPOSITION TO NY MARINE'S MOTION TO DISMISS, ETC.**

PASICH