McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham A. Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:  (559) 433-1300
Facsimile:  (559) 433-2300

Attorneys for Plaintiff and Counter-
defendant New York Marine and General
Insurance Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMBER HEARD, an individual,<br><br>Defendant. | Case No. 2:22-cv-04685-GW(PDx)<br><br>Consolidated for Pre-Trial Purposes with 2:21-cv-5832-GW (PDx)<br><br>**NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM** |
| AMBER HEARD, an individual<br><br>Counter-claimant<br><br>v.<br><br>NEW YORK MARINE AND GENERAL INSURANCE COMPANY, a New York corporation,<br><br>Counter-defendant | Date:          March 13, 2023<br>Time:          8:30 a.m.<br>Judge:        Hon. George H. Wu<br>Courtroom:  9D<br><br>Filed Concurrently with Suppl. Request for Judicial Notice<br><br>Complaint Filed July 8, 2022<br>FAC Filed July 11, 2022 |

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.  HEARD WAS NOT ENTITLED TO INDEPENDENT COUNSEL FROM NY MARINE ...................................................................... 1

    A.  Regardless Of Which State's Law Applies, Heard Was Not Entitled To Independent Counsel ................................................ 1

    B.  Application Of Civil Code § 1646 Does Not Alter The Analysis ......... 6

    C.  Even Applying Civil Code § 2860, NY Marine's Reservation Of Rights Did Not Create A Conflict Giving Rise To A Right To Independent Counsel .................................................................. 11

    D.  Since NY Marine's Appointment Of Virginia Defense Counsel Did Not Create A "Tripartite Relationship", She Was Not Entitled To Independent Counsel ...................................................... 14

    E.  NY Marine's Acts Subsequent To Heard's Repudiation Of Its Proffered Defense Do Not Create An Alternative Basis For The Appointment Of Independent Counsel ...................................... 15

II.  HEARD'S BAD FAITH CLAIM MUST BE DISMISSED ........................... 18

III.  NY MARINE'S MOTION TO STRIKE IS MERITORIOUS, AND HEARD'S OPPOSITION ADMITS FACTS ESTABLISHING THAT IT SHOULD BE GRANTED ......................................................... 19

IV.  CONCLUSION .................................................................. 20

WORD COUNT CERTIFICATE ......................................................... 22

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>CASES</u>

4
*A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*
  852 F.2d 493 (9th Cir. 1988) .......................................................................... 19

5

6
*Arden v. Forsberg & Umlauf, P.S.*
  193 Wash.App. 731 (2016) ............................................................................... 4

7
*Bethlehem Const., Inc. v. Transportation Ins. Co.*
  2006 WL 2818363 (E.D.Wash. Sept. 28, 2006) ........................................ 5, 6

8

9
*Canadian Ins Co. v. Rusty's Island Chip Co.*
  36 Cal.App.4th 491 (1995) ............................................................................. 13

10
*Celebrity Educ. Grp. v. Scottsdale Ins. Co.*
  2018 WL 3853998 (C.D.Cal. Aug. 10, 2018) .............................................. 12

11

12
*Centex Homes v. Lexington Ins. Co.*
  2014 WL 1225501 (N.D.Tex. Mar. 25, 2014) ............................................... 6

13
*Certain U'Writers at Lloyd's of London v. Pac. S.W. Airlines*
  786 F.Supp. 867 (C.D.Cal. 1992) ................................................................. 13

14

15
*Cook v. King Manor and Convalescent Hosp.*
  40 Cal.App.3d 782 (1974) ............................................................................. 13

16
*Cybernet Ventures, Inc. v. Harford Ins. Co. of the Midwest*
  168 Fed.Appx. 850 (9th Cir. 2006) .............................................................. 13

17

18
*Dore v. Arnold Worldwide, Inc.*
  39 Cal.4th 384 (2006) .................................................................................... 19

19
*Downey Venture v. LMI Ins. Co.*
  66 Cal.App.4th 478 (1998) .................................................................. 8, 11, 13

20

21
*Endurance Am. Spec. Co. v. Lance-Kashian & Co.*
  2011 WL 5417103 (E.D. Cal. Nov. 8, 2011) ............................................... 14

22
*Farmers Ins. Exch. v. Veveiros*
  2011 WL 1535404 (2011) ................................................................................ 7

23

24
*Fid. and Dep. Co. of Maryland v. First W. Bank*
  978 F.2d 714 (9th Cir. 1992) ........................................................................ 12

25
*Fireman's Fund Ins. Co. v. Nationwide Mut. Fire Ins. Co.*
  2012 WL 1985316 (S.D.Cal. 2012) ........................................................... 8, 9

26

27
*Foremost Ins. Co. v. Wilks*
  206 Cal.App.3d 251 (1988) ........................................................................... 13

28

ii

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1
2

# <u>TABLE OF AUTHORITIES</u>
## (Continued)

<u>Page</u>

3

*Frontier Oil Corp. v. RLI Ins. Co.*
 153 Cal.App.4th 1436 (2007)................................................................7, 8, 9

4

*Garamendi v. Mission Ins. Co.*
 15 Cal.App.4th 1277 (1993)......................................................................13

5
6

*Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP*
 357 F.Supp.2d 951 (E.D.Va. 2005).....................................................5, 16, 17

7
8

*Glenfed Dev. Corp. v. Superior Court*
 53 Cal.App.4th 1113 (1997)......................................................................20

9

*Hartford Underwriters Ins. Co. v. Foundation Health Servs., Inc.*
 524 F.3d 588 (5th Cir. 2008).......................................................................5, 6

10
11

*In re Computer Dynamics Inc.*
 252 B.R. 50 (Bankr. E.D. Va. 1997) ............................................................15

12

*J.C. Penney Cas. Ins. Co. v. M. K.*
 52 Cal.3d 1009 (1991)...............................................................................12

13
14

*James River Ins. Co. v. Medolac Labs.*
 290 F.Supp.3d 956 (C.D.Cal. 2018).............................................................8

15

*Love v. Fire Ins. Exch.*
 221 Cal.App.3d 1136 (1990).....................................................................18

16
17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
 519 F.3d 1025 (9th Cir. 2008)...................................................................18

18

*Mariscal v. Old Republic Life Ins. Co.*
 42 Cal.App.4th 1617 (1996)......................................................................19

19
20

*McMillin Scripps N. P'ship v. Royal Ins. Co.*
 19 Cal.App.4th 1215 (1993)......................................................................18

21

*Nat'l Union Fire Ins. Co. v. Donaldson Co.*
 272 F.Supp.3d 1099 (D.Minn. 2017) ..........................................................9

22
23

*Norman v. Ins. Co. of N. Am.*
 218 Va. 718 (1978)............................................................................16, 17

24

*Northern Insurance Co. v. Allied Mutual Ins. Co.*
 955 F.2d 1353 (9th Cir. 1992).....................................................................3, 5

25
26

*Pitzer College v. Indian Harbor Ins. Co.*
 8 Cal.5th 93 (2019)...............................................................................9, 10

27

*Safeco Ins. Co. v. Superior Court*
 71 Cal.App.4th 782 (1999).........................................................................17

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

iii

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Scottsdale Ins. Co. v. MV Transportation*
    36 Cal.4th 643 (2005) ................................................................. 1

*State Farm Mut. Auto. Ins. Co. v. Floyd*
    366 S.E.2d 93 (Va. 1988) ............................................................ 4

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*
    14 Cal.App.4th 637 (1993) ...................................................... 2, 7

*Tank v. State Farm Fire & Cas. Co.*
    715 P.2d 1133 (1986) .................................................................. 4

*Tomerlin v. Canadian Indem. Co.*
    61 Cal.2d 638 (1964) ................................................................ 13

*Travelers Commercial Ins. Co. v. New York Marine and General Ins. Co.*
    2022 WL 100109 (C.D.Cal. Jan. 6, 2022) ................... 2, 6, 10, 12, 15

*Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*
    50 Cal.4th 913 (2010) ................................................................. 4

*West Am. Ins. Co. v. Nutiva, Inc.*
    2018 WL 3861832 (N.D.Cal. 2018) ............................................. 9

**STATUTES**

Civil Code § 1646 ............................................................... 6, 7, 9

Civil Code § 1668 .................................................................... 13

Civil Code § 2860 ............................................................. 10, 13, 14

Civil Code § 2860(e) ............................................................. 2, 10

Civil Code § 3513 .................................................................. 12, 13

Insurance Code § 533 ........................................................... 12, 13, 14

**OTHER AUTHORITIES**

Virginia Code of Professional Responsibility DR: 5-106(B) ................... 15

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

iv

## I. HEARD WAS NOT ENTITLED TO INDEPENDENT COUNSEL FROM NY MARINE

Undisputed in Heard's Opposition is that an insurer's offer of a defense under reservation of rights only "permits the insured to decide whether to accept the insurer's terms for providing a defense, or instead to assume and control its own defense." *Scottsdale Ins. Co. v. MV Transportation,* 36 Cal.4th 643, 656 (2005). Heard's Amended Answer and Counterclaim alleged that she did not "fully accept" the defense proffered by NY Marine because it was "impossible" to do so and her opposition confirms that she "was not required to accept" the "'defense' offered" by NY Marine. (Amended Answer ["Amend. Ans."] ECF #36, at ¶ 25; Opp., ECF #43, at 23:27-24:1.)  Heard's opposition further confirms that her alleged entitlement to recover "defense costs" consisting of "expenses" without NY Marine's consent is likewise based on NY Marine's own alleged "breach (failure to provide independent counsel)". (Opp., at 25:1-5.) Thus, Heard's entire opposition to NY Marine's motion is predicated on her erroneous assertion of an entitlement to independent counsel.

### A. Regardless Of Which State's Law Applies, Heard Was Not Entitled To Independent Counsel

Whether California or Virginia law apply to NY Marine's contractual defense obligations is immaterial.  Its appointment of Virginia defense counsel did not create a conflict of interest since: (1) regardless of which jurisdiction's law governs its contractual obligations, Virginia defense counsel's obligations to both Heard and NY Marine were governed by Virginia's laws and ethical rules; and (2) under Virginia's laws and ethical rules, Virginia defense counsel never operated under a conflict of interest since they only had Heard as a client. (*See,* Memo of P&As, ECF #42-1, at 14:6-19:9.).

Heard argues that "[a] conflict-of-laws analysis is required", that "[t]he governmental interest test requires application of California law", and that "[u]nder California law, New York Marine's reservation of rights gave rise to a conflict of

interest". (*See,* Opp., ECF #43, at 8:1-23:19.) Heard's expansive arguments fundamentally misconstrue NY Marine's position, misapply the relevant law, and flatly ignore that under California law, a Virginia attorney appointed by an insurer to defend an insured in Virginia, even under a reservation of rights, does not have a ethical conflict triggering an insured's right to independent counsel. This Court previously addressed the same issue and argument (albeit raised by Travelers), and correctly concluded that because Virginia counsel (originally selected by Heard prior to her tender to NY Marine) had only her as a client, no conflict of interest giving rise to a right of independent counsel arose. *Travelers Commercial Ins. Co. v. New York Marine and General Ins. Co.,* 2022 WL 100109 *4-*5, (C.D.Cal. Jan. 6, 2022) ("*Travelers*").

With respect to Heard's contention that application of the "governmental interest" choice of law test alters the analysis, under that test, the Court is only required to compare the two jurisdictions competing interests after first determining that there is a "true conflict of laws" "because the substantive law of California leads to a different result…." *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc*., 14 Cal.App.4th 637, 645 (1993). Here, there is no "true conflict" between the laws of California and Virginia with respect to the duties owed to an insured by a defense attorney appointed by an insured's liability insurer in an action filed in Virginia, even if the defense is under reservation of rights.

Both California and Virginia have legal and ethical rules in place to protect insureds from defense counsel being subjected to conflicts of interest. In California, because of the judicial recognition of the existence of the "tripartite" relationship pursuant to which defense counsel represents both the insurer and the insured, that relationship must give way in the event of an "actual conflict" of interest, thereby allowing the insured to select independent defense counsel absent an express written waiver as authorized by Civil Code § 2860(e). In contrast, Virginia courts have altogether avoided the entire conflict of interest issue by declining to adopt the

2

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

"tripartite" relationship doctrine and instead concluding that even where defense counsel is appointed and paid by an insurer, that defense counsel only has the insured for a client. (Memo P&As, ECF #42-1, at 17:1-20:9.) As such, since California law only requires giving the insured the option of appointing independent defense counsel in situations where the counsel originally appointed by the insurer is subject to a conflict of interest, and no conflict can exist here as a matter of Virginia law and ethical rules, there is no "true conflict" between the laws of California and Virginia as the result is the same regardless of which state's law applies.

Nor do the cases cited by Heard support her argument. First, Heard cites to *Northern Insurance Co. v. Allied Mutual Ins. Co.,* 955 F.2d 1353 (9th Cir. 1992), contending that it holds that "when the law of one state would require an insurer to provide independent counsel to fulfill its duty to defend, but the law of another state would not, it raises a conflict of laws issue about the scope of the insurer's duty", and that "the ethical duties imposed on defense counsel in the state the defense is provided in do not foreclose the possibility that a conflict actually exists under California law". (Opp., ECF #43, at 8:13-9:2.) Heard thus relies on *Allied Mutual* for its conclusion that "applying California law [did] not harm Washington's interest" and that "Washington ha[d] no specific interest in having its more lenient standard applied" such that the insurer should have provided the insured with independent counsel in the Washington litigation. (*Id.,* at 9:16-10:7 [citing *Allied Mut., supra,* 955 F.2d at 1359-1360].)

As an initial matter, *Allied Mutual* actually applied the Restatement's "substantial relationship" choice of law test and thus did not in any way address California's "governmental interest" choice of law test as advocated by Heard. *Allied Mut. Ins. Co., supra,* 955 F.2d at 1359. Further, Heard's opposition incorrectly attempts to characterize *Allied Mutual* as being analogous to the dispute here because, she asserts, neither Washington nor Virginia recognize the "tripartite" relationship such that "defense counsel represents only the insured, not the insurer, and owes a

duty of loyalty to the insured that has no exceptions." (Opp. at 10:9-11, and fn. 2.) What the Opposition fails to note, however, is that although under Washington law, defense counsel may represent "only the insured", Washington law also expressly recognizes that the insurer is a quasi-fiduciary upon whom is imposed a "heightened duty" to the insured carrying "enhanced obligations", the breach of which can subject both the insurer and defense counsel to tort liability. *Tank v. State Farm Fire & Cas. Co.,* 715 P.2d 1133, 1136 (1986) ("the potential conflicts of interest between insurer and insured inherent in this type of defense mandate an even higher standard: an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith.  Failure to satisfy this enhanced obligation may result in liability of the company, or retained defense counsel, or both."); *see also Arden v. Forsberg & Umlauf, P.S.,* 193 Wash.App. 731, 748 (2016).

In contrast, neither California or Virginia law impose such a "heightened duty" on an insurer. *See, Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.,* 50 Cal.4th 913, 929 (2010) ("[a]n insurer is not a fiduciary, and owes no obligation to consider the interests of its insured above its own."); *State Farm Mut. Auto. Ins. Co. v. Floyd,* 366 S.E.2d 93, 143 (Va. 1988) ("The insurer has the right to protect its own interest along with that of the insured. It is that factor which prevents the development of a fiduciary relationship between insurer and insured").

Furthermore, as explained in detail in NY Marine's motion and as effectively admitted by Heard whose Opposition does not contend otherwise, Virginia simply avoids the conflict of interest issue altogether by declining to adopt the "tripartite" relationship doctrine and only allowing defense counsel to represent the insured's interests, regardless of the contents, if any, of the insurer's reservation of rights. (Memo P&As, ECF #42-1, at 17:1-20:9, and see Opp., ECF #43, at 9:12-13.)    This undivided loyalty is so complete that insurer-appointed defense counsel can even turn around and  represent plaintiffs in actions against other insureds of the same insurer. See, *Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP,* 357 F.Supp.2d 951, 953, 957

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

4

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

and fn. 16 (E.D.Va. 2005) ("*Jordan*").  Since Virginia law, unlike California law*,* requires the appointment of defense counsel who *only* has duties of loyalty to the insured and, unlike Washington law, imposes no additional "heightened duty" on the insurer or counsel, Virginia defense counsel appointed by NY Marine was never subject to a conflict of interest.  (*Id.*)

Nor do the related cases cited by Heard assist her. For instance, Heard cites *Bethlehem Const., Inc. v. Transportation Ins. Co.,* 2006 WL 2818363, *23 (E.D.Wash. Sept. 28, 2006) as standing for the "same" conclusion as *Allied Mutual*. Unacknowledged by Heard's Opposition, however, is that *Bethlehem* addressed underlying litigation which took place *in California*, between parties who had offices *in California*, were engaged in construction projects *in California* out of which the underlying action arose, and which construction projects the insured had expressly informed its insurance broker that the relevant insurance policies "were intended to cover". *See, id.,* at *1-*13.  It is thus entirely unremarkable that the *Bethlehem* Court would conclude either that California's interests should prevail over Washington's or that California law required the appointment of *Cumis* counsel. And more to the point, *Bethlehem* actually contravenes the main thrust of Heard's position here, since its ultimate conclusion—that the insured was entitled to independent counsel in the underlying litigation—turned on its detailed analysis of whether the claims asserted against Bethlehem in the underlying California litigation gave rise to an actual conflict between Bethlehem, its counsel, and the insurers *under California law where the litigation was venued. See, id.,* at *23-*28.

Similarly, in *Hartford Underwriters Ins. Co. v. Foundation Health Servs., Inc.,* 524 F.3d 588, 589, 591-592, 599 (5th Cir. 2008), the insured had a principal office in Louisiana but was incorporated in Mississippi, operated nursing homes in Mississippi and was sued in Mississippi on claims relating to the operation of those nursing homes. The Fifth Circuit thus affirmed the trial court's ruling that Mississippi law applied to require the appointment of independent counsel over Louisiana law which

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

did not. Heard also cites *Centex Homes v. Lexington Ins. Co.,* 2014 WL 1225501 *1 (N.D.Tex. Mar. 25, 2014), but *Centex* does not alter the foregoing conclusion since it applied Texas law based on the conclusion that there was no conflict between the laws of California and Texas.

Moreover, to the extent that *Bethlehem, Foundation* or *Centex* are germane to the present dispute, they each confirm that the determination here of whether Heard was entitled to independent counsel cannot be made based purely on an oversimplification of California law, and instead establish that the determination must take into consideration the true nature of the parties' respective relations vis-à-vis Virginia counsel under Virginia law. And indeed, this Court has been down this road before, correctly concluding that "[w]hatever any choice-of-law analysis might say about whether California or Virginia law applied to the question of whether Defendant's obligation to provide to the insured, … a Virginia lawyer appointed by an insurer to defend an insured has only one client, *the insured ….* As a result, even if this Court would agree with Plaintiff that California law applied—thereby avoiding the 'choice of law gymnastics' Plaintiff believes Defendant attempts, … under California law it would not have such an obligation because the Virginia lawyer— whose professional conduct is unquestionably governed/measured by Virginia law— has no undivided loyalty." *Travelers, supra*, 2022 WL 100109 *4-*6.

As a result, the Court concluded that NY Marine could "ha[ve] no *Cumis* counsel obligation in connection with a Virginia attorneys' representation of its insured in a Virginia lawsuit." *Id.,* at *5; see also, Supplemental Request for Judicial Notice, ¶ 1, Ex. 1, at 15:20-24 (stating that the Court had applied California law).

**B.      Application Of Civil Code § 1646 Does Not Alter The Analysis**

Setting aside the general "choice-of-law" analysis, the Opposition also addresses the application of Civil Code § 1646 at length. To this end, the Opposition argues that the NY Marine "policy does not expressly specify a place of performance", and thereafter asserts that Civil Code § 1646 compels the conclusion

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

6

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

that California is the "place of performance" for purposes of a choice of law analysis. (*See,* Opp., ECF #43, at 15:6-17:12.) According to Heard's Opposition, under *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436 (2007)*,* if the "place of performance" is not explicitly identified, then it can only be determined based on where the insured entered into the contract.  Heard further argues that the place of performance therefore must be California because "it was not foreseeable that an action would be filed against Ms. Heard in Virginia, and therefore there was no intent that the place of performance would be Virginia." (Opp., at 15:18-25.)

However, the issue of Heard's entitlement to independent counsel is not one of "interpretation" of a contract and thus Civil Code § 1646 has no application here. Neither Heard's Amended Counterclaim nor her Opposition assert that any particular term in the NY Marine policy should be interpreted differently by virtue of California law. *See, Farmers Ins. Exch. v. Veveiros,* 2011 WL 1535404, *5, fn. 1 (2011) (Unpub'd) (holding that question of which state's respective statutory rules regarding "stacking" of policy limits controlled was not a question of "the *interpretation* of the insurance policies, but [of] the statutory law governing the practice of stacking" and consequently holding that "Section 1646 does not apply.") (emphasis in original).

Furthermore, even assuming the applicability of Civil Code § 1646, recent California case law holds that the "place of performance" for purposes of that section need not be expressly "specified" or "stated" by the contract, but rather "can be gleaned from the nature of the contract and its surrounding circumstances." *Frontier, supra*, 153 Cal.App.4th at 1450. Thus, in applying Civil Code § 1646, California courts have long understood that "[w]here a multiple risk policy insures against risks located in several states, it is likely that the courts will view the transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved." *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.,* 14 Cal.App.4th 637, 646–47 (1993).

///

1    Heard attempts to undermine the applicability of this well-established principle
2    based on three cases.  In *James River Ins. Co. v. Medolac Labs.,* 290 F.Supp.3d 956,
3    966 (C.D.Cal. 2018), the Court found that where James River was called upon to
4    provide a defense to California-venued litigation for its Oregon-based insured under
5    a policy issued to the insured in Oregon, California law applied to govern competing
6    choice of law interests. *Id.,* 965-966. Admitting the Court's conclusion that the parties
7    anticipated a defense in California notwithstanding that the insured was domiciled in
8    Oregon and the policy was issued there, Heard points to the Court's further statement
9    that "[t]his conclusion is troubling, because, if taken to its logical extreme, it indicates
10   that a policy might be interpreted according to different bodies of law depending on
11   where each defense pursuant to the policy was performed." (Opp., ECF #43, at 16:1-
12   14 [citing *James River, supra,* at 966].) However, the Court in *James River* failed to
13   consider the holding in *Downey Venture v. LMI Ins. Co*., 66 Cal.App.4th 478, 514
14   (1998) that "[a] liability insurance policy issued on a nationwide basis may be
15   construed in accordance with the law of the jurisdiction in which a particular claim
16   arises…. *Parties to an insurance contract understand this*." (Emphasis added). *Id.*
17   Moreover, as evidenced by the decisions in *Frontier* and *Downey Venture*, as well as
18   numerous decisions following them, the fact remains that the weight of California law
19   holds that under Civil Code § 1646, the place of performance includes those locations
20   where the defense obligation may be performed.  And fundamentally, regardless what
21   the *James River* court's concerns were, its dicta simply cannot overcome the
22   numerous decisions by California courts expressly concluding that the place of
23   performance of an insurer's defense obligation may be determined by the place where
24   it is called on to provide the agreed-upon defense.

25   Heard's Opposition's attempt to distinguish the decision in *Fireman's Fund*
26   *Ins. Co. v. Nationwide Mut. Fire Ins. Co.,* 2012 WL 1985316 (S.D.Cal. 2012) likewise
27   fails to withstand analysis. In that case, the court concluded that California was "the
28   place where the insurer would perform its contractual duty to defend could be

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

8

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

1    inferred", despite the fact that the policy did not specify a place of performance,

2    because "the additional insured was a restaurant with its headquarters and 200

3    restaurants located there."  (Opp., ECF #43, at 16:15-26.) In this respect, *Fireman's*

4    *Fund* is a clear-cut example of a case where the parties likely had no difficulty

5    inferring at least *one likely place* for performance of the defense duty—the State

6    where the insured's headquarters and its 200 locations were situated. But nothing in

7    the relevant law—or the *Fireman's Fund*'s court analysis—addresses why the same

8    possibility is not equally inferable in any other location where an insurer's policy

9    might be called upon to provide a defense. Thus, ultimately, *Fireman's Fund* reflects

10   no more than the application of the same rule applied by California courts, and which

11   should be applied here: that the parties understand that a defense will be provided—

12   and the contract thus performed—in any state and venue where the insured is sued

13   and the defense obligation applies.[1]

14         The Opposition also cites *West Am. Ins. Co. v. Nutiva, Inc.,* 2018 WL 3861832

15   (N.D.Cal. 2018), which rejects *Frontier's* conclusion that the place of performance

16   within the meaning of Civil Code § 1646 includes the place where an insurer may be

17   called upon to provide a defense. (Opp., at 17, fn. 14.) However, in that case, the issue

18   was whether California law applied to the interpretation of a policy definition of the

19   term "occurrence", in contrast to the present case which does not involve the

20   interpretation of any particular policy term.

21         Citing *Pitzer College v. Indian Harbor Ins. Co.,* 8 Cal.5th 93, 97 (2019) for its

22   holding that a policy's choice-of-law provision could not overcome California's

23

24   [1] Heard's Opposition cites *Nat'l Union Fire Ins. Co. v. Donaldson Co.,* 272 F.Supp.3d
     1099 (D.Minn. 2017) without comment.  That case merely superficially concludes
25   that only the law of the state of contracting governs the interpretation of an insurance
     policy. *Id.,* at *1111. However, it reaches that conclusion by only applying Minnesota
26   choice of law rules which mandate that determination – a test and result not consonant
     with California law or California choice-of-law analysis. Thus, *Donaldson* too adds
27   nothing to Heard's position.

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

9

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

"fundamental policy" establishing the "notice-prejudice" rule, the Opposition also appears to contend that the enforcement of Civil Code § 2860 is likewise an "unwaivable" "fundamental policy" of California. (Opp., at 13:18-22). In *Pitzer*, the Court explained that a state rule of law constitutes a "fundamental policy" only where it is designed to prevent "inequitable results" and to protect the "public interest". *Id.,* at 104. Here, there is nothing inequitable about allowing an insurer to select defense counsel in Virginia to defend an insured in Virginia since that counsel has only the insured for a client, and thus no conflict of interest.  Moreover, since no conflict of interest exists, there is no "public interest" to protect: in the absence of a conflict of interest, there can be no inequitable shifting of the "cost of the harm" onto the general public. *Id.* It is also necessarily the case that as against California, Virginia has a "materially greater interest in the determination of the issue" since the necessary representation was required to be provided by Virginia defense counsel who was and is subject to the Virginia Code of Professional Responsibility.[2] *See* Va.Sup.Ct.R. Sec.I, No.1.

Further, even assuming *Pitzer's* analysis were relevant here, its conclusion—that California's "notice prejudice" rule is a "fundamental policy" of the state because it is "unwaivable", weighs directly against Heard's position.  Civil Code § 2860(e) expressly provides that the right to independent counsel *can* be waived. Since the right to independent counsel can be contractually waived, it is not, by definition, a "fundamental policy."

As noted above, the NY Marine policy provides nationwide coverage.

---

[2] Heard also asserts that California law provides stronger protections, characterizing Virginia law as "a more lenient standard". But again, this misconstrues the nature of the relationship at issue, and the Court has previously correctly concluded that Virginia's "standard" isn't "more lenient", but rather, "is simply a different arrangement with the same goal in mind." *Travelers, supra,* 2022 WL 100109 *5 fn. 7.

Therefore, under well-established California law, at the time the parties contracted they reasonably anticipated that NY Marine might be called upon to provide a defense in a state other than California. Here, that proved to be the case, with Heard's conduct giving rise to the Underlying Action—the publication of allegedly defamatory articles—taking place in Virginia and Heard being sued in that jurisdiction. Under those circumstances, California law considers that Virginia is the "place of performance" of the specific obligation undertaken by NY Marine: i.e., the providing of a defense in the Underlying Action in Virginia. *Downey Venture, supra,* 66 Cal.App.4th at 514. Moreover, Heard's argument that she could not anticipate that she would be sued in Virginia is fundamentally incorrect, as her underlying conduct giving rise to the litigation—authoring an article for publication in a newspaper printed in Virginia—would necessarily require her contemplation of the possibility that she could be sued in that State. (FAC, Ex. 2, ECF #5-2.)

### C.   Even Applying Civil Code § 2860, NY Marine's Reservation Of Rights Did Not Create A Conflict Giving Rise To A Right To Independent Counsel

In addition to her choice of law arguments, Heard's Opposition again insists that NY Marine's reservation of rights letter "*did* enumerate a conflict-creating basis for denying coverage" since it implicitly referenced Insurance Code § 533.

As an initial matter, Heard predicates this argument on a quotation of her own allegation that NY Marine "reserved rights to deny coverage on the ground that Ms. Heard behaved intentionally". (Opp., ECF #43, at 18:6-8, quoting Amended Counterclaim ["Amended CC"] ECF #36, at 22.) But NY Marine's Reservation simply stated the unremarkable and legally correct proposition that "to the extent that California law does not permit an insurer to indemnify the insured, no indemnity can be provided." (Request for Judicial Notice ["RJN"], ECF #42-2, ¶ 11; Declaration of James P. Wagoner ("Wagoner Decl.") ¶ 3, Ex. 1, at 15.) In turn, as California law holds and as this Court previously and correctly concluded, a reservation of rights letter only creates an "actual" conflict of interest where it expressly cites a specific

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

11

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

provision or exclusion in the policy. *Travelers, supra,* 2022 WL 100109 *7; *Celebrity Educ. Grp. v. Scottsdale Ins. Co.,* 2018 WL 3853998, *2 (C.D.Cal. Aug. 10, 2018).

Accordingly, as NY Marine's motion explained at length, and as this Court has also previously concluded, NY Marine's reservation is nothing more than a "general" reservation of rights since it does not cite any specific or conduct based exclusions in the policy. (Memo. P&As, ECF #42, at 20:10-22:2). *Travelers, supra,* 2022 WL 100109 *7-*9. Heard's self-serving re-characterization of what NY Marine's reservation of rights letter actually says does not alter the fact that it did not specifically reserve rights on any particular exclusion, and consequently constitutes only a "general" reservation of rights which does not give rise to a conflict of interest requiring the appointment of independent counsel even under California law.

The Opposition further attempts to re-characterize the nature of NY Marine's reservation by asserting that "NY Marine *concedes* that it asserted a specific provision (section 533)", and arguing that this claimed distinction renders inapposite the relevant California case law cited in the moving papers as well as this Court's prior analysis. (Opp., ECF #43, at 21:1-23:19.) But again, this argument fails to focus the analysis on the correct question: as observed by NY Marine's motion, Civil Code § 3513 provides that "a law established for a public reason cannot be contravened by a private agreement". In turn, the statutory preclusion against the indemnification of "willful" acts set forth in Insurance Code § 533 reflects the "public policy" of the State of California "to discourage willful torts". *J.C. Penney Cas. Ins. Co. v. M. K.,* 52 Cal.3d 1009, 1021 (1991). Consequently, Insurance Code § 533 precluding insurers from indemnifying insureds for a "willful act" *cannot* be waived as a matter of California law, and therefore *every* general reservation of rights letter necessarily impliedly references that provision. (Memo P&As, at 12 and fn. 4.)

The Opposition cites two decisions as standing for the proposition that Insurance Code § 533 may be waived. However, the first, *Fid. and Dep. Co. of Maryland v. First W. Bank,* 978 F.2d 714 (9th Cir. 1992), is an unpublished opinion

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

which, under Ninth Circuit Rule 36-3, may not be cited unless relevant as law of the case, res judicata, or collateral estoppel—none of which apply here. The second, *Canadian Ins Co. v. Rusty's Island Chip Co.,* 36 Cal.App.4th 491, 498 (1995), only superficially addressed the question of whether Insurance Code § 533 is an unwaivable "fundamental policy" before concluding that it could be waived, pointing to a single, then 31-year old case, *Tomerlin v. Canadian Indem. Co.,* 61 Cal.2d 638 (1964).  However, as more recent decisions accurately observe, *Tomerlin*'s holding was predicated on "misrepresentations" made by the insurer to the insured resulting in an estoppel. *See, e.g., Certain U'Writers at Lloyd's of London v. Pac. S.W. Airlines,* 786 F.Supp. 867, 872 (C.D.Cal. 1992). Consequently, the weight of current precedent holds that Insurance Code § 533 reflects a "fundamental policy" of California that may not be waived. *See, Downey Venture, supra,* 66 Cal.App.4th at 511, fn. 36 (distinguishing *Tomerlin* and expressly holding that Civil Code § 3513 bars waiver of Insurance Code § 533) (citing *Cook v. King Manor and Convalescent Hosp.,* 40 Cal.App.3d 782, 792 (1974), and *Garamendi v. Mission Ins. Co.,* 15 Cal.App.4th 1277, 1289 (1993) [holding, contrary to *Tomerlin*, that "[t]here can be no estoppel where it would defeat operation of a policy protecting the public."]); *Pac. S.W. Airlines, supra,* 786 F.Supp. at 872-873 (finding that although insurer failed to properly notify insured, as a fundamental public policy, insurer could not be estopped from asserting Insurance Code § 533).

Accordingly, and as addressed in NY Marine's motion, a general reservation cannot create a conflict of interest within the meaning of Civil Code § 2860. *See e.g., Foremost Ins. Co. v. Wilks,* 206 Cal.App.3d 251, 261 (1988) (reservation of rights which expressly cited Insurance Code § 533 and Civil Code § 1668 did not create conflict requiring independent counsel); *Cybernet Ventures, Inc. v. Harford Ins. Co. of the Midwest,* 168 Fed.Appx. 850, 852 (9th Cir. 2006) (reservation expressly citing Insurance Code § 533 did not create conflict requiring independent counsel).

///

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

**D.**   **Since NY Marine's Appointment Of Virginia Defense Counsel Did Not Create A "Tripartite Relationship", She Was Not Entitled To Independent Counsel**

Under California law, where a tripartite relationship is not formed between the insurer, the insured and defense counsel, no right to independent counsel is triggered under Civil Code § 2860. In *Endurance Am. Spec. Co. v. Lance-Kashian & Co.,* 2011 WL 5417103 *21-22 (E.D. Cal. Nov. 8, 2011), Endurance, which defended the insured under a reservation of rights expressly asserting intentional act defenses, never appointed counsel to defend its insured, instead permitting the insured to continue using the defense counsel whom they had already retained before its tender. Accordingly, after the insured brought suit against Endurance, it argued that "no conflict of interest arose under section 2860(b) in the absence of the 'tripartite relationship' … in that the insureds 'first retained' their chosen, existing counsel in the Gottschalks bankruptcy and underlying Action, and Endurance never selected different counsel." *Id.* at *22. Thus, rejecting the insured's claim that Endurance had breached its obligations to them, the Court "agree[d] with Endurance's analysis that the insureds 'cannot show that they did not have their own counsel or that they were entitled to independent counsel under § 2860.'" *Id.*

As noted above, under Virginia law, defense counsel only represented Heard. No tripartite relationship ever existed between Heard, retained defense counsel, and NY Marine. Consequently, the content of NY Marine's reservation of rights letter is ultimately irrelevant since, as California law establishes, in the absence of a tripartite relationship, no conflict of interest giving rise to a right of independent counsel could exist.  Therefore, as in *Endurance,* Heard was not entitled to independent counsel even if the letter's implied reference to Civil Code § 533 would otherwise have created a conflict triggering right to independent counsel if the litigation had been venued in a state which did recognize the existence of the "tripartite relationship".

Also failing to withstand analysis is Heard's extensive argument that a reservation of rights on the basis of Insurance Code § 533—whether express or

implied—necessarily triggers a right to independent counsel because the claims against her necessarily raised the question of whether her conduct was intentional or willful and therefore NY Marine was not entitled to "control" the defense. (Opp., ECF #43, at 17:13-23:19.)  However, under Virginia law, an insurer does not have a right "to control" an insured's defense. (RJN, ECF # 42-3, ¶ 2, Ex. 2, at 1 ["A lawyer shall not permit a person who recommends, employs or pays [them] to render legal services for another *to direct or regulate [their] professional judgment* in rendering such legal services."] [emphasis added, citing Virginia Code of Professional Responsibility DR: 5-106(B).]); *see also In re Computer Dynamics Inc*., 252 B.R. 50, 63 (Bankr. E.D. Va. 1997) (explaining that under Virginia Ethical Consideration 5-1 "[t]he professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and *free of compromising influences and loyalties*. Neither his personal interests, the interests of other clients, *nor the desires of third persons should be permitted to dilute his loyalty to his client*.") (emphasis in original). Because NY Marine had no right to "control" the defense under Virginia law, and because, as this Court has previously concluded, under Virginia law and ethical rules, Virginia defense counsel represented *only* Heard, there simply could not be a conflict entitling her to independent counsel. *Travelers, supra,* 2022 WL 100109 *5 ("Because a Virginia lawyer has only the insured as a client, there is no conflict of interest, regardless of what Defendant's Reservation of Rights letter might say.").

**E.    NY Marine's Acts Subsequent To Heard's Repudiation Of Its Proffered Defense Do Not Create An Alternative Basis For The Appointment Of Independent Counsel**

Heard's Opposition also illogically argues that NY Marine's filing of the present litigation itself gave rise to a conflict of interest requiring the appointment of independent counsel. NY Marine extended a defense in the Underlying Action to Heard through the Cameron McEvoy firm on October 1, 2019. (FAC, ECF #5, ¶ 14; Amend. Ans., ECF #36, ¶ 14.) Heard admits that she refused to "fully accept the 'defense' provided by NY Marine" (Amend. CC, ECF #36, ¶ 25) through the

15

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

Cameron McEvoy firm, and that the Cameron McEvoy firm withdrew from the defense no later than November 20, 2020. (FAC, ¶ 16; Amend. Ans. ¶ 16; Amend. CC ¶ 26).  This action was filed on July 11, 2022.

Nevertheless, Heard's Amended Answer and Counterclaim and her Opposition both establish that her true position is that NY Marine breached the terms of the policy from the outset, that its doing so excused her from fulfilling her obligations under the policy and allowed her to refuse to "accept the 'defense' provided by NY Marine". (See, Amend. CC, ¶ 25 [asserting that "NY Marine's "refus[al]" to "agree to defend Ms. Heard through independent counsel … made it impossible for her to fully accept the 'defense' provided by New York Marine"]; Opp., ECF #43, at 23:20-24:2 [arguing that because NY Marine did not provide independent counsel, she "was not required to accept the 'defense' provided" and that NY Marine's appointment of counsel "did not discharge [its] duty to defend"]; and *see generally, id.,* at 23:20-25:22). However, since Heard was not entitled to independent counsel, she was not entitled to refuse to "accept the 'defense' provided by NY Marine" and thus she breached her obligations under the policy by doing so.

Fairing no better is Heard's attempt to manufacture a "conflict" by asserting that NY Marine's motion's reliance on the "no action" clause also creates a conflict by evincing its intent to "control" the defense.  (*See,* Opp., at 10:22-11:13). Most centrally, her argument ignores that, as noted above, Virginia's law and ethical rules require that defense counsel have *only* the insured as a client and do not permit others to direct or regulate an attorney's professional judgment, thereby operating to divest an insurer of any otherwise existing right to "control" the defense.

Although NY Marine was not entitled to "control" the defense, under both Virginia law and the NY Marine policy, it was *still* entitled to *appoint* defense counsel. *See, e.g., Norman v. Ins. Co. of N. Am.*, 218 Va. 718, 722, 727-728 (1978) (no conflict where insurer issued reservation  of rights and retained counsel to represent insured); *Jordan, supra,* 357 F.Supp.2d at 953, 957 and fn. 16. Heard's

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

refusal to accept that defense breached her obligations under the policy and relieved NY Marine of any further obligation to defend her. (Memo P&As, ECF #42, at 14:6-16:26, 22:25-24:28)

The Opposition quotes a generalized statement in *Safeco Ins. Co. v. Superior Court,* 71 Cal.App.4th 782, 787 (1999) which, within the framework of California law, explained that the purpose of the "no action clause" is protecting the insurer's "right to control the defense".  But that general characterization did not consider the fact that under Virginia law and ethical rules, NY Marine could not "control" the defense but still had the right to *appoint* Virginia defense counsel who would necessarily operate subject to all the relevant applicable Virginia legal and ethical rules governing their conduct. Thus, the "no action" clause would properly operate to protect that interest without also permitting NY Marine to "control the defense" under Virginia law. *Norman, supra,* 218 Va. at 722, 727-728; *Jordan, supra,* 357 F.Supp.2d at 953, 957 and fn. 16. It follows that NY Marine's motion's reference to the "no action" clause does not retroactively create a "conflict" giving Heard the right to independent counsel.  However, by Heard having admittedly previously refused to accept the counsel appointed by NY Marine and allegedly incurring other "defense costs" as a result, it follows that she is in breach of the NY Marine policy's "no action" clause.

Moreover, the "no action" clause was never explicitly raised by NY Marine in its reservation of rights letter and has only become relevant upon *Heard's* own breach of the policy. Having predicated both her defense *and* her Amended Counterclaim on the proposition that NY Marine was in breach of its obligations from the outset, forcing her to take unilateral action to repudiate its proffer of a defense through the same counsel she originally selected, she cannot now argue that NY Marine's subsequent act of filing this suit—or its reference in its motion to the NY Marine policy's "no action" clause—retroactively justifies her initial breach. It thus follows that Heard cannot create a conflict of interest based on anything occurring in the

1 present litigation because, by the time this action was filed, she had already repudiated
2 her obligations under the policy by refusing to accept the defense proffered by NY
3 Marine.

4 **II.   HEARD'S BAD FAITH CLAIM MUST BE DISMISSED**

5 It is well established in California that "without a breach of the insurance
6 contract, there can be no breach of the implied covenant of good faith and fair
7 dealing." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1034 (9th Cir.
8 2008); *Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 1152 (1990).  In an attempt to
9 avoid application of this principle here, Heard cites four cases which she incorrectly
10 contends support the position that a claim for bad faith may exist in the absence of a
11 claim for breach of contract. However, all of those decisions dealt with claims
12 involving an insurer's failure to investigate or render a coverage determination:
13 allegations not made in Heard's Amended Counterclaim.

14 Furthermore, Heard's Opposition mischaracterizes those cases. Specifically,
15 Heard quotes *McMillin Scripps N. P'ship v. Royal Ins. Co.,* 19 Cal.App.4th 1215,
16 1222-1223 (1993) as stating that "[A]n insurance company could be liable to its
17 insured for tortious bad faith despite the fact that the insurance contract did not
18 provide for coverage". However, what *McMillin* actually says is "[w]e also continue
19 to believe that *there may be unusual circumstances* in which an insurance company
20 could be liable to its insured for tortious bad faith despite the fact that the insurance
21 contract did not provide for coverage." *Id.* (emphasis and underlining added).
22 *McMillin* nevertheless went on to follow the well-established law that the insured's
23 bad faith claim *did not* survive in the absence of a contractual breach by the insurer.
24 *Id.,* at 1220, 1223 (citing *Love,* and stating that "[o]ur conclusion that a bad faith claim
25 cannot be maintained unless policy benefits are due is in accord with the policy in
26 which the duty of good faith is rooted" and holding that "because there was no breach
27 of the express provisions of the contract or other interference with the interests the
28 policy was designed to protect, no claim for breach of the covenant arises.").

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

Similarly, *Mariscal v. Old Republic Life Ins. Co.,* 42 Cal.App.4th 1617, 1622 (1996), simply is not relevant as the insurer *was* found liable for breach of the policy—it simply "d[id] not challenge the determination that it breached the insurance policy."

### III.   NY MARINE'S MOTION TO STRIKE IS MERITORIOUS, AND HEARD'S OPPOSITION ADMITS FACTS ESTABLISHING THAT IT SHOULD BE GRANTED

Heard's Opposition to NY Marine's alternative motion to strike again asserts that NY Marine "*did* reserve rights to deny coverage on the ground that Ms. Heard behaved intentionally (and concedes that it did)". (Opp., ECF #43, at 28:20-24.) NY Marine made no such concession, and Heard's characterization of the content of NY Marine's reservation of rights letter is, again, a misstatement of what that letter actually states. (Wagoner Decl., ECF #42-2, ¶ 3, Ex. 1, at 1.)

Equally notable is the Opposition's admission that the content of paragraphs 7-16 of the Amended Counterclaim which NY Marine seeks to strike "recite marketing representations made by NY Marine's former parent entities". (Opp., ECF #43, at 28:25-28.) NY Marine's motion cites well-established California law holding that: (1) marketing "puffery" is not generally actionable; and (2) that *when* admissible, marketing statements are only relevant to address the parties' expectations as to an ambiguous policy provision. In response, the Opposition asserts that "New York Marine argues that extrinsic evidence is only relevant where policy  language is facially ambiguous. That is not correct."  In support, Heard's Opposition cites two cases, *Dore v. Arnold Worldwide, Inc.,* 39 Cal.4th 384, 391 (2006), and *A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc.,* 852 F.2d 493, 496, n.2 (9th Cir. 1988), which she contends support her argument that the alternative motion to strike should be denied. (Opp., at 29:7-8.)  However, NY Marine's argument says nothing about "facial" ambiguity; rather, it contends broadly that such materials are admissible only "with respect to the interpretation of *an* ambiguous policy provision". (Memo P&As, ECF #42, at 28:8-9.) Thus, the cited cases add nothing to the analysis.

///

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

19

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

More fundamentally, however, as observed in NY Marine's motion, and as is undisputed in the Opposition, Heard's Amended Counterclaim does not allege any "ambiguity" in the policy or CPL endorsement—facial or otherwise, nor does she contend that she "relied" upon any of those statements in evaluating and obtaining the NY Marine policy. (*Id.,* at 28:10-11; Opp., generally). Nor do her Amended Answer or the affirmative defenses therein. (*See generally*, Amend. Ans., ECF #36.) Thus, the statements alleged at paragraphs 7-16 of the Amended Counterclaim cannot be material.[3] Likewise, because, again as noted and as undisputed by the Opposition, at least some of the allegations appear calculated to improperly place the issue of NY Marine's wealth before the jury, her argument that a court "*may*" deny a motion to strike "without an adequate showing of prejudice" also does not suffice to defeat the motion.

## IV.   <u>CONCLUSION</u>

For the reasons set forth in the moving papers and herein, NY Marine respectfully requests that the Court dismiss the Amended Counterclaim without leave to amend, or in the alternative (1) grant its motion to strike the allegations paragraphs

///

///

///

---

[3] For this same reason, the Opposition's citation to *Glenfed Dev. Corp. v. Superior Court,* 53 Cal.App.4th 1113, 1118-1119 (1997) for the proposition that "extrinsic evidence concerning the reasonable expectations of the insured may be admissible at trial" does not assist Heard's argument. That case involved a dispute over the *discoverability* of certain documents purportedly bearing on the breadth of coverage provided to the insured. *See, Id.,* at 1115-1116. However, Heard's Amended Counterclaim does not allege any dispute over the breadth of the coverage provided by the policy; rather, it disputes whether NY Marine's reservation of rights and its appointment of Virginia defense counsel breached its obligation to defend her. (See generally, Amend. CC). As a result, there is no basis to admit "extrinsic evidence" concerning her "expectations" as to the coverage provided.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1    7-16 and 25 therein; and (2) for a more definite statement.

2

3    Dated:  February 27, 2023              McCORMICK, BARSTOW, SHEPPARD,
                                                         WAYTE & CARRUTH LLP
4

5
                                             By:          /s/ James P. Wagoner
6                                                        James P. Wagoner
7                                                        Lejf E. Knutson
                                                       Nicholas H. Rasmussen
8                                                      Graham A. Van Leuven
9                                          Attorneys for Plaintiff and Counter-defendant
                                             New York Marine and General Insurance
10                                                          Company
11

12   8925864.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM

# WORD COUNT CERTIFICATE

I certify that the foregoing Plaintiff and Counter-defendant's Reply in Support of Its Motion to Dismiss Heard's Amended Counterclaim contains 6,992 words (not including the cover, the Table of Contents, the Table of Authorities, the signature block, and this certificate).  In preparing this certificate, I relied on the word count of Microsoft Office Word 2010, the computer program used to prepare the Plaintiff and Counter-Defendant's Reply in Support of Its Motion to Dismiss Heard's Amended Counterclaim .

Dated:  February 27, 2022

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By:      /s/ James P. Wagoner
James P. Wagoner
Lejf E. Knutson
Nicholas H. Rasmussen
Graham A. Van Leuven
Attorneys for Plaintiff and Counter-defendant New York Marine and General Insurance Company

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM

1

## **PROOF OF SERVICE**

2

**New York Marine and General Insurance Company v. Amber Heard**
**USDC Central District Case No. 2:22-cv-04685-GW-PD**

3

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

4

5

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California.  My business address is 7647 North Fresno Street, Fresno, CA 93720.

6

7

On February 27, 2023, I served true copies of the following document(s) described as **NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS HEARD'S AMENDED COUNTERCLAIM** on the interested parties in this action as follows:

8

9

## **SEE ATTACHED SERVICE LIST**

10

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

11

12

13

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

14

15

Executed on February 27, 2023, at Fresno, California.

16

17

_____
                    /s/ Marisela Taylor

18

Marisela Taylor

19

20

21

22

23

24

25

26

27

28

1
2

**SERVICE LIST**
*New York Marine and General Insurance Company v. Amber Heard*
**USDC Central District Case No. 2:22-cv-04685-GW-PD**

3   Kirk Pasich                                    *Attorneys    for    Defendant    and*
    Kayla Robinson                                 *Counterclaimant Amber Heard*
4   Pasich LLP
    10880 Wilshire Blvd., Suite 2000
5   Los Angeles, CA  90024
    (424) 313-7850
6   kpasich@pasichllp.com
    krobinson@pasichllp.com
7

8   Mark D. Peterson                               *Courtesy Copy – Via Email*
    Kathleen O. Peterson
9   Amy Howse                                      *Attorneys    for    Plaintiff    and*
    Cates Peterson LLP                             *Counterclaimant  Travelers  Commercial*
    4100 Newport Place, Suite 230                  *Insurance  Company  in  USDC  Central*
10  Newport Beach, CA 92660                        *District   Case   No.   2:21-cv-05832-GW,*
    Telephone: (949) 724-1180                      *consolidated for pre-trial purposes*
11  Email: markpeterson@catespeterson.com
    kpeterson@catespeterson.com
12  ahowse@catespeterson.com

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NY MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO
DISMISS HEARD'S AMENDED COUNTERCLAIM