UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-4685-GW-PDx | Date | March 9, 2023 |
|---|---|---|---|
| Title | *New York Marine and General Insurance Company v. Amber Heard* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFF AND COUNTERDEFENDANT NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO (1) DISMISS HEARD'S COUNTERCLAIM PURSUANT TO RULE 12(b)(6), OR (2) ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT PURSUANT TO RULE 12(e), AND (3) TO STRIKE CERTAIN ALLEGATIONS PURSUANT TO RULE 12(f) [42]

Attached hereto is the Court's Tentative Ruling on Plaintiff/Counter-Defendant's Motion [42] set for hearing on March 13, 2023 at 8:30 a.m.

:

Initials of Preparer   JG

<u>*N.Y. Marine & Gen. Ins. Co. v. Heard*</u>, Case No. 2:22-cv-04685-GW-(PDx)
Tentative Rulings on: (1) Motion to Dismiss Defendant's Counterclaim Pursuant to Rule 12(b)(6); (2) Motion for a More Definite Statement Pursuant to Rule 12(e); and (3) Motion to Strike Certain Allegations Pursuant to Rule 12(f)

New York Marine and General Insurance Company ("NY Marine") filed this declaratory relief action against Amber Heard ("Heard") on July 8, 2022. The operative pleading in NY Marine's case is its First Amended Complaint ("FAC") filed three days later. *See* Docket No. 5.

Heard filed an Answer to NY Marine's FAC and a Counterclaim on November 21, 2022. *See* Docket No. 29. She then filed a First Amended and Supplemental Answer to NY Marine's FAC and a Counterclaim ("FACC") on January 13, 2023. *See* Docket No. 36. The FACC contains two counterclaims, one for breach of contract and one for tortious breach of the implied covenant of good faith and fair dealing. It includes the following allegations:

Heard was the defendant in a lawsuit filed by her ex-husband, Johnny Depp, in Virginia state court, wherein Depp alleged that Heard had defamed him in a December 2018 *Washington Post* Op-Ed. *See* FACC ¶ 22. In June 2022, the jury in that lawsuit returned a verdict against Heard on three counts of defamation. *See id.* ¶ 23. Heard appealed the judgment before the lawsuit was finally resolved pursuant to a confidential agreement. *See id.*

Heard is a Named Insured of a policy NY Marine sold for the period July 18, 2018 to July 18, 2019 ("the Policy"). *See id.* ¶ 17. Though she asserts that "[t]o the extent not waived or otherwise excused, [she] complied with all terms and conditions contained in the Policy," *id.* ¶ 21, Heard alleges that despite timely notifying NY Marine of Depp's lawsuit and asking NY Marine to defend her, and despite NY Marine's promise to do so, NY Marine actually "did not provide the full and capable defense" to which she asserts she was entitled, failed to pay attorneys' fees and costs she believes it was obligated to pay for her defense, and acted in other ways that she contends prejudiced her and her defense. *See id.* ¶ 1.

More specifically, NY Marine initially agreed to defend Heard subject to a reservation of rights, but NY Marine never fully paid for Heard's defense, leaving Heard

1

to incur hundreds of thousands of dollars in defense costs, withdrew from Heard's defense, and expressly repudiated its duty to defend Heard. *See id.* ¶ 24. According to the FACC, NY Marine reserved rights to deny coverage on the ground that Heard behaved intentionally, and Heard asserts this created a conflict of interest that gave her the right to independent counsel, with NY Marine obligated to pay for the fees and costs of this independent counsel. *See id.* ¶ 25. But NY Marine refused to defend Heard through independent counsel and instead appointed its own counsel. *See id.* NY Marine also refused Heard's requests to reconsider this position, a position which Heard alleges made it "impossible for [her] to fully accept this 'defense' . . . without prejudicing her defense" in Depp's lawsuit. *See id.*

NY Marine's appointed counsel ultimately withdrew on November 20, 2020. *See id.* NY Marine thereafter agreed to participate in Heard's defense by reimbursing Heard's defending insurer, Travelers Commercial Insurance Company ("Travelers"), for some of the amounts it had paid and was paying towards Heard's defense in Depp's lawsuit. *See id.* ¶ 26. But NY Marine has not done so. *See id.* Moreover, once judgment had been entered in Depp's lawsuit, NY Marine took the position that it need not defend Heard, even though that judgment was not final and NY Marine still had the duty to pursue and fund an appeal on Heard's behalf. *See id.* ¶¶ 27.

Summing up her theory, Heard asserts that:

> [b]y refusing to provide the defense to which [she] was entitled in the *Depp* lawsuit and by wrongfully asserting that [she] was not entitled to indemnity for any amount that [she] might be legally obligated to pay in any judgment in or settlement of the *Depp* lawsuit, [NY Marine] wrongfully repudiated and refused to perform its duties to [her].

*Id.* ¶ 28. In addition to this alleged breach of its duties under the Policy, Heard alleges that NY Marine breached the covenant of good faith and fair dealing implied in the Policy not just by refusing to fully and properly defend Heard, repudiating that duty, and refusing to indemnify her to its Policy limit as to any judgment in, or settlement of, Depp's lawsuit, but also by: 1) failing to fully inquire into possible bases that might support coverage for the lawsuit; 2) asserting grounds for limiting coverage that it knew were not supported by, and in fact were contrary to, the terms of the Policy, the law, insurance industry custom and practices, and the facts; 3) taking coverage positions that are contrary to her reasonable expectations of coverage; 4) giving greater consideration to

its own interests than to hers; and 5) failing to have appropriate claims handling guidelines and failing to consider and act in accord with the governing legal requirements.  *See id.* ¶ 36(a)-(g).

NY Marine has now moved to dismiss Heard's FACC pursuant to Federal Rule of Civil Procedure 12(b)(6).  In the alternative, NY Marine asks the Court to order a more definite statement in certain regards pursuant to Federal Rule of Civil Procedure 12(e) and to strike various allegations and paragraphs pursuant to Federal Rule of Civil Procedure 12(f).

The Court will begin its discussion with the Rule 12(b)(6) aspect of the motion, because resolution of that aspect narrows the other live issues presented by the motion.

### A. Rule 12(b)(6) Standard

Under Rule 12(b)(6), a court must (1) construe a complaint in the light most favorable to the plaintiffs, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases").  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual

3

enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of such a motion, a court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "[a] court may [also] consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).[1]

### B. Summary of NY Marine's Rule 12(b)(6) Arguments

NY Marine argues that Heard's counterclaims fail to state claims because: 1) she had no right to be appointed independent counsel, whether because of what was contained in NY Marine's reservation-of-rights letter or otherwise; 2) she has not alleged that any of the expenses Plaintiff incurred were incurred at NY Marine's "request," as the terms of the Policy requires; and 3) she received a defense from Travelers, her other insurer, and according to NY Marine "an insured defended by one insurer cannot state viable claims for breach of contract or bad faith against another insurer which allegedly did not also provide a defense," Docket No. 42-1, at 2:8-10.

NY Marine asserts that it did, in fact, appoint counsel for Heard's defense – the same firm and attorneys that Heard herself had retained months before tendering her defense to NY Marine. Heard does not deny that NY Marine at least initially defended – or at least attempted to defend – her in this regard. NY Marine argues that, once Heard refused to "fully accept" that defense (because of her belief that she was entitled to

---

[1] Heard does not appear to contend that any of the material NY Marine has relied upon in its motion is improper for the Court to consider in the context of this motion.

4

independent counsel), it was relieved of its duty to cover any additional defense costs. It relatedly asserts that Heard was also not entitled to reject the defense NY Marine proffered on her behalf and to demand independent counsel instead.

### C. Duty to Provide Independent "*Cumis*" Counsel

It appears to the Court that Heard's breach of contract – failure to defend, failure to cover expenses – counterclaim rests entirely on the success of her theory that NY Marine was required to provide her with independent "*Cumis*" counsel, and could not fulfill its defense duties simply by appointing the Cameron McEvoy PLLC firm (the firm that Heard herself had already retained before tendering her defense to NY Marine). Heard certainly does not appear to deny that her theory for why NY Marine breached its Policy obligation to pay for her defense relates to its refusal to provide her with independent counsel. If this is not correct, Heard should make this clear to the Court at oral argument on the motion.

NY Marine argues that it had no duty to appoint independent counsel, both because the Depp suit was litigated in Virginia (and Heard was being represented by Virginia lawyers NY Marine had appointed) and because NY Marine's reservation-of-rights letter did not create a conflict of interest that would give rise to such a duty irrespective of the locus of that lawsuit and the duties governing the lawyers litigating it on Heard's behalf. This Court has already decided that issue, albeit in a lawsuit to which Heard was not a party.

This Court already determined, as part of litigation between Travelers and NY Marine, No. 2:21-cv-05832-GW-PD ("*Travelers* Action"), that because the Depp lawsuit was proceeding in Virginia, and because NY Marine provided Heard with a Virginia lawyer, there could not be a conflict of interest. *See Travelers Action*, Docket No. 24 (C.D. Cal. Jan. 6, 2022). In reaching that conclusion, the Court reasoned that choice/conflict-of-law questions did not matter, because these facts and the law governing an insured's Virginia lawyer's loyalty remained true no matter what a choice-of-law analysis decided with regard to which law to apply to the *Cumis* counsel obligation. *See Travelers* Action, Docket No. 24, at pgs. 6-9 of 15. The Court also determined that the crucial *absence* of a conflict of interest for Heard's insurer-appointed counsel would remain true "regardless of what [NY Marine's] Reservation of Rights

5

letter might say." *Id.* at pg. 8 of 15; *see also id.* at pg. 9 of 15 ("[N]o matter what it might have said about [*NY Marine's*] position vis-a-vis [Heard], it says nothing about [Heard's] Virginia lawyer's loyalty to [Heard].").[2]

Heard's response to NY Marine's motion on the independent counsel obligation question is to argue that California law applies and that an actual conflict of interest existed between Heard and the counsel NY Marine appointed.  She cites to five cases as support for this argument: *Northern Ins. Co. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1359 (9th Cir. 1992), *Bethlehem Constr., Inc. v. Transp. Ins. Co.*, No. CV-03-0324-EFS, 2006 WL 2818363 (E.D. Wash. Sept. 28, 2006), *Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588 (5th Cir. 2008), *Centex Homes v. Lexington Ins. Co.*, No. 3:13-cv-719-BN, 2014 WL 1225501 (N.D. Tex. Mar. 25, 2014), and *Nat'l Union Fire Ins. Co. v. Donaldson Co.*, 272 F.Supp.3d 1099 (D. Minn. 2017).  With the exception of the Ninth Circuit's decision in *Northern Insurance*, as relates to the issue of the requirement of independent counsel in a situation such as this one, none of these cases were cited in the briefing presented to the Court when it decided this issue in the *Travelers* Action.  Even putting aside the fact that it is the only one of the five cited cases that could *potentially* serve as binding precedent with respect to this Court, *Northern Insurance* is, unquestionably, the best case for Heard on this point.  Nevertheless, the Court is not persuaded that the approach it took in the *Travelers* Action was the wrong one.

Though Heard asserts in her brief that "[l]ike Virginia, Washington law is clear that insurer-appointed defense counsel represents only the insured, not the insurer, and owes a duty of loyalty to the insured that has no exceptions" such that "like Virginia, Washington does not recognize the 'tripartite relationship' between an insurer, insured, and defense counsel," Docket No. 43, at 9:9-14, there is no indication *in the Ninth*

---

[2] The Court later further explained that, even if NY Marine's reservation-of-rights letter was to be considered, "'[w]here the insurer has not expressly reserved its right to deny coverage under a particular exclusion in its policy, there can be no actual conflict based on the application of that exclusion during the pendency of the action.'" *Travelers* Action, Docket No. 24, at pg. 10 of 15 (quoting *Fed. Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, 47 (2013)) (emphasis added in *Travelers* Action, Docket No. 24).  If the Court had any need to reach the question of the terms of the reservation of rights letter here – for reasons explained herein, it does not appear to have any such need – this observation in the *Travelers* Action would be dispositive of Heard's attempt to rely upon that letter to demonstrate a conflict for her insurer-appointed attorneys.

6

*Circuit's decision* in *Northern Insurance* that the court was aware of Washington's stance on the "tripartite relationship" question when it issued its ruling, and a case is not precedent for issues not discussed or decided therein.[3] *See, e.g.*, *Sethy v. Alameda Cty. Water Dist.*, 545 F.2d 1157, 1159-60 (9th Cir. 1976). The only reflection in the Ninth Circuit's decision on the scope or impact of Washington law was the conclusory comment that, under Washington law, the insurance company defendant "fulfilled its duty to provide a defense" when it hired a particular law firm, and "under California law, it did not." *N. Ins.*, 955 F.2d at 1359. In other words, the Ninth Circuit never openly contemplated that Washington lawyers representing insureds in litigation occurring in Washington owed undivided loyalty to the insured.

Beyond this limitation in the ruling, in reaching its decision in *Northern Insurance* the Ninth Circuit identified the "underlying concern" as "protection of the insured *when its interests conflict with those of its insurer*" and noted that California's *Cumis* rule and California Insurance Code § 2860 accomplished such protection "by requiring insurers to provide independent counsel *when a conflict arises*." *Id.* Indeed, the *Cumis* decision itself makes clear that the right to independent counsel it recognized was founded on the *predicate* of the existence of a conflict of interest. *See San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal.App.3d 358, 361 (1984) ("We conclude under these circumstances there is a conflict of interest between the insurer and the insured, and therefore the insured has a right to independent counsel paid for by the insurer."); *see also id.* at 364-66. Section 2860 likewise conditions the statutory duty to provide independent counsel on a situation where "a conflict of interest arises." Cal. Civ. Code § 2860(a) ("If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insure, the insurer shall provide independent

---

[3] NY Marine seemingly concedes that Heard is correct about Washington law insofar as the lack of a tripartite relationship is concerned (while attempting to distinguish Washington, California and Virginia law on *other* grounds). *See* Docket No. 44, at 3:25-4:3. But this does not change the fact that there is *no indication* that the Ninth Circuit considered this distinguishing factor in reaching its decision. This Court *has* considered the distinction between California and Virginia law in this regard. It has concluded – having affirmatively considered this seemingly crucial point – that it makes an outcome-determinative difference because it means that there is no conflict in an insurer-appointed lawyer's duties, which is the only thing that gives rise to the independent counsel right under California's framework.

7

counsel to represent the insured . . . ."). But the whole point here is that NY Marine's "interests" did not "conflict" with Heard's and a "conflict [had not] arise[n]" because Virginia counsel had *no* obligation to NY Marine while they were representing Heard. The same would have appeared to have been the case in the *Northern Insurance* litigation – assuming Heard is correct about Washington law being the same as Virginia law on this point – but the Ninth Circuit never dealt with or directly confronted that fact, explaining only that "[a]ttorneys practicing in Washington still must abide by local ethical rules and may be sanctioned for failing to do so." 955 F.2d at 1359.

In essence, the *Northern Insurance* decision never explained *why* the Ninth Circuit believed that a conflict existed between Washington and California under the circumstances. This Court believes that the appropriate boots-on-the-ground question in first attempting to unravel that issue is "To whom did Heard's appointed Virginia counsel owe their duties?"[4] The answer, under the Virginia law that governed the performance and expectations of those attorneys, was clearly "only Heard." Where there is no possibility of conflicted loyalty (as is going to *always* be the case in Virginia), the answer is the same under either Virginia or California law – there is no right to appointment of independent counsel.

For these reasons, the Court does not consider *Northern Insurance* as binding precedent on the question of how to determine whether appointment of independent counsel is required where the underlying litigation is proceeding or proceeded in – and is/was handled by appointed counsel licensed by – a state that, unlike California, does not recognize the "tripartite relationship" and therefore presents no possibility of an attorney's divided loyalty or conflicted-interest. As best this Court can tell, no court has favorably cited or relied upon *Northern Insurance* for the mode-of-analysis it conducted and/or that Heard asserts is appropriate here.

With respect to the other cases Heard cites in her Opposition that she believes support her claim to a right to appointment of independent counsel, none of them are

---

[4] Case law subsequent to *Cumis* – and, indeed, subsequent to *Northern Insurance* – has made clear that the rule originating in that case "is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests." *E.g.*, *Simonyan v. Nationwide Ins. Co. of Am.*, 78 Cal.App.5th 889, 896-97 (2022); *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal.App.4th 1093, 1101 (2001); *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1394 (1993). The Court takes this comment as strong evidence that the order of analysis it proposes above as appropriate is, in fact, the correct one.

8

even potentially binding upon this Court, and for the reasons that follow are unpersuasive in any event. As NY Marine points out in its Reply, the underlying litigation in *Bethlehem Construction* took place in California, *see* 2006 WL 2818363, at *9, 11, and the underlying litigation in *Hartford Underwriters* occurred in Mississippi (where Mississippi law required the appointment of independent counsel), *see* 524 F.3d at 591-93. In other words, those cases did not present the circumstances at issue here, involving litigation in a state (by attorneys licensed in that state) that does not recognize the "tripartite relationship." As to *Centex Homes*, that case resulted in a conclusion that there was *no conflict* between Texas law and California law, *see* 2014 WL 1225501, at *6-8, something Heard argues is definitely *not* the case here. Finally, with respect to *National Union* (as to which Heard provided no pin-cite), that decision – after concluding that a conflict in laws existed – applied a Minnesota-specific rule "that when an insurance contract covering national risks does not contain a choice-of-law provision, 'if any states are to be involved in a choice-of-law analysis, it should be . . . the home states of the parties to the litigation.'" 272 F.Supp.3d at 1111. In short, none of these four additional cases persuade the Court that its approach to the question in this case is in-error.

Beyond her (implied) attempt to have the Court reverse-course on the decision it reached in the *Travelers* Action, Heard also contends that NY Marine's suggestion (via its phrasing of a parenthetical citation) that it had the *right to control* Heard's defense – due to the Policy's "no action" clause – is inconsistent with its assertion that there was no conflict of interest. In its Reply, however, NY Marine takes the position that it had *no* right to control its insured's defense (no matter what else the Policy might have provided, presumably). *See* Docket No. 44, at 15:4-5, 15:15-18, 16:19-24, 17:4-13. This is, indeed, a necessary corollary of Virginia's rule that counsel's loyalties are owed only to the insured. Whatever argument Heard might have perceived NY Marine to make by virtue of its opening-brief parenthetical, NY Marine's *argument* does not decide the law on the point.

Heard next turns to the impact she perceives on the issue of any independent counsel duty/right as a result of the contents of NY Marine's reservation of rights letter. Again, as decided in the *Travelers* Action, the terms of that letter do not matter because the question is whether Heard's Virginia counsel in Virginia had any possibility of a

9

conflict with Heard, and the answer is no. The same comment is true with respect to NY Marine's decision to file *this* action on the basis of California Insurance Code § 533 – again, Virginia counsel's obligation would have been solely to Heard, with no concern about NY Marine or what litigation the insurer was pursuing on the other side of the country. Moreover, as NY Marine notes in its Reply (and as Heard admits in both her First Amended and Supplemental Answer at paragraph 16, *see* Docket No. 36, and the FACC at paragraph 25), its appointed counsel withdrew from representing Heard no later than November 20, 2020, meaning that the filing of this litigation – on July 11, 2022 – could not possibly have created a conflict in connection with legal representation that was no longer occurring.

Heard also believes that the "disputed issue" of "the extent to which [NY Marine's] appointed counsel was permitted to participate in the defense" is "plainly not appropriate for resolution at the pleading stage." Docket No. 43 at n.8. But assuming this is true, if the independent counsel issue is resolved as suggested *supra*, how would this plainly-not-appropriate-for-resolution issue get Heard past the pleading stage as to her counterclaims? Her citations demonstrating this dispute refer to NY Marine's FAC and her Answer to the FAC, *not* to her FACC. As such, this does not appear to be a basis for concluding that the Court should deny NY Marine's motion here.

In the end, even assuming the Court would be open to the possibility of effectively reconsidering the decision it issued in the *Travelers* Action over 14 months ago, Heard has not persuaded it that it should do so.

### D. **If No Independent Counsel Right/Duty, What Remains?**

Outside of the issue of her alleged entitlement to appointment of independent counsel (and the choice-of-law analysis that she believes decides that question in her favor[5]), Heard offers no argument bearing upon any alleged breach of the Policy by NY Marine. As NY Marine seemingly accurately sums it up in its Reply brief, "Heard's entire opposition to NY Marine's motion is predicated on her . . . assertion of an

---

[5] In light of the Court's conclusion that it will adhere to the approach that it took in the *Travelers* Action and the explanation it has provided for that result, there is no need for the Court to engage in any detailed analysis of the parties' arguments on the choice/conflict-of-law question, and the various paths that they each believe would bring the Court to their desired conclusion.

entitlement to independent counsel." Docket No. 44, at 1:14-15. As a result, because of the Court's resolution of the independent counsel obligation question, it seemingly has no basis to do anything other than dismiss the breach of contract counterclaim.[6] Heard can attempt to explain at oral argument why such a dismissal should not be without leave to amend. But a proposed amendment would seemingly need to revise the breach of contract theory wholesale in order for that counterclaim to have any future in this litigation.

NY Marine asserts that if the Court concludes Heard has not and cannot allege that it breached the Policy, it cannot be liable for a breach of the implied covenant of good faith and fair dealing, Heard's second counterclaim. On this issue, Heard responds that there are "certain circumstances" in which an implied covenant claim "might survive" despite the absence of a valid breach of contract claim. Specifically, she identifies when an insurer unreasonably delays investigation, and notes that she has alleged that NY Marine failed to conduct a full and thorough investigation and asserted grounds for denying coverage without conducting that investigation. In its Reply, NY Marine argues that all four of the cases Heard relies upon in her Opposition "dealt with claims involving an insurer's failure to investigate or render a coverage determination: allegations not made in Heard's . . . Counterclaim." Docket No. 44, at 18:8-13. The parties therefore seem to simply be debating what the FACC does, or does not, allege.

Though she does not actually use the term "investigate," Heard does in fact allege that NY Marine breached the implied covenant by, among other things, "failing to fully inquire into possible bases that might support coverage for the *Depp* lawsuit." FACC ¶ 36(c). The question the Court would have with respect to this allegation, however, is what *facts* she has alleged that make this assertion anything other than conclusory under *Twombly* and *Iqbal*? In her Opposition brief, Heard does not appear to identify any, opting instead to just cite her allegations on page 25 of her FACC (presumably referring

---

[6] If the Court is correct that resolution of the independent counsel duty fully-resolves Heard's breach of contract counterclaim, the Court does not need to address or resolve NY Marine's alternative arguments for why that counterclaim fails – Heard's purported failure to allege that she incurred any expenses at NY Marine's "request," as NY Marine asserts would have been a requirement for payment/reimbursement under the Policy; Heard's own alleged breach of the Policy's "no voluntary payments" provision; and that Heard was already provided one full defense by Travelers, such that NY Marine cannot itself be liable to her.

to paragraph 36(c)). *See* Docket No. 43, at 26:10-13. While NY Marine has not effectively closed off the possibility that Heard could potentially state an implied covenant counterclaim without a viable breach of contract counterclaim given its failure to acknowledge the existence of, or consider the effect of, the allegation in paragraph 36(c), it is likely that the Court will require further amendment with the addition of factual allegations before it would determine that Heard has successfully stated a claim under this theory.

The fact that Heard's implied covenant counterclaim may still survive means the Court theoretically would need to address and resolve NY Marine's alternative requests for relief in its motion – its request for a more definite statement and its request that the Court strike certain material. As to the former, NY Marine asks that the Court order Heard to provide a more definite statement with respect to: 1) what aspect of the defense NY Marine proffered that she did not "fully accept" (because NY Marine interprets the allegation to amount to an admission that she "refused" to accept the defense NY Marine offered or that she "interfered" with its right to "control" that defense); and 2) whether Heard's claim for "defense costs" include post-tender attorneys' fees that are subject to the limitations of California Civil Code § 2860(c) and as to whether any of the defense costs she allegedly incurred were incurred at NY Marine's "request." However, each of these requests for a more definite statement appears to relate only to Heard's breach of contract counterclaim (none of them concern, for instance, a failure to investigate- or delay in investigation-based implied covenant counterclaim). As a result, it does not appear that there is actually any remaining need to resolve these perceived deficiencies.

In addition to that alternative request for a more definite statement, NY Marine asks that the Court strike[7] a portion of paragraph 25 of Heard's FACC relating to an alleged independent counsel right/obligation on the grounds that the allegation does not

---

[7] Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[I]mmaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being plead" and "impertinent" matter is understood as "consist[ing] of statements that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Under *Whittlestone*, where material "relates directly to the plaintiff's underlying claim for relief" it cannot be considered "immaterial." *Id.* Because of its similar application, the Court believes that the same general rule should apply to a determination of whether matter is "impertinent."

accurately reflect the terms of NY Marine's reservation of rights letter and is therefore both "immaterial" and "impertinent."  Specifically, paragraph 25 alleges in part that NY Marine "reserved rights to deny coverage on the ground that [Heard] behaved intentionally, thus creating a conflict of interest with [Heard] and giving [Heard] the right to independent counsel, with [NY Marine] being obligated to pay for the fees and costs of this independent counsel."  FACC ¶ 25.  With regard to the motion to strike, Heard asserts that the allegation in paragraph 25 is correct/accurate.  Whether or not the allegation is true and correct (an issue that could be resolved in an evidentiary motion or perhaps even in the context of a Rule 12(b)(6) motion), it would certainly be at least potentially material/pertinent (at least under Heard's theory for how any duty to provide independent counsel should have been analyzed).  As such, the Court denies the alternative request to strike this language.

NY Marine also asks the Court to strike paragraphs 7-16 as immaterial because those paragraphs simply reflect marketing materials and statements not relevant to Heard's counterclaims and, even if they were relevant, that would amount to mere "puffery," and, even if they were relevant and *not* puffery, because there is no allegation that Heard ever justifiably relied on – or was even aware of – the statements therein to her detriment, meaning that they are not "material" or "pertinent" to her counterclaims.  Because of the lack of connection of those allegations to Heard's counterclaims, NY Marine also argues that the reference in paragraph 16 regarding the premiums and total assets of Coaction Specialty Insurance Group – an entity that NY Marine is now allegedly "part of," *see* FACC ¶ 12 – is there only for the purpose of improperly placing NY Marine's (or its parent/related company's) wealth before the jury.

As to paragraphs 7-16, Heard contends that NY Marine would have to be able to show that the allegations have no possible relation to the controversy and that their inclusion may cause prejudice, then contests NY Marine's argument about the limited potential relevance of marketing representations by asserting that they are relevant to reasonable expectations of insureds, and argues that NY Marine's "puffery" cases are all fraud actions considering heightened pleading standards.  Among other arguments in its Reply, NY Marine points to Heard placing "the issue of NY Marine's wealth before the jury" in paragraph 16 of the FACC as at least one possible instance of "prejudice" arising

from the material targeted by its motion to strike.

If Heard is correct that some or all of the allegations in paragraphs 7-16 are *potentially* relevant, she does not appear to have provided factual allegations supporting the contention that they are relevant *in her case*.  She has not alleged that she knew about, or relied on, any of the statements in question, so her argument about them being relevant because connected to "reasonable expectations of insureds" lacks materiality/pertinence to *her* counterclaims.  Likewise, she has not identified any terms of her Policy that she believes were ambiguous and that might conceivably require consideration of marketing statements to cure such ambiguity.  It is possible that Heard would be able to amend to make the statements now contained in paragraphs 7-16 material/pertinent in *her* case, but as it stands now they would have to be amended so as to be made material/pertinent to her implied covenant counterclaim, not her breach of contract counterclaim.

However, as to the last bullet point of paragraph 16 of the FACC, the Court does not see any explanation for how that reference to NY Marine's parent company's/corporate relative's current and total wealth has any materiality/pertinence to either of her counterclaims, and as such concludes that its inclusion would only serve to prejudice NY Marine in the eyes of a jury.  The Court will strike that reference without leave to amend.

### E. Conclusion

The Court will dismiss Heard's breach of contract counterclaim, likely without leave to amend.  The Court will dismiss Heard's implied covenant counterclaim, with leave to amend.  The Court need not resolve NY Marine's alternative request for a more definite statement, as that request appears to be moot.  It denies NY Marine's alternative request to strike as to the language in paragraph 25 of the FACC, but grants that motion with leave to amend with respect to paragraphs 7-16 of the FACC, with the exception of the last bullet-point of paragraph 16, as to which the Court grants the motion to strike without leave to amend.